# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

| | |
|---|---|
| WYNDHAM VACATION OWNERSHIP, INC., a Delaware corporation; WYNDHAM VACATION RESORTS, INC.; a Delaware corporation, WYNDHAM RESORT DEVELOPMENT CORPORATION, an Oregon Corporation; SHELL VACATIONS, LLC, an Arizona limited liability company; SVC-WEST, LLC, a California limited liability company; SVC-AMERICANA, LLC, an Arizona limited liability company; and SVC-HAWAII, LLC, a Hawaii limited liability company,<br><br>         Plaintiffs,<br><br>v.<br><br>CHARLES E. GALLAGHER, ESQ., an individual; WILLIAM P. STEWART JR/ a/k/a PAUL STEWART a/k/a BILL STEWART, an individual; GALLAGHER-CLIFTON, LLC a/k/a The Gallagher Firm, a Florida limited liability company; TIMESHARE OWNERS RELIEF, LLC, f/k/a Timeshare Solutions, LLC a Florida limited liability company; and RESORT LEGAL TEAM, INC., a Nevada corporation,<br><br>         Defendants. | CASE NO.: |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Wyndham Vacation Ownership, Inc. ("WVO"); Wyndham Vacation Resorts, Inc. ("WVR"); Wyndham Resort Development Corporation ("WRDC"); Shell Vacations, LLC ("SV"); SVC-West, LLC ("SVC-West"); SVC-Americana, LLC ("SVC-Americana"); and SVC-Hawaii, LLC ("SVC-Hawaii") (collectively, "Wyndham"), by and through the undersigned counsel, and pursuant to the Federal Rules of Civil Procedure, hereby sue Defendants Charles E.

Gallagher, Esq. ("Gallagher"), William P. Stewart Jr. a/k/a Paul Stewart a/k/a Bill Stewart ("Stewart"), Gallagher-Clifton, LLC a/k/a The Gallagher Firm, ("Gallagher-Clifton"), Timeshare Owners Relief, LLC f/k/a Timeshare Solutions, LLC ("Timeshare Owners Relief"), and Resort Legal Team, Inc. ("Resort Legal Team")(collectively, the "Defendants"), and state:

A.    **Introduction**

1.      Wyndham is a global leader in the development of timeshare properties.

2.      Wyndham has valid and binding contracts (the "Timeshare Contracts") with individuals who purchased timeshare interests from Wyndham (the "Wyndham Owners"). These Timeshare Contracts control the benefits and obligations of timeshare ownership.

3.      Defendants are a group of individuals and related companies that conspire together to harm Wyndham Owners and Wyndham.  Stewart, Timeshare Owner Relief, and Resort Legal Team have recruited lawyers – Gallagher – and formed a fake law firm – Gallagher-Clifton – in order to carry out their scheme that is detailed more fully herein.  An organizational chart showing the interrelatedness of the various defendants is annexed hereto as Exhibit 1.

4.      Defendants are not parties to the Timeshare Contracts.  Yet, despite this, they falsely advertise "timeshare cancellation services" that purports to "cancel their timeshare and any outstanding timeshare mortgage as well." The following is a representative advertisement by Timeshare Owners Relief for illustrative purposes:[1]

---

[1]    http://web.archive.org/web/20180107205623/http://www.timeshareownersrelief.com/ (last accessed Feb. 18, 2019)(highlighting supplied).  A full copy of this website is annexed hereto as Exhibit 2.

- 2 -





We are a timeshare relief company that specializes in complete timeshare cancellations. We are not a listing company, nor a deed transfer company. We are not going to sell your timeshare; we are going to cancel it, removing you entirely from the deed, so you will never have to pay another maintenance fee, mortgage payment or special assessment ever again!

Our service not only cancels all future payments and maintenance fees, but also cancels all existing payments and fees. Whether you still owe thousands of dollars on a mortgage, or you just got hit with another increase in maintenance fees, we will cancel those debts and relieve you and your family of any future financial obligations.

Our system will provide you with a cancellation letter directly from your timeshare company confirming that you are no longer responsible for the contractual obligations.

5.      Defendants solicit Wyndham Owners through a multitude of advertisements that misrepresent the nature of Defendants' "timeshare cancellation service."   Examples of these advertisements are set forth in greater detail hereinbelow.

6.      Defendants misleadingly advertise a "100% money back guarantee" that Defendants can "cancel" the Timeshare Contracts, including Wyndham Owners' Timeshare Contracts.  An example of the '100% guarantee' allegedly offered by Timeshare Owners Relief is included below:[2]



Providing transparency in our services is something we take great pride in. When you become our client, you will be assigned a dedicated case manager who will keep you updated throughout every step of the process.

### Payment For Our Services:

Here at Timeshare Owners Relief, LLC we only accept payment from our clients **AFTER** our transfer agreement has been reviewed and signed by both parties. Never allow any company to charge you money prior to you having a written and endorsed agreement in your possession that you clearly understand and you can verify their verbal promises are in writing. As an extra layer of security, we recommend always paying for any type of service-type product with a major credit card as you may have additional protections from your credit card if the company does not perform as promised in writing. Timeshare Owners Relief, LLC only accepts payment by credit card – giving you the peace of mind that you may have extra layers of protection on top of our **100% Money Back Guarantee.**

7.      However, Defendants' "timeshare cancellation service" provides no legal means

---

[2] http://web.archive.org/web/20180109095346/http://www.timeshareownersrelief.com/our-guarantee/ (last accessed Feb. 21, 2019).  A full copy of this website is annexed hereto as Exhibit 3.

of cancellation and is instead designed to cause the Wyndham Owners to stop fulfilling their payment obligations under the Timeshare Contracts, resulting in breach, default, and damaged credit.

