UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

WYNDHAM VACATION OWNERSHIP,
INC.; WHYDHAM VACATION RESORTS,
INC.; WYNDHAM RESORT
DEVELOPMENT CORPORATION; SHELL
VACATIONS, LLC; SVC-WEST, LLC;
SVC-AMERICANA, LLG; and SVC-
HAWAII, LLC

Civil Action No.:  6:19-cv-00476-GAP-TBS

                    Plaintiffs,

v.

CHARLES E. GALLAGHER; WILLIAM P.
STEWART, JR.; GALLAGHER-CLIFTON,
LLC; TIMESHARE OWNERS RELIEF,
LLC; and RESORT LEGAL TEAM, INC.
                    Defendants.

---

## DEFENDANT'S MOTION TO DISMISS

COMES NOW Defendant, RESORT LEGAL TEAM, INC., by and through its counsel, and pursuant to Federal Rule of Civil Procedure 12(b) hereby files its Motion to Dismiss Plaintiffs' Complaint for lack of personal jurisdiction and for failure to state a cause of action against this Defendant, and in support thereof states the following:

## I. RELEVANT FACTS

Defendant Resort Legal Team, LLC ("RLT") is a Nevada Corporation. Its principal place of business and headquarters are located in the state of Nevada. RLT is in the business of helping consumers navigate the process of safely and legally exiting from oppressive

timeshare contracts that the timeshare resorts should not have sold the consumers for many reasons, including financial, legal, and ethical reasons. In particular, RLT is committed to providing this valuable and important service because consumers, often after they were subjected to high-pressure sales presentations, frequently find themselves financially burdened by unwanted timeshares, for example, because the annual maintenance fees have risen exponentially since the date of the original contract, or because the consumers have suffered from health challenges or other changes in circumstances that prevent them from enjoying their timeshare ownership.

Oftentimes the timeshares are purchased by elderly persons not adequately resistive to the intense hard-sell and high-pressured sales techniques or tactics that amount to impractical, improbable, overpriced and ultimately, unwanted contracts. In many instances, these contracts are void, voidable or subject to modification because of misrepresentations and/or omissions at the time of sale. Resort Legal Team retains and works with law firms to assist these owners (including dissatisfied Wyndham timeshare owners) in exiting their timeshares.

Plaintiffs erroneously argue that RLT's alleged representations to Wyndham consumers "likely influence the consumers' decisions whether to retain Defendant's services or to cease making payments to Wyndham or utilize the Ovation Program, which is available to assist Wyndham Owners who may wish to legitimately terminate their timeshare ownership with Wyndham." See Complaint at ¶¶ 76; 87. However, by virtue of the timeshare exit industry itself, consumers are already predisposed to cancel their timeshare obligations with Wyndham prior to soliciting RLT's services.

2

RLT does not transact any business in the state of Florida. See Declaration of Albert Trevino, ¶ 3.  It has no office in Florida, and has no employees in Florida.  See Declaration of Albert Trevino, ¶ 4.  RLT operates its by sending generic solicitations regarding common timeshare complaints, by physical mail, to individuals around the United States who Defendant RLT believes owns a deeded timeshare interest. See Declaration of Albert Trevino, ¶ 7.  In addition, RLT owns and operates a website containing information about its business. See Declaration of Albert Trevino, ¶ 8.  RLT's website is not specifically directed at the state of Florida, nor is it specifically directed at Florida residents. See Declaration of Albert Trevino, ¶ 9.  If an individual owner who lives anywhere in the United States, who happens to own a Wyndham timeshare interest in the state of Florida, contacts RLT interested in its services, after payment of a fee to Defendant RLT, RLT then contacts and retains Florida-licensed legal counsel to represent the individual. See Declaration of Albert Trevino, ¶ 10.

Apart from retaining legal counsel in behalf of individuals who contact Defendant RLT (either by word of mouth, physical mailer, or through its website), Defendant RLT has nothing to do with those individuals who bring disputes with Wyndham. See Declaration of Albert Trevino, ¶ 11.  Most, if not all, purchasers of timeshares in Florida do not reside in Florida. It would be unusual for a Florida timeshare purchaser to reside in the same state.