8.    In order to solicit Wyndham Owners, Defendants' online advertisements and website content create a false narrative that Defendants' "timeshare cancellation service" is equivalent to legal representation or that Defendants are operating a law firm, when in fact they are not.

9.    In fact, while Gallagher is indeed a lawyer, admitted the Bar of the State of Georgia, Gallagher-Clifton is not a law firm and Gallagher denies representing any consumers in the role of a lawyer, despite the representations and implications made by Timeshare Owner Relief and/or Resort Legal Team.

**B.    Parties, Jurisdiction, and Venue**

      **i.    The Plaintiffs**

10.    WVO is a corporation organized and existing under the laws of the State of Delaware with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

11.    WVR is a corporation organized and existing under the laws of the State of Delaware with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

12.    WRDC is a corporation organized and existing under the laws of the State of Oregon with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

13.     SV is a limited liability company organized and existing under the laws of the state of Arizona with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

14.     Plaintiff SVC-West, LLC is a limited liability company organized and existing under the laws of the state of California with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

15.     Plaintiff SVC-Americana, LLC is a limited liability company organized and existing under the laws of the state of Arizona with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

16.     Plaintiff SVC-Hawaii, LLC is a limited liability company organized and existing under the laws of the state of Hawaii with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

17.     WVO is the parent company or ultimate parent company of WVR, WRDC, and SV, which conducts timeshare sales and development activities throughout the United States.

### ii.     The Defendants

18.     Gallagher is an individual and member of the Bar of the State of Georgia. Gallagher resides in Destin, Florida and can be located at 4742 Amhurst Circle, Destin, Florida 32541.

19.     Stewart is an individual and resident of the State of Florida.  Stewart is a former employee of WVR.  Stewart can be located at 122 Seascape Drive, Unit 1670, Miramar Beach, Florida 32250.  Stewart is not an attorney.

20.     Gallagher-Clifton is a limited liability company organized and existing under the laws of the State of Florida with a principal address at 4641 Gulfstarr[sic] Drive, Suite 102, Destin, Florida 32541.  Stewart is the registered agent of Gallagher-Clifton.

21.     Gallagher-Clifton is not a law firm.

22.     Timeshare Owners Relief f/k/a Timeshare Solutions, LLC is a limited liability company organized and existing under the laws of the State of Florida.  Timeshare Solutions changed its name to Timeshare Owners Relief on or about December 30, 2014; a copy of the relevant Florida Secretary of State records is annexed hereto as Exhibit 4.  Stewart is the registered agent of Timeshare Owners Relief and can be located at 122 Seascape Drive, Unit 1670, Miramar Beach, Florida 32250.

23.     Resort Legal Team is a corporation organized and existing under the laws of the State of Nevada.  The registered agent of Resort Legal Team is United States Corporation Agents, Inc. located at 500 North Rainbow Boulevard, Suite 300A, Las Vegas, Nevada 89107.

### iii.    Subject Matter Jurisdiction

24.     This Court has subject matter jurisdiction over the claims sounding in the Lanham Act alleged herein pursuant to 28 U.S.C. §§ 1331 and 1338.  This Court has subject matter jurisdiction over the claims sounding in state law alleged herein pursuant to 28 U.S.C. § 1367 as the state law claims are so related to the Lanham Act claims that they form part of the same case or controversy.

### iv.    Personal Jurisdiction

25.     This Court has personal jurisdiction over the Defendants pursuant §48.193(1)(a) and §48.193(3), Fla. Stat., as Defendants are engaged in substantial and not isolated activity

- 6 -

within Florida, operate a business and have an office in Florida, and have committed a tortious act within this state.

26.     More specifically, with regard to Gallagher and Stewart, they are residents of the State of Florida.

27.     With respect to Gallagher-Clifton and Timeshare Owners Relief, they are both limited liability companies organized and existing under the laws of the State of Florida and actually operating in the State of Florida.

28.     With respect to Resort Legal Team, Resort Legal Team conspires with the other Defendants to execute its scheme and, as part of this conspiracy, Resort Legal Team forwards unsuspecting and unwitting consumers to Gallagher, Stewart, and Gallagher-Clifton in the State of Florida and therefore has systemic contacts with the State of Florida.

29.     Moreover, Resort Legal Team operates a website that is accessible to residents of the State of Florida and involves the repeated transmission of electronic files and information into and out of the State of Florida on a regular and systemic – and not limited – basis.

30.     Finally, Resort Legal Team's activities with respect to Wyndham are directed at Wyndham, which is located in the State of Florida, and designed to interfere in, and cause the breach of, contracts with payment obligations, where the payments are made to Wyndham in the State of Florida.

31.     The Court's exercise of personal jurisdiction over Resort Legal Team would not offend the traditional notions of fair play and substantial justice.  Therefore, the Court has personal jurisdiction over Resort Legal Team.

WPBDOCS 9871662 3

v.      <u>**Venue**</u>

32.    Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §1391 because, as described herein, a substantial part of the events giving rise to Plaintiffs' claims occurred in Florida, and a portion of Defendants' conduct giving rise to the claims set forth herein (specifically, both their marketing activities and their repeated sending of letters to Wyndham in Orlando, Florida) occurred in this District.  Moreover, in non-patent cases,[3] 28 U.S.C. § 1391(d) states that in multi-district states (such as Florida), a corporate defendant "shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction…"  Because Defendants direct substantial activity into the Middle District of Florida, they would be subject to personal jurisdiction in this district, and venue is proper.

vi.    **<u>Conditions Precedent, Attorney's Fees</u>**

33.    All conditions precedent to the bringing and maintenance of this action have been performed, were waived, would be futile if attempted, or have otherwise been satisfied or occurred.