Plaintiffs Wyndham Vacation Ownership, Inc. and the related Wyndham entities bringing suit (collectively, "Wyndham") are in the business of developing timeshares and conducting timeshare sales interests throughout the United States. Wyndham prides itself for being "a global leader in the timeshare and vacation ownership industry with a network of

resorts spanning the world." See Complaint at ¶¶ 1-2.  Wyndham claims to enter into valid and binding contracts with consumers to affect the ownership of the timeshare interests in those properties.  Wyndham has engaged in a transnational litigation scheme and media campaign targeting law firms and companies offering services to timeshare consumers victimized by unconscionable contracts of adhesion, which purport to bind them *in perpetuity*.

## II . LEGAL ARGUMENT

### A.  **12(b)(6) Standard of Review.**

Dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is warranted where it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackston v. Alabama*, 30 F.3d 117, 120 (11th Cir. 1994). While a court must accept all *factual* allegations contained in the complaint as true and view the facts in a light most favorable to the plaintiff when reviewing a motion to dismiss, *conclusions* in a pleading "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950 (2009). On the contrary, legal conclusions "must be supported by factual allegations." *Id.*

Where a complaint alleges misrepresentations grounded in fraud under Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* ("FDUTPA"), the plaintiff must plead the alleged fraud with *particularity* pursuant to Rule 9(b), Federal Rules of Procedure. *See, e.g. Koch v. Royal Wine Merchants, Ltd.*, 847 F.Supp.2d 1370, 1381 (S.D. Fla. 2012). Accordingly, Wyndham's FDUTPA claims for false advertising must be pled with particularity if they are to survive dismissal.

B. __The Court Should Dismiss for Lack of Personal Jurisdiction Over Defendant RLT__

Plaintiffs' allegations fail to establish personal jurisdiction over RLT. General jurisdiction is absent because RLT does not have and never had substantial continuous, or systematic contacts with Florida. Specific jurisdiction is also absent because virtually none of the Plaintiffs' claims arise, directly or proximately, from conduct that occurred in or was directed at Florida, as required for personal jurisdiction. Plaintiffs' reliance on RLT's incidental or coincidental contacts with Florida, the occasional (if any) correspondence directed to a Florida resident, is insufficient. Thus, this Court should dismiss Plaintiffs' complaint against RLT in full under Rule 12(b)(2).

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Plaintiffs cannot "simply rest on the bare allegations of [a] complaint," *Amba Marketing Sys., Inc. v. Jobar Int'l.*, 551 F.2d 784, 787 (9th Cir. 1977), but must "demonstrate facts that if true would support jurisdiction over the Defendant," *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003).

Due process "constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014). "Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have 'certain minimum contacts . . .   such that the maintenance of the suit does not offend traditional notions of fair play and substantial

justice.'" *Id.* (citation omitted). The allegations in Plaintiffs' complaint, taken as true, do not establish the required minimum contacts.

1. **There is no general jurisdiction over Defendant RLT because it did not have substantial or continuous contacts with Florida.**

General jurisdiction exists where a defendant is held to answer in a forum for causes of action that are unrelated to the defendant's forum activities. *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210 (11th Cir. 2009). General jurisdiction is only appropriate when the defendant's forum activities are so substantial and continuous and systematic that the defendant may be deemed present in the forum. *Helicopteros Nacionales de Colombia, S.A. Hall*, 466 U.S. 408 (1984).

In this case, as shown by the Declaration of Albert Trevino, Defendant's CEO and President, RLT is a Nevada corporation with its principal place of business in that state.  See Declaration of Albert Trevino, ¶¶ 1-2.   RLT has no employees in Florida, and no property or on-going presence in Florida. See Declaration of Albert Trevino, ¶¶ 4-6.  Indeed, contrary to Plaintiffs' assertion, RLT does not transact any business in Florida, nor does its own or operate out of any office in Florida. See Declaration of Albert Trevino, ¶¶ 3-4.   Defendant RLT sends mailers across the country to those who own deeded timeshare interests, including *some* Wyndham timeshares. See Declaration of Albert Trevino, ¶¶ 7, 10-11.   However, the majority (if not all) of the mailers sent to owners of Wyndham timeshares located in Florida are not sent to Florida residents or Florida addresses. Indeed, the majority (if not all) owners of Wyndham timeshares located in Florida are not owned by Florida residents. Most timeshare owners purchase timeshares located outside of their home states. Thus, none of the contacts of the Defendant RLT's contacts with the state of Florida have been either

substantial nor continuous and systematic, such that Florida has no general jurisdiction over RLT.