34.    Wyndham has retained the services of the undersigned lawyers to represent it in this matter and have obligated themselves to pay reasonable attorneys' fees, which fees are recoverable against Defendants pursuant to 15 U.S.C. § 1117 and Fla. Stat. § 501.2105.

C.     <u>**Wyndham's Timeshare Business**</u>

35.    Wyndham devotes substantial resources to advertising and other marketing promotions in an effort to maintain and enhance the value of their established and famous brands.

---

[3] That is, cases where 28 U.S.C. § 1400 is inapplicable.

36.     As part of its business, WVR, WRDC and SV enter into valid and binding Timeshare Contracts with Wyndham Owners.  At the time that Wyndham Owners purchase timeshares from WVR, WRDC, and/or SV, the Wyndham Owners execute Contracts for Purchase and Sale wherein the Wyndham Owners agree to pay an amount certain for the timeshare interest, as well as maintenance and/or annual fees to Wyndham for the upkeep of the timeshare units and common areas of the timeshare properties. In addition, Wyndham Owners agree to pay a pro-rated share of the property taxes to Wyndham, which is then submitted by Wyndham to the appropriate local tax collectors.  Often, if a purchaser desires mortgage financing, they may apply for a mortgage, and after approval, may execute a Promissory Note and Mortgage, which are referenced and incorporated in the Purchase Agreement.  These Timeshare Contracts are legally binding contracts and, after the passage of a statutory rescission period, cannot be unilaterally rescinded without Wyndham's express agreement.

37.     Recognizing that some Wyndham Owners may desire to gracefully exit their timeshare obligations, or may have a need to do so, Wyndham has created the Ovation program, which allows Wyndham Owners to terminate their Timeshare Contracts if they meet certain conditions.

### D.    **Defendants' Scheme**

38.     Defendants falsely and misleadingly advertise a 'guaranteed' ability to 'terminate' or 'cancel' timeshare contracts, including the Timeshare Contracts, on behalf of consumers, including Wyndham Owners.

39.     Defendants possess no such ability.

40.     Instead, what Defendants do is take large, up-front fees from consumers and then do little or nothing on their behalf other than directing the consumer to stop making payments to

- 9 -

their timeshare developers, eventually causing the consumer to default on their timeshare obligations, resulting in foreclosure and substantial harm to by the consumer and the timeshare developer.

41.     Defendants can be broken into three discreet groups: (1) the marketing companies that solicit the consumers and refer them to (2) the fake law firms; and (3) the individuals who oversee and control the overall scheme.

### i.     The Marketing Companies

42.     In this particular scheme, Timeshare Owners Relief and Resort Legal Team are the marketing companies that engage in false and/or misleading advertising designed to lure customers into the scheme.   Timeshare Owners Relief and Resort Legal Team engage in substantive deceptive and/or misleading marketing activity and then demand substantial, up-front payments from consumers, including Wyndham Owners.

### a.     Timeshare Owners Relief

43.     As part of the 'services' Timeshare Owners Relief allegedly provides, Timeshare Owners Relief instructs Wyndham Owners to cease making payments under their Timeshare Contracts to Wyndham.

44.     Timeshare Owners Relief has no legitimate basis for instructing Wyndham Owners to cease making payments under the Timeshare Contracts.   Timeshare Owners Relief instructs or implies to Wyndham Owners to stop making payment under their Timeshare Contracts with the purpose of causing the Wyndham Owners to default on their Timeshare Contracts, which will cause a foreclosure of the Timeshare Contracts.   Timeshare Owners Relief will then tell the Wyndham Owner that Timeshare Owners Relief was "successful" in "cancelling" the Timeshare Contract when, in reality, the interest was foreclosed upon, a result

- 10 -

any consumer could obtain for free by simply refusing to make payments due under the Timeshare Contract.

45.     Additionally, directing Wyndham Owners to cease making payments to Wyndham serves two additional goals: (1) it diverts the stream of payments owed to Wyndham from Wyndham to Timeshare Owners Relief, and (2) Timeshare Owners Relief justifies its fees by telling Wyndham Owners they are saving money by not having to pay Wyndham.

46.     Timeshare Owners Relief also instructs the Wyndham Owners to have no contact with Wyndham, falsely stating that doing so will facilitate the "exit" process.  In reality, Timeshare Owners Relief instructs Wyndham Owners to have no contact with Wyndham to prevent the Wyndham Owner from learning the truth about the status of their account (i.e., that it is going into foreclosure).

### b.    Resort Legal Team

47.     As part of the 'services' Resort Legal Team allegedly provides, Resort Legal Team instructs Wyndham Owners to cease making payments under their Timeshare Contracts to Wyndham.

48.     Resort Legal Team has no legitimate basis for instructing Wyndham Owners to cease making payments under the Timeshare Contracts.  Resort Legal Team instructs or implies to Wyndham Owners to stop making payment under their Timeshare Contracts with the purpose of causing the Wyndham Owners to default on their Timeshare Contracts, which will cause a foreclosure of the Timeshare Contracts.  Resort Legal Team will then tell the Wyndham Owner that Resort Legal Team was "successful" in "cancelling" the Timeshare Contract when, in reality, the interest was foreclosed upon, a result any consumer could obtain for free by simply refusing to make payments due under the Timeshare Contract.

WPBDOCS 9871662 3

49.     Additionally, directing Wyndham Owners to cease making payments to Wyndham serves two additional goals: (1) it diverts the stream of payments owed to Wyndham from Wyndham to Resort Legal Team, and (2) Resort Legal Team justifies its fees by telling Wyndham Owners they are saving money by not having to pay Wyndham.