2.   **There is no specific jurisdiction over defendant RLT because there is no "meaningful contact" with the State of Florida.**

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden*, 134 S.Ct. at 1122 (citations omitted). "To establish a court's specific jurisdiction under [Florida's long arm statute] . . . a nonresident defendant's activities 'must . . . show a *general course of business activity in the State* for pecuniary benefit.'" *Fraser v. Smith*, 594 F.3d 842, 848 (2010) (citation omitted). "It has long been recognized that a court has the minimum contacts to support specific jurisdiction only where the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Consolidated Development Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000) (citation omitted). "The requirement that there be minimum contacts is grounded in fairness. It assures 'that the defendant's conduct and connection with the forum State is such that he should reasonably anticipate being hauled into court there.'" *Id.* (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct., 100 S. Ct. 559, 567 (1980)).

Although the Eleventh Circuit in *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008) has held, in tort cases, that "the Florida long-arm statute permits jurisdiction over the nonresident defendant who commits a tort outside of the state that causes injury inside the state," a plaintiff must still establish that a nonresident defendant has minimum contacts with the forum state to comport with the due process requirements of the Fourteenth Amendment.

*See Walden,* 571 U.S. 277 (2014). More specifically, in *Walden*, the U.S. Supreme Court instructed that the "proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id*. at 290.

In *Walden*, the Supreme Court determined that the effects of a Georgia police officer on a Nevada resident were "not connected to [Nevada] in a way that makes those effects a proper basis of jurisdiction." *Id*. at 287. The Court also rejected the assertion that a minimum contacts inquiry was satisfied because the Georgia officer supposedly knew his actions would cause harm in Nevada because such an assertion would "impermissibly allow[] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Id*. at 288-89.

Defendant RLT does not have any substantial contact with the state of Florida. First, RLT does not have an office in the state of Florida and does not operate in the state of Florida. See Declaration of Albert Trevino, ¶¶ 3-4.   RLT has no employees in Florida. See Declaration of Albert Trevino, ¶ 4.

Plaintiffs' contention that maintenance of a website available on the *world wide web* being the available Florida residents is never sufficient for establishing a nonresident defendant's minimum contacts with a forum state. *See Mavrix Photo, Inc. v. Brand Techs., Inc.,* 647 F.3d 1218, 1227 (9th Cir. 2011)("To permit the exercise of [personal] jurisdiction based on the accessibility in the forum of a non-resident interactive website would expose most large [ ] entities to nationwide general jurisdiction").

In short, Defendant RLT's only contact with the Florida is the *potential* for the occasional random mailer to a Florida resident who is very unlikely to own a Florida-based

Wyndham timeshare. See Declaration of Albert Trevino, ¶ 7.  Most, if not all, other mailers potentially at issue in this case were sent to non-Florida residences with non-Florida addresses.  Outside of these mailers, the only other potential clients of RLT are those individuals who hear by word of mouth or by website, neither of which is sufficient for establishing minimum contacts for specific jurisdiction.  See Declaration of Albert Trevino, ¶ 11.

Only then, if an individual is interested in RLT's services, does RLT accept a fee and retain legal counsel for and in behalf of its clients. See Declaration of Albert Trevino, ¶ 10. Certainly retaining legal counsel cannot be the basis of establishing minimum contacts for specific jurisdiction. Because Plaintiffs cannot establish any "meaningful contact" with Florida, this case should be dismissed for lack of personal jurisdiction.