50.     Resort Legal Team also instructs the Wyndham Owners to have no contact with Wyndham, falsely stating that doing so will facilitate the "exit" process.  In reality, Resort Legal Team instructs Wyndham Owners to have no contact with Wyndham to prevent the Wyndham Owner from learning the truth about the status of their account (i.e., that it is going into foreclosure).

### ii.     The Fake Law Firm

51.     Timeshare Owners Relief and Resort Legal Team then refer or otherwise forward the Wyndham Owners to Gallagher-Clifton.   A list of Wyndham Owners that have been forwarded to Gallagher-Clifton from Timeshare Owners Relief and/or Resort Legal Team (and/or potentially other, as yet unknown third-parties) is annexed hereto as Exhibit 5.

52.     Gallagher-Clifton is an integral part of Defendants' scheme without which the scheme would not function.  Because Timeshare Owners Relief and Resort Legal Team advertise "legal" solutions and the involvement of lawyers, Timeshare Owners Relief and Resort Legal Team need a law firm, or a company that appears to be a law firm, in order to carry out their scheme.  Gallagher-Clifton fulfills that role.

53.     Gallagher-Clifton is not actually a law firm; it is a limited liability company that is owned, at least in part, by non-lawyers, including Stewart.

54.     While Gallagher is a lawyer, he is not licensed to practice law in the State of Florida, the location of Gallagher-Clifton.  While Gallagher claims to have his own law firm –

The Gallagher Firm – there is no such company registered to do business with the State of Florida and 'The Gallagher Firm' shares an address (4641 Gulfstarr Drive, Suite 102, Destin, Florida) and a facsimile number (954-337-3242) with Gallagher-Clifton.  Therefore, 'The Gallagher Firm' is in reality nothing more than an alternative name for Gallagher-Clifton.

55.    Gallagher-Clifton fulfills a critical role in Defendants scheme for two reasons.  First, it furthers the lies of Timeshare Owners Relief and Resort Legal Team that they are providing 'legal' solutions and that there are 'lawyers' working on behalf of consumers, including Wyndham Owners.

56.    Second, Gallagher-Clifton completes the isolation of the Wyndham Owner from Wyndham to prevent the Wyndham Owner from discovering the truth of what is happening to them.  Gallagher-Clifton refers to Wyndham Owners as "clients" and directing Wyndham to contact Gallagher-Clifton, and not the Wyndham Owner, going forward.  Thus, Wyndham is prohibited from communicating directly with the Wyndham Owner, and the Wyndham Owner has been told not to communicate with Wyndham, effectively prohibiting the Wyndham Owner from learning the truth that their account is going into foreclosure.  In fact, Resort Legal Team specifically advertises this as part of its "process":

## 3. The Process

- Cease and Desist is sent to the Timeshare Developer.
- Timeshare developer can NO LONGER contact you!
- Demand letters sent for cancellation & any possible money back. [4]

---

[4] http://www.resortlegalteam.com/ (last accessed Feb. 18, 2019).

### iii.    The Individuals

57.    The overall scheme is directed by two individuals: Stewart and Gallagher.

58.    Stewart directs the activities of Timeshare Owners Relief and Gallagher-Clifton and directly participates in those activities, including, without limitation, solicitation of Wyndham Owners, as demonstrated in greater detail hereinbelow.

59.    Gallagher directly participates in and directs the activities of Gallagher-Clifton, including, without limitation, the signing of the letters sent by Gallagher-Clifton to Wyndham which, as set forth hereinabove, are necessary for Defendants to execute their scheme. Representative samples of these letters are annexed hereto as Composite Exhibit 6.

### E.    Defendants' False and Misleading Advertising

60.    Defendants' scheme is predicated upon false and/or misleading advertisement that is designed to lure consumers, including Wyndham Customers, into Defendants' scheme.

### i.    Timeshare Owners Relief's Advertisements

61.    Timeshare Owners Relief primarily advertises through its website (www.timeshareownersrelief.com), which has been deactivated.  Copies of archived portions of this website are previously annexed hereto as Exhibit 2 and 3.

62.    Timeshare Owners Relief makes the following false and/or misleading advertisements on its website:

a)

» Low Cost, Flat Rate, No Haggle Fees
» Children Won't Inherit
» Guaranteed Low Prices
» 100% Money Back Guarantee
» Stop Annual Fees
» Cancel Timeshare Mortgages Too

This advertisement is false and/or misleading because the "100% Money Back Guarantee" is illusory as Timeshare Owners Relief considers a foreclosure to be a form of "exit" and will refuse to refund money to consumers who have been foreclosed upon.

b)

Our system is the easiest and most affordable way to get rid of your timeshare. We have created a risk-free solution to all of your timeshare troubles, backed by our 100% money-back guarantee. Cancelling your timeshare shouldn't be difficult, it shouldn't be expensive, and it shouldn't be risky.

This advertisement is false and/or misleading because Timeshare Owners Relief does not have a "system" and their actions – causing defaults of contracts – is not "risk-free".  This advertisement also repeats the "100% money-back guarantee" statement, which is false and/or misleading as set forth hereinabove.

- 15 -

c)

**1. Who does Timeshare Owners Relief, LLC provide Timeshare Relief for?**

Our program is for timeshare owners who:

» Are unable to use their timeshare

» Who are concerned about their inability to sell their timeshare through a listing company

» Have been overwhelmed by unexpected increasing Maintenance Fees and Special Assessments

» Are worried about their loved ones inheriting their timeshare and all the fees that go along with it.