**C. The Complaint does not state a cognizable claim under the Lanham Act against RLT(Count II).**

The Lanham Act is intended to "protect persons engaged in commerce within the control of Congress against unfair competition" -- that is, against "injuries to business reputation and present and future sales." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1389-90 (2014) (citation and internal alterations omitted). *Id.* (citations omitted); *Global Tech LED, LLC v. Hilumz Int'l Corp.*, 2016 WL 3059390 (M.D. Fla. May 31, 2016). To come within the scope of the Lanham Act, a plaintiff must show that the statements occurred within the context of "commercial advertising or promotion," which has been defined to include: 1) commercial speech; 2) by a defendant who is in *commercial competition* with plaintiff; 3) for the purpose of influencing consumers to buy defendant's goods or services; and 4) the representations … must be disseminated sufficiently to the

relevant purchasing public to constitute "advertising" or "promotion" within that industry. *See Tobinick v. Novella*, 848 F.3d 935, 950-51 (11th Cir. 2017) (emphasis added); *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1349 (11th Cir. 2012). Thus, in the context of false advertisement claims under the Latham Act, the opposing party must allege and subsequently prove it is a competitor. *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005).

Here, Plaintiffs allege that they maintain standing to pursue their claims under the Lanham Act because   RLT is operating as a competitor to Wyndham and RLT competes with Wyndham for timeshare owners. See Complaint at ¶ 85-89. Plaintiffs allege that their standing derives from the fact that RLT's purported misrepresentations have the "sole purpose to cause Wyndham Owner[s] to withdraw his or her business from Wyndham, effectively converting that individual from a Wyndham Owner to a customer of Resort Legal Team". *Id*. at ¶ 89. In other words, Plaintiffs allege that RLT violated the Lanham Act by persuading Wyndham Owners to breach their existing payment obligations with Wyndham by engaging in false representations. *Id*

Although Plaintiffs allege that they "compete" with RLT for timeshare owners' resources, this is not the kind of competition necessary to establish standing. The intent of the Lanham Act, as relevant here, is "to protect persons engaged in ... commerce against unfair competition." 15 U.S.C. § 1127; *see also Halicki v. United Artists Commc'ns, Inc.*, 812 F.2d 1213, 1214 (9th Cir. 1987) (statutory intent expressed in § 1127 is "extraordinarily helpful" in interpreting standing requirements); *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1109 (9th Cir. 1992), *cert. den.*, 506 U.S. 1080 (1993). For a false advertising claim, therefore, a plaintiff

10

must allege a "discernibly competitive injury," *Waits*, 978 F.2d at 1110, *i.e.*, that "the injury is 'competitive,' or harmful to the plaintiff's ability to compete with the defendant," *Jack Russell*, 407 F.3d at 1037. This requires that the competitors provide the same product or service. *See Brosnan v. Tradeline Sols., Inc.*, 681 F. Supp. 2d 1094, 1101 (N.D. Cal. 2010); *see also Black's Law Dictionary* (10th ed. 2014) ("competition").   Because Plaintiffs and RLT do not offer the same products or services, they are not in competition. Accordingly, Plaintiffs lack standing to assert a false advertising claim under the Lanham Act against Defendant RLT.

Furthermore, RLT's alleged conduct is not actionable and unremarkable. Given that Wyndham could avoid the purported end result -- foreclosure proceedings -- by simply taking back consumers' unwanted timeshares voluntarily, none of the advertising cited in the Complaint could reasonably cause injuries to Wyndham's business reputation and present and future sales, and will not support a claim under the Lanham Act. Moreover, Plaintiffs have not and cannot even establish that they are in direct competition with RLT. Indeed, timeshare exit companies and timeshare developers cannot be in direct competition as a matter of law. See  *Welk Resort Group Inc. v. Reed Hein & Associates, LLC*, 3:17-CV-01499-L-AGS, 2019 WL 1242446, at *15 (S.D. Cal. Mar. 18, 2019)(dismissing Lanham Act false advertising claim brought by timeshare developer against timeshare exit company because both industries do not offer the same products or services).