» Have become increasingly frustrated with Exchange Companies

» Are looking for more affordable vacation options

» Are widowed, divorced, or simply can no longer travel with their loved ones

» Don't use their timeshare as much as they had originally intended

» No longer able to travel

» Searching for a way out for any reason

This advertisement is false and/or misleading because it states a variety of bases that are not valid grounds for cancellation of a contract such as a Timeshare Contract, for example, "[s]earching for a way out *for any reason*" (emphasis supplied) is not a valid legal argument for termination of a valid and binding contract.

d)

**3. Can Timeshare Owners Relief, LLC help me?**

Timeshare Owners Relief, LLC offers solutions designed to help timeshare owners who no longer use their timeshare, or are interested in eliminating the financial burden of ever increasing fees. Our solutions are also meant to help those who would like to avoid passing ownership of their timeshare, and it's financial burden, on to their children. Whether you currently own your timeshare, or have a mortgage on the property, Timeshare Owners Relief, LLC can help you. To find out how, please call one of our Timeshare Relief experts at **1-800-971-8081** and they can assess your individual situation and help find the best solution for you and your family.

- 16 -

This advertisement is false and/or misleading for the same reasons set forth in subparagraph c, *supra*.

e)

**8. How does Timeshare Owners Relief, LLC help me get rid of my timeshare?**

Timeshare Owners Relief, LLC works with professionally licensed, bonded and insured title agencies to remove your name from the timeshare deed. Depending on the specific property, the title may be transferred via a deed, club membership, lease, assignment, or as required by the covenants, conditions, or restrictions listed in documents governing the resort ownership program.

This advertisement is false and/or misleading because not only is this *not* how Timeshare Owners Relief conducted business, but, even if they did use "professional licensed, bonded and insured title agents", doing so would have no impact on a timeshare mortgage while Timeshare Owners Relief specifically advertises that they work with consumers with mortgages.

63.     The advertisements set forth in Paragraphs 4, 6, and 62, and Exhibit 6, will hereinafter be referred to as the "Timeshare Owners Relief False And Misleading Advertisements".

**ii.     Resort Legal Team's Advertisements**

64.     Resort Legal Team advertises both through its website (www.resortlegalteam.com) and through direct-to-consumer mailers.  A copy of the Resort Legal Team website is annexed hereto as Exhibit 7 while a copy of one of their direct-to-consumer mailers is annexed hereto as Exhibit 8.

65.     Resort Legal Team makes the following false and/or misleading advertisements on its website:

- 17 -

a)

**Our specialists are well informed in all aspects of the industry and are legally bound to give you honest information about your particular situation and to show you what your best options are, including matching you with an attorney who will be retained on your behalf.**

**The attorneys specialize in timeshare law and have successfully released thousands of timeshare owners from unwanted timeshare contracts.**

This advertisement is false and/or misleading because, while Resort Legal Team may, in some instances, refer a Wyndham Owner to an attorney, that attorney is not actually acting as the attorney for the Wyndham Owner.

b)

**Our specialists ascertain exactly the best approach for you to build the case, collecting information about your own personal experience with the timeshare purchase, starting from when you first were sold the timeshare, through how often they tried to upgrade you, to the actual availability and quality of the timeshare itself and whether or not you felt lied to in any part of the process.**

This advertisement is false and/or misleading because Resort Legal Team engages in form work, simply using the same strategy (forcing a foreclosure and hoping Wyndham will negotiate along the way) for all Wyndham Owners.

c)



☑  Was your presentation longer than the time promised?

☑  Were you told that you must buy today because the price will be more tomorrow?

☑  Were you not given the time to review the timeshare contract before signing?

☑  Were you not told the full extent of the debt you were incurring with interest charges?

☑  Were you told your timeshare is a great investment and would increase in value and could be sold for profit?

☑  Do you feel trapped in your timeshare because the resort will not take it back or you can't sell it?

*If you answered* **yes** *to* **ANY** *of the above questions, you may be a victim of fraud and deceptive sales practices.*

## The Qualification

### What qualifies for fraud or deceptive sales practices?

❑ Was your presentation longer than the time promised?

❑ Were you told that you must buy today because the price will be more tomorrow?

❑ Were you not given the time to review the timeshare contract before signing?

❑ Were you not told the full extent of the debt you were incurring with interest charges?

❑ Were you told your timeshare is a great investment and would increase in value and could be sold for profit?

❑ Do you feel trapped in your timeshare because the resort will not take it back or you can't sell it?

If you answered yes to ANY of the above questions, you may be a victim of fraud and deceptive sales practices.

These advertisements are false and/or misleading because "feel[ing] trapped in your timeshare" is a subjective feeling and certainly does not rise to the level of "be[ing] a victim of fraud and deceptive sales practices" and is not a valid basis for terminating a legally binding and enforceable contract.

d)

## 1. The Experts

- No Risk/Free Consultation with Specialist
- You retain an Attorney with years of experience specializing in Timeshare Law
- 100% Success or your Money Back by Resort Legal Team

This advertisement is false and/or misleading as Resort Legal Team does not actually refund any monies to consumers as it considers a foreclosure to be a "success".

e)

## 2. The Case

- Details about your experience with the timeshare are gathered.
- Documents, notices & contracts are collected.
- Your attorney builds your case and is there for any questions along the way.

- 19 -

This advertisement is false and/or misleading as Resort Legal Team forwards "cases" to non-lawyers whom it passes off as lawyers, such as Stewart.

f)

**Are there any timeshare contracts with any timeshare developers that you cannot help me cancel?** 

No. There are no timeshare contracts with any timeshare developers we can't 100% guarantee release from. As long as your contract hasn't gone into foreclosure, we can help!