As stated by the Honorable Gregory A. Presnell in a notably similar action, "[Plaintiff timeshare developers] do not compete with [timeshare exit companies] in the sale of goods or services. Rather, Plaintiffs are in the business of getting consumers into timeshares, while

RLT in the business of getting them out. Though their target audiences overlap, Plaintiffs and RLT are engaged in entirely different markets. They are adversaries, not competitors." *See Orange Lake Country Club, Inc. v. Reed Hein & Assocs.,* 2018 WL 5279135, at \*8 (M.D. Fla. Oct. 24, 2018).

### D. **The Complaint fails to state a claim for tortious interference with contract relations (Count IV).**

To survive a motion to dismiss on its tortious interference claim, Plaintiffs must plead: 1) the existence of a contract under which Wyndham has rights; 2) RLT's knowledge of that contract; 3) RLT's intentional procurement of the contract's breach; 4) the absence of any justification or privilege; and 5) that Plaintiffs suffered damages as a result of RLT 's interference. *See Ace Pro Sound & Recording, LLC v. Albertson,* 512 F.Supp. 2d 1259, 1268 (S.D. Fla. 2007); *Hush Little Baby, LLC v. Chapman,* 2015 WL 9165909, \*8 (M.D. Fla. 2015); *Pelc v. Nowak,* 2012 U.S. Dist. LEXIS 87007, at \*4-5 (M.D. Fla. 2012). It is well-settled jurisprudence under Florida law that to be liable for tortious interference, a defendant must have both "an intent to damage the business relationship and a lack of justification" for doing so. *See Smith v. Emery Air Freight Corp.,* 512 So.2d 229, 230 (Fla. 3d DCA 1987). In the present case, Plaintiffs' allegations fall short of its burden of pleading the necessary elements of this tort as set forth below.

### 1. **As an agent and/or representative of Wyndham consumers, RLT cannot have interfered with the contractual relations as a matter of law.**

It is self-evident that a party cannot interfere with its ***own contract***. *See, e.g., Cedar Hills Props. Corp. v. E. Fed. Corp.,* 575 So.2d 673, 676-77 (Fla. 1st DCA 1991); *Ethyl Corp. v. Balter,* 386 So.2d 1220, 1224 (Fla. 3d DCA 1980). Furthermore, agents or representatives

acting for and on behalf of a principal within his capacity and scope as an agent cannot be held liable for tortious interference as a matter of law. *See, e.g., Richard Bertram, Inc. v. Sterling Bank & Trust,* 820 So.2d 963, 965 (Fla. 4th DCA 2002); *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So.2d 381, 386 (Fla. 4th DCA 1999); *see also Abruzzo v. Haller*, 603 So.2d 1338, 1339-41 (Fla. 1st DCA 1992). The interfering defendant must be a third party and "a *stranger* to the business relationship." *Treco Int'l S.A. v. Kromka*, 706 F. Supp. 2d 1283, 1289 (S.D. Fla. 2010) (emphasis added); *see also Salit*, at 386.

Wyndham's own allegations establish that RLT and its representatives are hired by and work for the Wyndham owners to assist them in exiting from their contracts with Wyndham. As explained above, RLT's involvement in the contractual relationship between Wyndham owners and Plaintiffs is to help them navigate the timeshare exit process mainly by advising them of their options and retaining counsel on their behalf.   As agents or representatives of the timeshare owners and by virtue of the well-established agency relationship, RLT cannot, as a matter of law, have interfered with any contract to which their clients were a party. This would be synonymous to a party interfering with its own contract. *See Richard Bertram, Inc.,* at 965.

**2. Wyndham owners that retain RLT's services are predisposed to terminate their contracts with Wyndham.**

Under Florida law, a party's "predisposition to breach" precludes any finding that it was induced to breach by a third party. *See Ingenuity, Inc. v. Linshell Innovations, Ltd.*, 644 Fed. Appx. 913, 916 (11th Cir. 2016); *see also Lake Gateway Motor Inn, Inc. v. Matt's Sunshine Gift Shops, Inc.*, 361 So.2d 769, 772 (Fla. 4th DCA 1978) (questioning whether the business relationship could hardly be considered mutually advantageous when it had already