This advertisement is false and/or misleading because Resort Legal Team "100% guarantee[s]" it can obtain a "release from" *any* timeshare contract from *any* developer, which is an impossibility as Resort Legal Team has caused Wyndham Owners to go into foreclosure.

66.     The advertisements set forth in Paragraphs 64, and Exhibits 7 and 8, will hereinafter be referred to as the "Resort Legal Team False And Misleading Advertisements".

### iii.    The False and Misleading Advertisements Deceive Consumers

67.     The various advertisements set forth hereinabove have the capacity to deceive, and indeed have deceived the consuming public, including Wyndham Owners.

68.     The Timeshare Owners Relief False And Misleading Advertisements have actually deceived Wyndham Owners, as shown in the consumer complaints annexed hereto as Exhibit 9.

69.     The Resort Legal Team False And Misleading Advertisements have actually deceived Wyndham Owners, as shown in the declaration annexed hereto as Exhibit 10.

### COUNT I
#### Violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)
(Against Timeshare Owners Relief and Stewart)

70.     Wyndham adopts and realleges paragraphs 1 through 46, 57 through 63, and 67 through 69 as if fully set forth herein.

71.     This is an action for violation of the Lanham Act, 15 U.S.C. § 1125(a)(1).

72.     Timeshare Owners Relief willfully, deliberately, and egregiously made false or misleading statements of fact in its commercial advertisements and intended to mislead consumers.  The statements described above and incorporated herein, more specifically the Timeshare Owners Relief False and Misleading Advertisements, were literally false, either on their face or by necessary implication, as set forth hereinabove.

73.     Stewart directed and controlled the Timeshare Owners Relief False and Misleading Advertisements.

74.     The Timeshare Owners Relief False and Misleading Advertisements were commercial speech made by a defendant acting in competition to Wyndham by trying to interfere with Wyndham's business relationships for Timeshare Owners Relief's and Stewart's own financial gain, for the purpose of influencing consumers to retain their services, and were disseminated sufficiently to the timeshare owning public to constitute advertising or promotion within the timeshare industry

75.     Defendants' false or misleading statements either deceived or had the capacity to deceive a substantial segment of the consuming public.

76.     Defendants' deception is material, in that it is likely to influence the consumers' decisions whether to retain Defendants' services or to cease making payments to Wyndham or utilize the Ovation Program, which is available to assist Wyndham Owners who may wish to legitimately terminate their timeshare ownership with Wyndham

77.     Defendants' advertised services affect interstate commerce.

78.     Defendants are operating as competitors to Wyndham.  Once a Wyndham Owner enters into an agreement with Timeshare Owners Relief, the sole purpose of that agreement is to

cause that Wyndham Owner to withdraw his or her business from Wyndham, effectively converting that individual from a Wyndham Owner to a customer of Timeshare Owners Relief and Stewart.

79.    Wyndham has been and continues to be injured as a result of Defendants' false and misleading statements.

80.    Pursuant to 15 U.S.C. § 1117, Wyndham is entitled to recover (i) its actual damages sustained as a result of the false advertising, (ii) Defendants' profits resulting from their false advertising to Wyndham Owners, and (iii) the costs of the action.

81.    Pursuant to 15 U.S.C. § 1116, Wyndham seeks an injunction upon such terms as the Court may deem reasonable, to prevent further violations by Defendants of 15 U.S.C. 1125(a).

## COUNT II
### Violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)
(Against Resort Legal Team)

82.    Wyndham adopts and realleges paragraphs 1 through 42, 47 through 50, 60, and 64 through 69 as if fully set forth herein.

83.    This is an action for violation of the Lanham Act, 15 U.S.C. § 1125(a)(1).

84.    Resort Legal Team willfully, deliberately, and egregiously made false or misleading statements of fact in its commercial advertisements and intended to mislead consumers.  The statements described above and incorporated herein, more specifically the Resort Legal Team False and Misleading Advertisements, were literally false, either on their face or by necessary implication, as set forth hereinabove.

85.    The Resort Legal Team False and Misleading Advertisements were commercial speech made by a defendant acting in competition to Wyndham by trying to interfere with Wyndham's business relationships for Resort Legal Team's own financial gain, for the purpose

- 22 -

of influencing consumers to retain their services, and were disseminated sufficiently to the timeshare owning public to constitute advertising or promotion within the timeshare industry

86.    Defendant's false or misleading statements either deceived or had the capacity to deceive a substantial segment of the consuming public.

87.    Defendant's deception is material, in that it is likely to influence the consumers' decisions whether to retain Defendant's services or to cease making payments to Wyndham or utilize the Ovation Program, which is available to assist Wyndham Owners who may wish to legitimately terminate their timeshare ownership with Wyndham

88.    Defendant's advertised services affect interstate commerce.

89.    Defendant is operating as a competitor to Wyndham.  Once a Wyndham Owner enters into an agreement with Resort Legal Team, the sole purpose of that agreement is to cause that Wyndham Owner to withdraw his or her business from Wyndham, effectively converting that individual from a Wyndham Owner to a customer of Resort Legal Team.

90.    Wyndham has been and continues to be injured as a result of Defendant's false and misleading statements.

91.    Pursuant to 15 U.S.C. § 1117, Wyndham is entitled to recover (i) its actual damages sustained as a result of the false advertising, (ii) Defendant's profits resulting from their false advertising to Wyndham Owners, and (iii) the costs of the action.

92.    Pursuant to 15 U.S.C. § 1116, Wyndham seeks an injunction upon such terms as the Court may deem reasonable, to prevent further violations by Defendant of 15 U.S.C. 1125(a).