deteriorated). The "gravamen of an action for tortious interference with a contractual relationship" is the malicious involvement of a third party inducing its breach with resulting injury. *See McKinney-Green, Inc. v. Davis*, 606 So.2d 393, 397 (Fla. 1st DCA 1992); *Cedar Hills Properties Corp. v. Eastern Federal Corp.,* 575 So.2d 673, 676 (Fla. 1st DCA 1991). As a predicate to any malicious involvement, however, a contract party's "predisposition to breach ... precludes any finding that [it] was induced to breach by [an outside party]." *Ingenuity, Inc.,* 644 Fed. Appx. at 916 (quoting *Farah v. Canada*, 740 So. 2d 560, 562 (Fla. 5th DCA 1999)); *see also Chi. Title Ins. Co. v. Alday–Donalson Title Co. of Fla*., 832 So.2d 810, 814 (Fla. 2d DCA 2002).

RLT's role in Plaintiffs' allegations is no different than any of the multitude of financial advisors who enable consumers to negotiate, reduce or even eliminate debt. Such financial assistance services do not constitute tortuous interference. Rather, a defendant does *not* tortuously interfere with a contract if that defendant merely assists someone who decides to breach the contract. *See Winmark Corp. v. Hill,* 2009 U.S. Dist. LEXIS 29687, at *4 (D. Minn. 2009).

Here, RLT's advertising materials attached to Plaintiffs' Complaint speak for themselves. RLT only solicits consumers that are predisposed to cancel their timeshare contractual obligations including consumers that experience financial/medical hardship, change of circumstances, or believe that they were subject to harassing sales practices or fraudulent sales tactics. See **Exhibit 7A** attached to Plaintiffs' Complaint.   Indeed, all of RLT's clients and consumers that solicit timeshare exit companies are already predisposed to cancel their contractual obligations. Otherwise, they would not contact a timeshare "exit"

company in the first place. Also, the fact that Wyndham has a reputation for engaging in harassing and/or deceptive trade practices speaks volumes[1]. Hence, Wyndham's reputation constitutes an additional showing that Wyndham owners in particular are predisposed to breach their contractual obligations with Wyndham.

### E.   Plaintiffs fail to state a claim for civil conspiracy (Count V).

A claim for civil conspiracy requires: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Craig v. Kropp*, 2017 U.S. Dist. LEXIS 88871, at *8 (M.D. Fla. 2017). The allegations of Plaintiffs' Complaint do not sufficiently plead these elements, and as set forth above, there is no valid underlying claims for tortious interference (Count IV),

---

[1] *See, e.g., Williams v. Wyndham Vacation Ownership, Inc.*, Superior Court of California, San Francisco County, Case No. CGC-12-526187, Rulings on Defendants' Post-Trial Motions, in which the court summarized evidence presented to the jury that certain of Wyndham's sales representatives defrauded customers, and mainly the elderly, in the form of falsely telling prospective consumers that Wyndham would buy back the timeshares its sold, falsely stating that maintenance fees could not be raised, and selling the elderly more time than such consumers could reasonably use before death. *See also Couch v. Wyndham Worldwide Corp.*, Middle District of Florida, Case No. 6:18-cv-02199-PGB-KRS; a class action pending in this district. In *Couch*, ¶ 240, Wyndham timeshare owners complain that when they attempt to make reservations at Wyndham's resorts, they are told that no units are available during the desired dates. Moreover, the *Couch* class plaintiffs allege (in paragraphs 3 and 4) that they are the victims of Wyndham's "highly organized and fraudulent 'TAFT' scheme to sell timeshare interests to prospective owners, to have existing owners remain in contracts involving the purchase of timeshare interests (including through the rescission period), and to have existing owners purchase additional timeshare interests," in violation of statutory law, common law, and the duty of good faith and fair dealing implicit in all contracts. . As alleged in Couch, paragraph 34 (with more detail in pages 9-19, "TAFT" is the practice where Wyndham employees are encouraged to " 'Tell Them Any F—ing Thing' to make a sale" as long as they don't put it in writing. *See also Williams v. Wyndham Vacation Ownership, Inc.*, Superior Court of California, San Francisco County, Case No. CGC-12-526187, Rulings on Defendants' Post-Trial Motions, p. 2 (reviewing evidence of "TAFT" submitted to the jury).