**COUNT III**
**Contributory False Advertising in Violation of 15 U.S.C. § 1125(a)(1)**
(Against Gallagher, Stewart, and Gallagher-Clifton)

WPBDOCS 9871662 3

93.    Wyndham adopts and realleges paragraphs 1 through 69, 71 through 79, and 83 through 90 as if fully set forth herein.

94.    This is an action for a contributory violation of the Lanham Act, 15 U.S.C. § 1125(a)(1).

95.    Timeshare Owners Relief, Resort Legal Team, and Stewart willfully, deliberately, and egregiously made false or misleading statements of fact in their commercial advertisements and intended to mislead consumers.  The statements described above and incorporated herein were literally false, either on their face or by necessary implication, as set forth hereinabove.

96.    Wyndham has been and continues to be injured as a result of these false and misleading statements.

97.    Gallagher, Stewart, and Gallagher-Clifton have contributed and continue to contribute to this false advertising by knowingly inducing or causing the conduct, or by materially participating in it by providing a necessary element of the false and misleading advertising.

98.    Gallagher, Stewart, and Gallagher-Clifton explicitly or implicitly encourage the false advertising because they permit Defendants to advertise "legal services" and promote Gallagher, Stewart, and Gallagher-Clifton as providing these "legal services" to Wyndham Owners, who are deceived into believing that they are receiving legal representation when they are, in fact, not.

99.    The Timeshare Owners Relief False And Misleading Advertisements, and the Resort Legal Team False And Misleading Advertisements (collectively the "False Advertisements") are public, serious, and widespread, and Gallagher, Stewart, and Gallagher-Clifton have full knowledge of such advertising and condone it, enable it, and participate in it.

- 24 -

100.    Gallagher, Stewart, and Gallagher-Clifton financially benefit from the False Advertisements in the form of client referrals and fee splitting with Timeshare Owners Relief and Resort Legal Team, which each pass a portion of the fees they take from Wyndham Owners to Gallagher, Stewart, and Gallagher-Clifton.

101.    The revenue generated by Gallagher, Stewart, and Gallagher-Clifton from Wyndham Owners is derived entirely through their reliance on the False Advertisements.

102.    Pursuant to 15 U.S.C. § 1117, Wyndham is entitled to recover (i) its actual damages sustained as a result of the False Advertisements, (ii) Defendants' profits resulting from the false advertising to Wyndham Owners, and (iii) the costs of the action.

103.    Pursuant to 15 U.S.C. § 1116, Wyndham seeks an injunction upon such terms as the Court may deem reasonable, to prevent further contributory violations by Defendants of 15 U.S.C. 1125(a).

**COUNT IV**
**Tortious Interference with Contractual Relations**
(Against All Defendants)

104.    Wyndham adopts and realleges paragraphs 1 through 69 as if fully set forth herein.

105.    This is a cause of action for tortious interference with contractual relations against Defendants.

106.    Wyndham has contractual relationships with Wyndham Owners through the Timeshare Contracts.

107.    Defendants have actual, constructive, and/or specific knowledge of the contractual relationships between Wyndham and the Wyndham Owners. The very fact that Wyndham have a business relationship with the Wyndham Owners is the basis upon which

Defendants sought to establish a relationship with the Wyndham Owners. Indeed, if it were not for the existence of the contractual relationships between Wyndham and the Wyndham Owners, Defendants would have no reason to market their "timeshare cancellation service".

108. Defendants, through various inter-related entities as described hereinabove, have successfully solicited Wyndham Owners and caused or induced them to breach and/or terminate their contractual relationships with WVR, WRDC, and/or SV.

109. In particular, Defendants have intentionally procured the breach of Wyndham's contractual relationships by soliciting Wyndham Owners and persuading them to hire Defendants to help "cancel" (in reality, breach) their Timeshare Contracts. Defendants also procure breaches by directly instructing Wyndham Owners to stop paying their timeshare loans and maintenance fees and/or engaging in improper transfers.

110. If Wyndham Owners knew the truth about Defendants' illusory services or about how Defendants' actions would adversely impact them, they would not pay exorbitant fees to Defendants nor unlawfully terminate (through breach resulting in foreclosure) their timeshare interests.

111. Defendants have utilized improper and/or illegal means to interfere with Plaintiffs' contractual relations.

112. Defendants' actions were done with an improper motive and not made in good faith, but rather were made with the knowledge and predominant purpose to injure Wyndham or with reckless disregard for the attendant consequences naturally, directly, and proximately resulting from Defendants' actions and without reasonable grounds for Defendants to believe that their actions were justified and proper.

113.    As a direct and proximate result of Defendants' intentional misconduct, Wyndham Owners have terminated, or have baselessly sought to terminate, their contractual relationships with Plaintiffs and, more specifically, WVR, WRDC, and/or SV, before the expiration of the terms of those contracts.  These terminations, and attempted terminations, also interfere with Wyndham's ability to enter into subsequent transactions with those same Wyndham Owners.

114.    Defendants did not and do not have any justification or privilege in procuring the breach of such contractual relationships, as Defendants are strangers to the contractual relationships between Wyndham and its Owners, and their interference with Wyndham's business is willful and malicious.

115.    Furthermore, Defendants profits greatly by advertising their "timeshare cancellation service" as legal representation and thereby receiving significant "fees" from Wyndham Owners.

116.    As a direct and proximate result of the foregoing, Plaintiffs suffered economic damages arising from Wyndham Owners' default of their payment obligations under the Timeshare Contracts.