Finally, in just one of the many pending lawsuits brought by a law firm advocating on behalf of unhappy elderly Wyndham timeshare owners, *Overturf v. Wyndham Worldwide Operations, Inc.*, Middle District of Tennessee, Case No. 3:19-cv-00086, timeshare owners allege common law fraud, unconscionability, and violations of state consumer-protection legislation. In *Overturf*, the 63- and 65-year old Arkansas residents allege (in paragraph 21) that the pitch at Wyndham's sales office subjected them to "a circus-like atmosphere. The loud noise level in the sales office made it difficult for Plaintiffs to concentrate or engage in any meaningful dialogue. The noise level and number of individuals present were more fitting for a cattle auction than a discussion of an important financial transaction."

which is fatal to Wyndham's civil conspiracy claims. *See EMI Sun Village, Inc. v. Catledge,* 2013 U.S. Dist. LEXIS 140321 at \*4 (S.D. Fla. 2013) ("There is no actionable conspiracy claim absent an underlying wrong.").

Moreover, as a threshold matter, to the extent that Wyndham's claims for civil conspiracy are based on RLT's alleged conduct in instructing law firms to send letters of legal representation and demand letters to Wyndham on behalf of timeshare owners. Such claims are barred as a matter of law by Florida's litigation immunity privilege, even if the basis of such demand letters, "in the opinion of the developers, [are] completely without legal merit." The privilege provides legal immunity "to statements or actions taken during a judicial proceeding." *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, PA v. U.S. Fire Ins. Co.*, 639 So.2d 606, 607 (Fla. 1994); *see also Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So.2d 380, 383 (Fla. 2007) (privilege applies in all causes of action, whether common-law torts or statutory violations).

This absolute immunity applies not only to the parties in a proceeding but also to their counsel. *See Palaxar Grp., LLC v. Williams*, 2014 WL 5059286, at \*9 (M.D. Fla. 2014) (applying Florida law) (citation omitted). Of significance to this case, the privilege extends to pre-suit demand letters. *See Robb v. Rahi Real Estate Holdings LLC*, 2011 WL 2149941, at \* 3 (S.D. Fla. 2011). In *Robb*, the court dismissed a plaintiff's civil conspiracy claim because the act of sending demand letters failed to constitute the requisite "unlawful act or a lawful act by unlawful means." *Id.*, at \*3. The court noted that even if the defendant's conduct in sending the demand letters was improper, Florida law recognizes a privilege to engage in

even reckless or outrageous behavior if the defendant "did no more than assert legal rights in a legally permissible way." *Id.*, at *3, n.3.

What is more, the privilege to send demand letters is supported by public policy. "[T]he policy reasons for adopting a rule of immunity for actions taken in judicial proceedings" are based on "the perceived necessity for candid and unrestrained communications in those proceedings, free of the threat of legal actions predicated upon those communications…." The presumption is that the consequences of a party's actions will be addressed and remedied in the particular case. *See Robb, supra,* 2011 WL 2149941, at *3. As a matter of public policy, to allow anything more could lead to the disastrous re-litigation of issues into perpetuity. In addition, since RLT was merely acting as an agent for Wyndham Owners, Plaintiffs cannot plausibly argue that Wyndham Owners conspired to breach their own contracts. *See Ingenuity, Inc. v. Linshell Innovations, Ltd.*, 644 Fed. Appx. 913, 916 (11th Cir. 2016)

Thus, Plaintiffs' claim civil conspiracy is barred as a matter of law or is otherwise fatally defective, and should also be dismissed.

**F.    Plaintiffs' FDUTPA claims fail as a matter of law(Count VI).**

Plaintiffs allege that RLT is "engaged in deceptive and unfair practices, including Timeshare Owners by soliciting Wyndham Owners through false and misleading advertising and marketing materials, including but not limited to, the False Advertisements."   See Plaintiffs' Complaint at ¶ 131.