117.    Plaintiffs are entitled to damages against all Defendants jointly and severally.

118.    Defendants' ongoing conduct has caused and, if not permanently enjoined, will continue to cause irreparable harm to Wyndham in the disruption of customer and other contractual relations; therefore, Wyndham does not have an adequate remedy at law.

119.    Defendants' conduct is intentional and willful and entitles Plaintiffs to an award of punitive damages

## COUNT V
### Civil Conspiracy to Commit Tortious Interference with Contractual Relations
(Against All Defendants)

WPBDOCS 9871662 3

120.    Wyndham adopts and realleges paragraphs 1 through 69 as if fully set forth herein.

121.    This is a cause of action for civil conspiracy, wherein Defendants have acted in concert to tortiously interfere with Wyndham's contractual relationships with Wyndham Owners.

122.    Defendants are parties to this civil conspiracy.   Defendants have a common design to interfere with Wyndham's contractual relationships with Wyndham Owners, each Defendant having the intent, and knowledge of the others' intent, to accomplish by concerted action unlawful purposes and/or lawful purposes by unlawful means.

123.    Defendants have committed various overt acts in furtherance of their conspiracy, including but not limited to, wrongfully soliciting Wyndham Owners through false statements and misrepresentations regarding Defendants' "timeshare cancellation service", misleading Wyndham Owners about the nature of their timeshare interest, soliciting Wyndham Owners to terminate or cancel their Timeshare Contracts with Wyndham, and inducing Wyndham Owners to stop making payments related to their timeshare interest.

124.    Defendants have made agreements to perform separate aspects of this conspiracy in concert, and then divide the compensation generated from this scheme among the Defendants.

125.    Defendants' civil conspiracy has a particularly powerful and coercive effect in that Stewart, who is not a lawyer, Gallagher, who is a lawyer but is not actually representing Wyndham Owners as an attorney, and Gallagher-Clifton, which is not a law firm, directly and indirectly (through Timeshare Owners Relief and Resort Legal Team) solicit Wyndham Owners by stating they are providing legal services when they are in fact not.

126.    Defendants thus operate under the imprimatur of a law firm, while unlawfully evading ethical standards and Rules Regulating the Florida Bar which would limit the direct solicitation of Wyndham Owners as well as preclude the sharing of legal fees with non-lawyers.

127.    As a direct and proximate result of Defendants' acts, Wyndham has suffered economic losses, including damages arising from defaults under the Timeshare Contracts to which Defendants have interfered.  Wyndham has suffered these losses in the past, and will continue to suffer such losses in the future.

## COUNT VI
### Violation of Florida's Deceptive and Unfair Trade Practices Act – Injunctive Relief Only
(Against All Defendants)

128.    Wyndham adopts and realleges paragraphs 1 through 69 and 100 as if fully set forth herein.

129.    This is a cause of action for violation of §501.201 et seq., Florida's Deceptive and Unfair Trade Practices Act ("FDUPTA").

130.    Timeshare Owners Relief and Resort Legal Team, by advertising, soliciting, offering, and providing its timeshare cancellation scheme to timeshare customers, are engaged in "trade or commerce" as defined under §501.203(8), Fla. Stat

131.    Timeshare Owners Relief and Resort Legal Team have intentionally engaged in deceptive and unfair trade practices in violation of §501.204(1), Fla. Stat. by soliciting Wyndham Owners through false and misleading advertising and marketing materials, including but not limited to, the False Advertisements.

132.    Gallagher-Clifton has participated in the deceptive and unfair trade practices by enabling and participating in the activities of Timeshare Owners Relief and Resort Legal Team.

133.    Stewart and Gallagher are vicariously liable for the actions and/or omissions of their employees and agents in engaging in these unfair and deceptive trade practices

134.    Defendants have willfully engaged in said practices for their own commercial advantage when they knew that such practices were unfair, misleading, false, and/or deceptive to Wyndham and Wyndham's Owners.

135.    As a direct and proximate result of Defendants' unfair and deceptive trade practices, Wyndham has suffered economic losses.

136.    Wyndham's losses will increase unless Defendants are permanently enjoined from continuing their deceptive and unfair business practices.

137.    Wyndham is entitled to recover its attorney's fees and costs from Defendants under Sections 501.2105 and 501.211, Fla. Stat.

**Prayer for Relief**

Wherefore, Wyndham respectfully requests the Court enter Final Judgment in its favor and against the Defendants, jointly and severally, for the following:

a)  preliminary injunctive relief as to Counts I through VI;

b)  permanent injunctive relief as to Counts I through VI;

c)  actual damages as to Counts I through V, including, without limitation, disgorgement of profits;

d)  corrective advertising;

e)  treble damages as to Counts I through III;

f)  attorneys' fees;

g)  costs;

h)  pre- and post- judgment interest; and

- 30 -

i)   such other and further relief as the Court deems appropriate.

Dated: March 11, 2019

/s/ Alfred J. Bennington, Jr.
**ALFRED J. BENNINGTON, JR., ESQ.**
Florida Bar No. 0404985
bbennington@shutts.com
**GLENNYS ORTEGA RUBIN, ESQ.**
Florida Bar No. 556361
grubin@shutts.com
**SHUTTS & BOWEN LLP**
300 South Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone: (407) 835-6755
Facsimile:  (407) 849-7255

and

**DANIEL J. BARSKY, ESQ.**
Florida Bar No. 25713
dbarsky@shutts.com
**SHUTTS & BOWEN LLP**
200 South Biscayne Boulevard, Suite 4100
Miami, Florida 33131
Telephone: (561) 650-8518
Facsimile:  (561) 822-5527

*Attorneys for Plaintiffs*