Because Plaintiffs FDUTPA claims relating to advertising misrepresentation  is grounded in fraud, Wyndham is required to plead the alleged fraud with particularity

pursuant to Rule 9(b). *See, e.g., Koch v. Royal Wine Merchants, Ltd.,* 847 F.Supp.2d 1370, 1381 (S.D. Fla. 2012); *Garcia v. Santa Maria Resort, Inc.,* 528 F. Supp. 2d 1283, 1294 (S.D. Fla. 2007) (same); *Stires v. Carnival Corp., Stires v. Carnival Corp.,* 243 F.Supp.2d 1313, 1322 (M.D. Fla. 2002) (directing plaintiff to replead FDUTPA damages with particularity); *see also North Brevard Hospital District v. McKesson Technologies, Inc*., 2017 WL 951672, at *5 (M.D. Fla. 2017) (violations of FDUTPA must be pled with particularity); *USA Nutraceuticals Group, Inc. v. BPI Sports, LLC*, 2016 WL 4254257, at *3 (S.D. Fla. 2016); *Librizzi v. Ocwen Loan Servicing, LLC*, 2015 WL 4761647, at *9 (S.D. Fla. 2015) (Rule 9 applies where defendant alleged to have violated FDUTPA "through deception"); *Blair v. Wachovia Mortg. Corp.,* 2012 WL 868878, at *3 (M.D. Fla. 2011); *DHG Properties, LLC v. Ginn Companies, LLC*, 2010 WL 5584464, at *5 (M.D. Fla. 2010) (FDUTPA claim sounded in fraud and was subject to Rule 9(b)); *Siever v. BW Gaskets, Inc.,* 2009 U.S. Dist. LEXIS 20691, at * 3 (M.D. Fla. 2009) (FDUTPA must be pled with particularity); *Wrestle Reunion, LLC v. Live Nation Television Holdings, Inc*., 2008 U.S. Dist. LEXIS 61428, at *3 (M.D. Fla. 2008) (same).

Plaintiffs' FDUTPA claim against RLT is pled in a vague and conclusory manner, involving only a formalist recitation of the elements of the claim. As set forth above, Plaintiffs' entire FDUTPA claim is limited to the sparse allegations in paragraph 209, which conclusory alleges "false advertising," without stating what specifically rendered any of RLT's advertising false. As to *what* false and misleading statements were made, Plaintiffs make vague allegations at best. The alleged statements, for the most part, do not constitute

statements of fact, and the allegations are insufficient as to *how* such statements could be false or misleading.

Plaintiffs base their FDUTPA claims on various alleged representations that RLT makes to its customers, none of which harms the reputation of Wyndham and do not provide a private cause of action under the FDUTPA. To the extent that Plaintiffs remotely try to avoid dismissal by additionally alleging that RLT instructs Wyndham owners to stop paying their timeshare obligations and/or that such owners' credit scores will be unaffected by halting their payments, Plaintiffs have not and cannot allege that such instructions are contained in RLT's written or oral advertising materials. In sum, there are no facts in the complaint to show a "probable deception" that is "likely to cause injury to a reasonably relying consumer." As such, this claim not only fails to satisfy Rule 9(b), but also the minimum pleading requirements set forth in Rule 8(a).

Hence, since Plaintiffs have not satisfied the Rule 9(b) and Rule 8(a) standards and cannot assert a private cause of action under the FDUTPA, Plaintiffs claims under the act fail as a matter of law and should be dismissed.

### III.  CONCLUSION

For the foregoing reasons, pursuant FRCP 12(b)(6), Plaintiffs' entire complaint should be dismissed due to lack of personal jurisdiction and failure to state a cause of action against Defendant, Resort Legal Team, LLC.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 23rd day of April, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send electronic notification to all counsel of record.

Respectfully submitted,

**FISHER RUSHMER, P.A.**
BY:      /s/   C. Gene Shipley
C. Gene Shipley (FL No. 130028)
390 N. Orange Avenue, Suite 2200
Orlando, FL 32801
P:  (407) 843-2111
F:  (407) 422-1080
jfisher@fisherlawfirm.com
gshipley@fisherlawfirm.com
*Counsel for Defendant Resort Legal Team, Inc.*

20