## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| WYNDHAM VACATION OWNERSHIP, INC., a Delaware corporation; WYNDHAM VACATION RESORTS, INC.; a Delaware corporation, WYNDHAM RESORT DEVELOPMENT CORPORATION, an Oregon Corporation; SHELL VACATIONS, LLC, an Arizona limited liability company; SVC-WEST, LLC, a California limited liability company; SVC-AMERICANA, LLC, an Arizona limited liability company; and SVC-HAWAII, LLC, a Hawaii limited liability company,<br><br>        Plaintiffs,<br><br>v.<br><br>CHARLES E. GALLAGHER, ESQ., an individual; WILLIAM P. STEWART JR/ a/k/a PAUL STEWART a/k/a BILL STEWART, an individual; GALLAGHER-CLIFTON, LLC a/k/a The Gallagher Firm, a Florida limited liability company; TIMESHARE OWNERS RELIEF, LLC, f/k/a Timeshare Solutions, LLC a Florida limited liability company; and RESORT LEGAL TEAM, INC., a Nevada corporation,<br><br>        Defendants. | CASE NO.: 6:19-cv-00476-GAP-TBS |

## PLAINTIFFS' ALTERNATIVE[1]
## OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

COMES NOW, Plaintiffs, WYNDHAM VACATION OWNERSHIP, INC.,

---

[1] Pursuant to M.D. Fla. L.R. 3.01(b), Plaintiffs' response to Defendant's Motion to Dismiss (Doc. 15) is due today, May 7, 2019. Plaintiffs have previously filed their Motion Seeking Jurisdictional Discovery and for an Extension of Time to Response to the Motion to Dismiss. (Doc. 21) ("Motion for Extension"). Because a motion to extend time does not stay deadlines, and the Motion for Extension remains pending, in an abundance of caution, Plaintiffs file this opposition to Defendant's Motion to Dismiss. Plaintiffs reserve their right to supplement this Opposition if the Motion for Extension is granted.

WYNDHAM VACATION RESORTS, INC., WYNDHAM RESORT DEVELOPMENT CORPORATION, SHELL VACATIONS, LLC, SVC-WEST, LLC, SVC-AMERICANA, LLC, and SVC-HAWAII, LLC, (collectively, "Wyndham" or "Plaintiffs"), by and through undersigned attorneys, and submit this Opposition to Defendant, RESORT LEGAL TEAM, INC.'s ("Resort Legal Team") Motion to Dismiss (Doc 15) (the "Motion to Dismiss").

## I.    INTRODUCTION

The Motion to Dismiss argues that the Court should dismiss the Complaint for Injunctive Relief and Damages (the "Complaint") (Doc. 1) for lack of personal jurisdiction and failure to state a claim based on insufficient allegations, yet it ignores most of the allegations therein. The Motion to Dismiss fails to recognize specific allegations that identify the false advertising statements made by Resort Legal Team, their conduct in furtherance of their common deceptive scheme, and the manner in which Resort Legal Team wrongfully induces Wyndham timeshare owners (the "Wyndham Owners") to breach their timeshare contracts with Wyndham (the "Timeshare Contracts").  Such allegations are more than adequate to apprise Defendants of the basis for Wyndham's claims and give notice of the detailed factual basis for those claims. Accordingly, the Court should deny the Motion to Dismiss.

With regards to Resort Legal Team's jurisdictional arguments, on or about May 6, 2019, Plaintiffs filed a Motion Seeking Jurisdictional Discovery and for an Extension of Time to Response to the Motion to Dismiss. (Doc. 21) ("Motion for Extension"). Because that Motion for Extension remains pending, Plaintiffs file this Response in an abundance of caution. However, Plaintiffs reiterate that jurisdictional discovery is warranted here, and incorporate and rely upon the facts and law set forth in the Motion for Extension. Should this Court grant the Motion for Extension, Plaintiffs will file a supplementary response to the Motion to Dismiss on or before the

expiration of the requested extension.

## II.   BACKGROUND

Wyndham is a timeshare developer damaged by entities that falsely advertise an ability to end consumers' timeshare contracts.  (Doc. 1 ¶¶ 1-9, 79, 90, 102, 116, 127, 135).

On March 11, 2019, Wyndham filed the instant Complaint. (Doc. 1).  In broad strokes, the Complaint alleges that Resort Legal Team and Timeshare Owners Relief advertise that they can legally "exit" timeshare owners from their timeshares. Once consumers are drawn into the scheme—and pay a substantial up-front fee—Resort Legal Team and co-defendant Timeshare Owners Relief, LLC ("Timeshare Owners Relief") direct the consumers to the fake Florida "law firm", co-defendant Gallagher-Clifton, LLC ("Gallagher-Clifton") which sends baseless demand letters to Wyndham. In the process, Defendants tells the owners to stop making payments on their timeshares. Thus, the timeshares are eventually foreclosed, destroying the owners' credit and diverting massive sums of contract revenue from Wyndham. (*Id.* ¶¶ 38–40, 42, 47–50, 64–66). The "legal exit" Defendants advertise is actually an unlawful breach of the Timeshare Contracts. Defendants deceive timeshare owners – including Wyndham Owners – into paying exorbitant sums for so-called "transfer" services that actually result in breaches and defaults of the timeshare contracts.  (*Id*. ¶¶ 1-9, 38-69).  Wyndham has lost millions of dollars in revenue due to such induced breaches. (*Id.* ¶¶ 79, 90, 102, 116, 127, 135).

Resort Legal Team moved to dismiss the Complaint.  The Motion to Dismiss fails to set forth any valid basis for dismissing the Complaint and should be denied.

## III.   MOTION TO DISMISS STANDARD

In deciding a Rule 12(b)(6) motion to dismiss, a court must accept all well-pled allegations as true and draw all reasonable inferences in the plaintiff's favor.  *Smith v. United*

*States*, 873 F.3d 1348, 1351 (11th Cir. 2017).  To survive a motion to dismiss, the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

With regard to jurisdictional arguments, where "the defendant submits affidavits to the contrary, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction unless those affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Meier ex rel. Meier v. Sun Intern. Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002).  "[W]here the plaintiff's complaint and the defendant's affidavit's conflict, the district court must construe all reasonable inferences in favor of the plaintiff." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). In such cases, "Plaintiff must be given an opportunity to develop facts sufficient to support a determination on the issue of jurisdiction." *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 731 (11th Cir. 1982).

## IV.   ARGUMENT

### A.   This Court has Personal Jurisdiction over Defendant Resort Legal Team

The Complaint alleges that Resort Legal Team advertises that it can legally "exit" timeshare owners from their timeshares. Once consumers are drawn into the scheme—and pay a huge up-front fee—Resort Legal Team directs the consumers to the fake Florida "law firm" of Gallagher-Clifton. Resort Legal Team tells the consumers to stop making payments on their timeshares. Thus, the timeshares are eventually foreclosed, destroying the owners' credit and diverting massive sums of contract revenue from Wyndham. (*Id.* ¶¶ 38–40, 42, 47–50, 64–66.) Of course, the "legal exit" Resort Legal Team advertises is actually an unlawful breach of the

owners' contracts with Wyndham.

It is clear that Wyndham has established a prima facie case that this Court has personal jurisdiction over Resort Legal Team.[2] *See Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988). Under Florida law, "telephonic, electronic, or written communications into Florida" from outside Florida may constitute "committing a tortious act" under the Florida long-arm statute, Fla. Stat. § 48.193(1)(a)(2), so long as "the alleged cause of action arises from the communications." *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002); *see also Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1217 (11th Cir. 1999) (noting that the tortious act subsection of the long-arm "appl[ies] to defendants committing tortious acts outside the state that cause injury in Florida"). The Complaint asserts that Resort Legal Team engaged in a comprehensive campaign of deceptive advertising designed to lure timeshare owners into the scheme and then sent their information to a Florida business and co-conspirator – Clifton-Gallagher – resulting in the breach of contracts based in Florida, by which Wyndham, a Florida-based company, suffered significant harm. (Doc. 1, ¶¶ 28–30, 38–40, 42, 47–50, 64–66). Such allegations are sufficient to confer jurisdiction over Resort Legal Team under Florida law. *See Wendt*, 822 So. 2d at 1260; *see also Posner*, 178 F.3d at 1217; *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1281-82 (11th Cir. 2009) ("Florida courts have held that the state's long-arm statute can support personal jurisdiction over any alleged conspirator where any other co-conspirator commits an act in Florida in furtherance of the conspiracy, even if the defendant over whom personal jurisdiction is sought individually committed no act in, or had no relevant contact with, Florida.").

This Court has personal jurisdiction over Resort Legal Team because of its participation in this illegal scheme. For instance, Resort Legal Team's website is accessible nationally, including

---

[2] By providing a general overview of Wyndham's case for personal jurisdiction herein, Wyndham does not waive any arguments in favor of jurisdiction that may not be specifically detailed in the instant filing.

by Florida residents; by using this site, as well as nationwide advertising mailers, to lure in timeshare owners, and then passing those leads to the Florida-based fake law firm Gallagher-Clifton, Resort Legal Team is involved in the repeated transmission of electronic files and information into and out of Florida. (Doc. 1, at ¶¶ 28–29.) Further, Resort Legal Team's tortious activities are directed at Wyndham, which is headquartered in Florida. These activities—instructing consumers not to make their payments to Wyndham, sending the consumers to the Florida-based co-conspirator Gallagher-Clifton, which, in turn, sends false letters to Wyndham—are designed to interfere with contract payments due to be made in Florida and cause breaches of Wyndham's contracts in Florida. (*Id.* ¶¶ 10–16, 30.)

Resort Legal Team does not refute the operative facts. Instead, in a failed attempt to support the Motion to Dismiss, Resort Legal Team filed the Declaration of Albert Trevino. (Doc. 16) ("Trevino Dec"). Trevino (1) admits that Resort Legal Team represents Florida residents and Wyndham Owners (*id*. ¶ 10); (2) does not dispute that he is engaged in business with the other Defendants to target timeshare owners – including the Florida-based Gallagher-Clifton; (3) does not contest the relationship alleged between the Defendants; (4) does not contest the allegations that certain Defendants, including Resort Legal Team, distribute materials to consumers, including Florida residents, on behalf of other Defendants; and (5) does not contest that any of the Defendants have represented and received money from Florida residents as a result of their conspiracy. Trevino does nothing more than generally claim that Resort Legal Team does not have consistent contacts with Florida. *Id*. ¶ 4.

Importantly, Trevino only states his "opinion" that it would be "unusual for a consumer to purchase a timeshare in their own state of residence." *See* (Trevino Dec. at ¶ 10). Trevino's personal opinion as to the usualness or unusualness of a Florida Timeshare Owner also owning a

Florida Timeshare does nothing to refute the jurisdictional allegations made in the Complaint. It does nothing to refute the allegations that residents of Florida own timeshares in other states. It does nothing to refute the allegation that residents of other states own timeshares in Florida. And, perhaps most importantly, it does nothing to refute the allegation that Resort Legal Team conspires with a Florida-based business (Gallagher-Clifton) in the manner outlined in the Complaint.  Thus, the Trevino Declaration does nothing to refute the allegations of the extent of Resort Legal Team's connections to Florida and is precisely the type of self-serving affidavit that is insufficient to carry a defendant's burden necessary to sustain a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction.  In sum, none of Trevino's conclusory denials are relevant to whether the Court has personal jurisdiction over Resort Legal Team for their solicitation and representation of Florida residents and conspiring with a Florida company in order to injure Wyndham and their actions with respect to Florida.

Resort Legal Team's contention that this Court lacks jurisdiction over individuals who conspired with a Florida company to defraud Florida residents, in Florida, in a scheme to injure a Florida company, involving real estate located in Florida, is implausible.  Resort Legal Team has numerous, repeated, and intentional contacts with the State of Florida.  Moreover, Resort Legal Team "instructs" Florida "law firms" to invoke the protections of the laws of Florida and repeatedly seek to negotiate or terminate contracts, many of which have Florida choice-of-law provisions, involve Florida real estate, and/or call for performance in Florida, and which have a Florida corporation as a party thereto.  The Court has personal jurisdiction over Resort Legal Team, and the Motion to Dismiss should be denied.[3]

---

[3] The Motion to Dismiss for lack of personal jurisdiction should be denied. But as set forth above, Plaintiffs have already filed a Motion for Extension, seeking jurisdictional discovery to the extent this Court deems Resort Legal Team's personal jurisdictional argument to carry any weight. Plaintiffs

**B.**   **<u>The Complaint Sufficiently States a Valid Lanham Act Claim Against Resort Legal Team (Count II)</u>**

Resort Legal Team seeks to dismiss Count II against it for false or misleading statements of fact in commercial advertisements to mislead consumers. (*See* Doc. 15, p. 9-12). Resort Legal Team argues that Plaintiffs' Lanham Act claim fail because (a) Resort Legal Team is not a "competitor" of Wyndham, and (b) the alleged false advertising claims are not actionable since Wyndham could have cancelled the Timeshare Contracts instead of foreclosing various Timeshare Owners' interests. (*See* Doc. 15, p. 9-12). Each of these arguments fail.

*1.   Plaintiffs' Lanham Act Claim Satisfies the Lexmark Requirements*

The Lanham Act, 15 U.S.C. § 1125(a), permits an action for false advertising by anyone who has suffered "an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 140, 134 S. Ct. 1377, 1395, 188 L. Ed. 2d 392 (2014). The economic injury must flow directly "from the deception wrought by the defendant's advertising," which "occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133. A plaintiff alleging such an injury has standing under the Lanham Act. *Id.* at 125-28 (rejecting the "prudential standing" label). Wyndham sufficiently alleges an injury to its commercial interests flowing directly from the false advertising in which Resort Legal Team engages, and in which Resort Legal Team participates, because such advertising causes Wyndham Owners to retain Defendants who instructed and induced them to cease making payments on their Timeshare Contracts. (*See* Doc. 1, at ¶¶ 70-80, 93-103). *See Orange Lake v. Reed Hein & Assoc.*, 6:17-cv-01542-Orl-31DCI, 2018 WL 5279135 at *6 (M.D. Fla. Oct. 24, 2018).

---

incorporate their Motion for Extension, and if necessary, request an additional sixty (60) days to conduct discovery and respond to Resort Legal Team's Motion to Dismiss.

Resort Legal Team engages in two insidious practices that should draw the Court's scrutiny, and, potentially, sanctions: (1) Resort Legal Team simply copies a court order without indicating it is copying a judge's order and (2) it deliberately misquotes an order of this Court.

First, Resort Legal Team wholesale copies from an order issued by a judge in the United States District Court for the Southern District of California without attribution. Portions of pages 10 and 11 of the Motion to Dismiss are directly copied from the decision in *Welk Resort Grp. Inc. v. Reed Hein & Assocs., LLC*, , No. 3:17-CV-01499-L-AGS, 2019 WL 1242446, at *15 (S.D. Cal. Mar. 18, 2019). By failing to properly attribute the copied portions of its motion, Resort Legal Team concealed the substantial flaws in "its" argument, which relies upon caselaw that was overruled by the Supreme Court.

With all due respect to Judge Lorenz and the Southern District of California, the decision in *Welk Group* is wrong. In reaching his decision on standing under the Lanham Act, Judge Lorenz determined that "[b]ecause [Plaintiff] and [Defendant] do not offer the same products or services, they are not in competition. Welk lacks standing to assert a false advertising claim under the Lanham Act." *Welk Group*, 2019 WL 1242446 at *15. This decision is directly contrary to the Supreme Court's holding in *Lexmark*,[4] which rejected any categorical test restricting false advertising claims to direct competitors, "[Plaintiff] asks that we adopt a categorical test permitting only direct competitors to sue for false advertising…we decline…"

---

[4] Strangely, the court in *Welk Group* never mentions the *Lexmark* decision. It appears the parties in *Welk Group* agreed that they had to offer for sale the same goods or services for the plaintiff to have standing under the Lanham Act, "[t]his requires that the competitors provide the same product or service…Welk does not dispute that this is the applicable definition of competition for purposes of false advertising under the Lanham Act." *Welk Resort Grp.*, 2019 WL 1242446, at *15 (S.D. Cal. Mar. 18, 2019)(internal citations omitted). Plaintiffs herein disagree, do not stipulate that the direct competitor test is the law, and urge this Court to apply the *Lexmark* standard, as it has done in the past.

*Lexmark*, 572 U.S. at 134, 134 S. Ct. at 1391. The very reason the *Lexmark* decision exists is to reject the direct-competitor test now advocated by Resort Legal Team; *Lexmark* explicitly recognized that noncompetitors may bring claims for false advertising under the Lanham Act. *Id*. Thus, whether Resort Legal Team is in direct competition with Wyndham is not dispositive of whether Resort Legal Team's false advertising constitutes "commercial advertising or promotion." *Tobinick v. Novella*, 142 F. Supp. 3d 1275, 1279-80 (S.D. Fla. 2015), aff'd sub nom., 848 F.3d 935 (11th Cir. 2017). As such, the Motion to Dismiss states no valid grounds for dismissal in this regard, this Court should not follow the *Welk Group* court in ignoring the existence of *Lexmark*, and the Motion to Dismiss should be denied.

Resort Legal Team compounds its first mistake, and attempts to buttress the unusual decision in *Welk Group*, by improperly citing a decision of this Court in an attempt to further the "direct competition" fiction. Resort Legal Team cites *Orange Lake Country Club, Inc. v. Reed Hein*, allegedly in support of their argument that timeshare developers, such as Plaintiffs, cannot bring Lanham Act claims against timeshare cancellation entities, such as Resort Legal Team. (Doc. 15, at p. 1-121). Resort Legal Team, under its argument that "[t]he Complaint does not state a cognizable claim under the *Lanham Act* against RLT…" (Motion to Dismiss at 9), states:

> As stated by the Honorable Gregory A. Presnell in a notably similar action, "[Plaintiff timeshare developers] do not compete with [timeshare exit companies] in the sale of goods or services. Rather, Plaintiffs are in the business of getting consumers into timeshares, while RLT[sic] is in the business of getting them out. Thought their target audiences overlap, Plaintiffs and RLT[sic] are engaged in entirely different markets. They are adversaries, not competitors."

Motion to Dismiss at 11-12 (citing *Orange Lake Country Club, Inc. v. Reed Hein & Assocs., LLC* 2018 WL, No. 617CV1542ORL31DCI, 2018 WL 5279135, at *8 (M.D. Fla. Oct. 24, 2018)).

That is *not* what this Court held in *Orange Lake*. Resort Legal Team quotes from the section of the *Orange Lake* decision addressing claims for misleading advertising under Florida state law (Fla. Stat. § 817.41); Resort Legal Team wholly ignores that on that same page, and the following two pages, of the *Orange Lake* decision, this Court provides a detailed analysis of the reasons a timeshare developer has standing to pursue a timeshare exit company for false advertising under the Lanham Act. In fact, this Court has repeatedly rejected the argument made by Resort Legal Team. *Orange Lake Country Club, Inc. v. Castle Law Group, P.C.*, 617CV1044ORL31DCI, 2018 WL 1535719, at \*7 (M.D. Fla. Mar. 29, 2018); *Westgate Resorts, Ltd. v. Reed Hein & Associates, LLC*, 618CV1088ORL31DCI, 2018 WL 5279156, \*9 (M.D. Fla. Oct. 24, 2018). Resort Legal Team is therefore not only mis-citing this Court's prior decisions, it is failing to inform the Court of directly relevant caselaw contrary to Resort Legal Team's arguments. The Motion to Dismiss should be denied.

### 2. *The Complaint Sufficiently Alleges Actionable False Advertising.*

Resort Legal Team next contends that its false advertising is "not actionable" because the alleged end result of Resort Legal Team's advertised "exit" process – foreclosure of the timeshare interests – could be avoided if Wyndham would voluntarily take back the timeshare interests of Resort Legal Team's customers prior to foreclosure. (Doc. 15, at p. 11). In other words, if Wyndham simply agreed to release Resort Legal Team's customers from their contractual obligations, then no damages would arise from Resort Legal Team's false advertising and inducement of breaches of those Timeshare Contracts.

Resort Legal Team's argument is speculative, illogical, and frivolous. Just because Wyndham could succumb to Resort Legal Team's interference and "voluntarily" release Resort Legal Team's customers from their timeshare contracts does not mean that damages are absent

11

when Wyndham instead elects to pursue its contractual remedies and foreclose upon those timeshare contracts. Quite simply, damages still exist even when a plaintiff could, but does not, waive its claim for such.

The Motion to Dismiss Count II must be denied, as the Complaint sufficiently sets forth a claim against Resort Legal Team for violation of the Lanham Act.

### C.  The Complaint Sufficiently States a Valid Claim for Tortious Interference with Contracts (Count IV)

"In Florida, the elements of tortious interference with a contractual relationship are: (1) the existence of a contract; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the contract's breach; (4) the absence of any justification or privilege; and (5) damages resulting from the breach." *Mattocks v. Black Entm't Television LLC*, 43 F. Supp. 3d 1311, 1318 (S.D. Fla. 2014). "Florida courts have held that the plaintiff must plead and prove that the defendant manifested a specific intent to interfere with the business relationship." *Chicago Title Ins. Co. v. Alday-Donalson Title Co. of Fla., Inc.*, 832 So. 2d 810, 814 (Fla. 2d DCA 2002). "Thus, even if the defendant is aware of the existing business relationship, the defendant will not be liable for tortious interference with that relationship unless there is evidence that the defendant intended to procure a breach of the contract." *Id*.

#### 1.  *Resort Legal Team is Not Privileged to Interfere with the Timeshare Contracts*

Resort Legal Team contends that the allegations establish that Resort Legal Team acts as an "agent" of Wyndham Owners to assist them in exiting from their contracts with Wyndham. (Doc. 15, at p. 12-13). As agents of the Wyndham Owners, therefore, Resort Legal Team argues it is privileged to interfere with the Wyndham Owners' Timeshare Contracts. *Id*.

First, justification or privilege to interfere with a contract is an affirmative defense, *Abele*

*v. Sawyer*, 750 So. 2d 70, 75 (Fla. 4th DCA 1999), and a complaint is subject to dismissal under Rule 12(b)(6) only "when its allegations — on their face — show that an affirmative defense bars recovery on the claim." *Marsh v. Butler Cnty.*, 268 F. 3d 1014, 1022 (11th Cir. 2001). Here, it is not obvious from the allegations of the Complaint that Resort Legal Team is privileged to interfere as an agent of the Wyndham Owners. To the contrary, the alleged facts demonstrate that there is no agency relationship between Resort Legal Team and the Wyndham Owners.

Under Florida law, an agency relationship exists when the principal has a right to control the operative details of the agent's work. *Orlinsky v. Patraka*, 971 So. 2d 796, 800–01 (Fla. 3d DCA 2007) (citing *Stoll v. Noel*, 694 So. 2d 701, 703 (Fla. 1997)). The principal must retain control not only over "the result to be procured" but also over "the means to be used" to achieve that result. *Parker v. Domino's Pizza, Inc.*, 629 So. 2d 1026, 1027 (Fla. 4th DCA 1993). In the present case, there are no allegations in the Complaint that indicate Wyndham Owners had control over the means or process by which Resort Legal Team purported to "cancel" or "exit" their Timeshare Contracts. To the contrary, Resort Legal Team sold its purported services to Wyndham Owners as a legitimate means to achieve the advertised result but then kept secret from those Wyndham Owners the actual means by which their Timeshare Contracts were terminated. (Doc. 1, at ¶¶ 4, 8, 38-69, 108-116). For this reason, the Wyndham Owners did not control the actions of Resort Legal Team; rather, Resort Legal Team controlled and guided the "exit" strategy as a so-called "service" it provided to the Wyndham Owners. *Id*. Resort Legal Team, not the Wyndham Owners, retained attorneys who communicated only with Resort Legal Team; the Wyndham Owners did not control either Resort Legal Team or the attorneys. *Id.* ¶¶ 8, 38-69. On these facts, Resort Legal Team was not an agent of the Wyndham Owners for the purpose of breaching their Timeshare Contracts. *Id*. ¶¶ 108-116.

Second, even if Resort Legal Team acted as an agent for the Wyndham Owners, the "privilege to interfere" enjoyed by an agent is destroyed where the agent acts solely with ulterior purposes, without an honest belief that his actions would benefit the client. *See Salit v. Ruden, McClosky, Smith, Schuster*, 742 So. 2d 381, 386 (Fla. 4th DCA 1999); *see also Rudnick v. Sears, Roebuck and Co.*, 358 F. Supp. 2d 1201, 1206 (S.D. Fla. 2005) (quoting *O.E. Smith's Sons, Inc. v. George*, 545 So. 2d 298, 299 (Fla. 1st DCA 1989)) ("The privilege is divested when the defendant acts solely with ulterior purposes and the advice is not in the principal's best interest.").

Wyndham alleged, "Defendants actions were done with an improper motive and not made in good faith." (Doc. 1, at ¶ 112). In short, Resort Legal Team's false advertisements and illusory "exit" services, sold at exorbitant fees, induce and deceive the Wyndham Owners into breaching their Timeshare Contracts to their detriment. (Doc. 1, at ¶¶ 4, 8, 38-69, 108-116). Thus, even if Resort Legal Team is the agent of a Wyndham Owner, the allegations are sufficient to eliminate any privilege to interfere held by Resort Legal Team. Resort Legal Team again ignores the *Orange Lake* decision, where Judge Presnell refused to dismiss a similar complaint based on the agency privilege where the allegations stated that a timeshare exit company urged timeshare owners to breach their timeshare contracts, not to aid them in successfully ending their contracts but "for purely selfish and mercenary reasons so as to collect and retain a large pre-paid retainer." *Orange Lake*, 2018 WL 5279135 at *4 (denying motion to dismiss based on the exception to an agent's privilege to interfere); *see also Westgate*, 2018 WL 5279156, at *4 (same); *Westgate Resorts, Ltd. v. Castle Law Group, P.C.*, 2017 WL 6512552, at *3 (M.D. Fla.

Dec. 20, 2017) (same). The same result is appropriate here.[5]

> ### 2. *Resort Legal Team's Argument that Wyndham Owners were "Predisposed" to Breach Fails and Does Not Support Dismissal of Count IV.*

Resort Legal Team argues that the Timeshare Owners "are predisposed terminate their contracts with Wyndham", therefore Resort Legal Team could not have induced the breaches. (Doc. 15, at p. 13-15). According to Resort Legal Team, "the advertising materials attached to the Complaint" establish that "RLT only solicits consumers that are predisposed to cancel their timeshare contractual obligations . . . ." (Doc. 15, at p. 14).

This argument fails to draw all reasonable inferences in the plaintiff's favor. *Smith v. United States*, 873 F. 3d 1348, 1351 (11th Cir. 2017). Wyndham has specifically alleged that Wyndham Owners are persuaded, induced, or deceived by the Defendants to breach their Timeshare Contracts. *See, e.g.*, (Doc. 1, at ¶¶ 108-112). A favorable inference upon these allegations is that Wyndham Owners were not already predisposed to breach.

Even to the extent that some Wyndham Owners wanted to terminate their contracts when procuring Resort Legal Team's so-called services, there is an enormous difference between (i) a desire to lawfully terminate a contract, and (ii) a desire to unlawfully terminate a contract through breach. (Doc. 1, at ¶¶ 108-112). As alleged throughout the Complaint, Defendants advertise the former only to lead Wyndham Owners into the latter. *Id*. at ¶ 38-69. Nowhere does

---

[5] To the extent Resort Legal Team argues its actions were "unremarkable" and thus not "actionable", this argument misses the mark. Plaintiffs have set forth valid causes of action alleging procurement of an unlawful breach of the Timeshare Contracts. Under the common law of contracts, a termination can be "unlawful" by way of breach.  In the absence of an excuse, a party "may not legally terminate the contract."  13 Williston on Contracts § 39:3 (4th ed.) (discussing the excuse of prevention). Thus, a "breach" is an unjustified violation of a legal duty.  Whether it is referred to as "unlawful" or "illegal" is a matter of semantics.  Defendants mislead and deceive Wyndham Owners when they advertise their services as resulting in a "legal" or "lawful" termination of a timeshare contract, when in reality those services intentionally procure and induce breaches.  The absence of a criminal violation here does not justify such deception or the subsequent tortious interference.

15

the Complaint establish that Wyndham Owners were predisposed to terminate their Timeshare Contracts through breach. If that were so, then many would not have procured the Defendants' advertised services in the first place, as they could have accomplished the same result for free. *Id*. ¶¶ 44, 48.

Furthermore, whether a timeshare owner is predisposed to breach a timeshare agreement is a fact-intensive inquiry not suitable for disposition at this stage. *See Orange Lake*, 2018 WL 5279135, at *4 ("[W]hether Orange Lake Owners were predisposed to breach their Timeshare Agreements is a fact-intensive inquiry inappropriate for resolution at this stage."); *Westgate*, 2018 WL 5279156, at *4-5 (same).[6] Thus, dismissal is not warranted on this basis.

### D. The Complaint Sufficiently States a Valid Civil Conspiracy Claim (Count V)

#### *1.* *The Complaint Sufficiently Alleges An Underlying Tort/Unlawful Act*

"For there to be a civil conspiracy four elements must be met: (1) there must be an agreement between two or more parties (2) to do an unlawful act by unlawful means (3) the committing of an overt act in pursuance to the conspiracy and (4) damage to the plaintiff as a result of the act." *Bankers Life Ins. Co. v. Credit Suisse First Bos. Corp.*, 590 F. Supp. 2d 1364, 1368–69 (M.D. Fla. 2008). "The existence of a conspiracy and an individual's participation in it may be inferred from circumstantial evidence." *Charles v. Fla. Foreclosure Placement Ctr., LLC*, 988 So. 2d 1157, 1160 (Fla. 3d DCA 2008) (internal citation omitted). Resort Legal Team alleges that Plaintiffs failed to suffiently plead these elements because "there is no valid underlying claims for tortious interference . . . ." (Doc. 15, at p. 15-16).

Plaintiffs allege that Defendants conspired to tortiously interfere with existing contractual

---

[6] Resort Legal Team's reference on page 15 of the Motion to Dismiss to Wyndham's "reputation for engaging in harassing and/or deceptive trade practices" is neither relevant nor substantiated and should be ignored by this Court.

16

relations by deceiving Wyndham Owners into paying Defendants for illusory services and persuading them to breach the Timeshare Contracts. (Doc. 1, at ¶¶ 4-9, 38-69, 106-119, 121-127).  Allegations of tortious interference suffice to establish an underlying wrong or tort in a conspiracy claim.  *Turkey Creek, Inc. v. Londono*, 567 So. 2d 943, 948 (Fla. 1st DCA 1990). Because Resort Legal Team's arguments against the underlying tortious interference claim have been addressed an refuted above, *see supra* Part IV.C, no further discussion is warranted here.

### 2.      *Legal Resort Team is Not Entitled to "Litigation Immunity"*

Resort Legal Team next argues that its "alleged conduct in instructing law firms to send letters of legal representation and demand letters to Wyndham on behalf of timeshare owners" is immunized by Florida's litigation immunity privilege. (Doc. 15, at p. 16). In Florida, an absolute litigation privilege "extends to the protection of the judge, parties, counsel and witnesses, and arises immediately upon the doing of any act required or permitted by law in the due course of the judicial proceedings or as necessarily preliminary thereto." *Fridovich v. Fridovich*, 598 So. 2d 65, 66 (Fla. 1992) (quoting *Ange v. State*, 123 So. 916, 917 (Fla. 1929)).

Resort Legal Team is not the "judge, parties, counsel, or witnesses" in any judicial proceeding for which the demand letters (sent on behalf of the Wyndham Owners) are relevant. The litigation privilege does not attach to their actions in instructing law firms to send letters. *See Orange Lake*, 2018 WL 5279135, at *6 (rejecting the litigation privilege for timeshare exit company's lawyers because its applicability did not unequivocally appear on the face of the complaint).[7]

Moreover, the subject letters are not covered by the litigation privilege, unless the letters are required by law. *Diamond Resorts Int'l, Inc. v. Aaronson*, No. 6:17-CV-1394-ORL-37DCI,

---

[7] Plus, the fact that Resort Legal Team "instructs" lawyers to send demand letters on behalf of other people raises other professional concerns.

2018 WL 735627, at *6-7 (M.D. Fla. Jan. 26, 2018); *Cisson v. Claudio & Johnson, LLC*, No. 3:16–cv–1353–J–20PDB, 2017 WL 1857419, at *2 (M.D. Fla. Mar. 2, 2017); *see also Trent v. Mortg. Elec. Registration Sys., Inc.*, 618 F. Supp. 2d 1356, 1360 (M.D. Fla. 2007) (unpublished) (declining to extend the litigation privilege to "pre- suit communications" where such communications were not required by law); *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 386-87 (Fla. 2007) (Wells, J., concurring in part and dissenting in part) (arguing that the reinstatement letters were not a required condition precedent to the foreclosure proceedings and therefore not covered by the litigation privilege).

Finally, the Complaint's factual allegations raise the inference that the letters sent by Defendants on behalf of Wyndham Owners were not "in the due course of the judicial proceedings or . . . preliminary thereto." *Fridovich*, 598 So. 2d at 66. In *Kelly v. Palmer, Reifler, & Associates, P.A.*, 681 F.Supp.2d 1356 (S.D. Fla. 2010), the court declined to apply an absolute litigation immunity to the defendant law firm's demand letters "given the number of letters sent over a multi-year period (literally millions) and the number of lawsuits actually initiated over that same time period (no more than fifteen prior to this lawsuit being filed), and given the firm's retainer agreement that provides (in many instances) for the possibility of litigation services but only pursuant to a separate agreement," as those allegations raised a question of fact as to whether the demand letters were necessarily preliminary to judicial proceedings or rather "were sent merely as a 'scare tactic.'" 681 F.Supp.2d at 1369. Similarly, in the present case, Wyndham has alleged that the Defendants process many files yet no little or nothing on customers' behalf. (Doc. 1, at ¶¶ 40). Under these facts, the litigation privilege for actions done "in the due course of the judicial proceedings" cannot apply to bar any claims here.

### E.   The Complaint Sufficiently States a Valid Claim for Violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count VI)

1. *Plaintiffs' FDUPTA Claim is Not Subject to the Heightened Pleading Standard of Rule 9(b)*

Resort Legal Team argues that Wyndham's FDUTPA claim is subject to Rule 9(b)'s heightened standard. The Eleventh Circuit has rejected the notion that such claims are subject to Rule 9(b). *See Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1239 (S.D. Fla. 2014) ("While the Court acknowledges that courts within this district have reached various conclusions about the application of Rule 9(b) to FDUTPA claims, this Court is persuaded that Rule 9(b) does not apply to FDUTPA claims."); *Nationwide Mut. Co. v. Ft. Myers Total Rehab Ctr., Inc.*, 657 F. Supp. 2d 1279, 1290 (M.D. Fla. 2009) (stating that "[t]he Court is not convinced that the specificity requirements of Fed. R. Civ. P. 9(b) applies to FDUTPA, although it recognizes this view is in the minority in this District."). Accordingly, the Court should reject Resort Legal Team's attempt to subject Wyndham's FDUTPA claim to Rule 9(b).

Wyndham has, however, sufficiently pled its FDUTPA claim.[8] In order to properly claim injunctive relief, a "plaintiff seeking to file a claim for damages under FDUTPA must plead three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Gibson v. Resort at Paradise Lakes, LLC*, 2017 WL 3421532, at *3 (M.D. Fla. Aug. 9, 2017) (quotation omitted). The Complaint sets forth allegations regarding the specific false and deceptive acts and trade practices of Defendants supporting its claims for injunctive relief and damages. Specifically, Wyndham alleged the precise false and deceptive statements made to Wyndham Owners by Defendants (Doc. 1, ¶¶ 4-7, 38, 43-50, 52-56, 60-69), as well as the deceptive nature

---

[8] However, even if Rule 9(b)'s heightened pleading requirement did apply, Wyndham has satisfied it here. "Rule 9(b) must be read in conjunction with Rule 8(a), which requires a plaintiff to plead only a short, plain statement of the grounds upon which he is entitled to relief." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370–71 (11th Cir. 1997). "The application of [Rule 9(b)] must not abrogate the concept of notice pleading." *Durham v. Bus. Mgmt Assoc.*, 847 F. 2d 1505, 1511 (11th Cir. 1988). "Fair notice is the most basic consideration underlying Rule 9(b); a complaint must reasonably notify defendants of their purported role in the scheme." *Kuehne v. FSM Capital Mgmt, LLC*, 2013 WL 1814903, *3 (S.D. Fla., Apr. 29, 2013).

of their direct mailing, and involvement with Wyndham Owners (Doc. 1, at ¶67-69, 70-81, 93-103, Exhibit 10). As a direct and proximate result, Plaintiffs suffered economic damages arising from Wyndham Owners' default of their payment obligations under the Timeshare Contracts. (Doc. 1, at ¶ 78-79, 85, 95-96, 101, 116). Thus, Wyndham alleged factual details in support of each element of its claims for damages and injunctive relief under FDUTPA.

### 2. *Wyndham Has Pled the Specific Misrepresentations and False Advertising Statements Made by Defendants*

Resort Legal Team asserts that Wyndham has not adequately alleged the false advertisements made by Defendants, but this argument ignores the plain allegations in the pleadings. (Doc. 15, at p. 18-19). Specifically, the Complaint *directly quotes* the false and misleading advertising statements made by each of the Defendants on their websites and in Defendants' direct-mail advertisements. *See* (Doc. 1, ¶ 4-8, 37-69). Wyndham also alleges the nature and substance of Defendants' marketing and telemarketing. *Id.* These specific allegations are more than sufficient to satisfy Rule 8's notice pleading requirement and alert Defendants to the specific advertising statements that Wyndham challenges as false and misleading.[9]

Resort Legal Team argues that Wyndham failed to plead that their statements were deceptive or had the capacity to deceive. (Doc. 15, at p. 18-19). However, Wyndham has pled that the statements are deceptive by stating, for example, that Defendants' advertisements "indeed have deceived the consuming public, including Wyndham Owners." (Doc. 1, at ¶ 67-69, Exhibits 9 and 10). Wyndham also pleads that Defendants use a variety of tricks to deceive

---

[9] Resort Legal Team suggests that "Plaintiffs' entire FDUPTA claim is limited to the sparse allegations in paragraph 209, which conclusory alleges "false advertising," without stating what specifically rendered any of RLT's advertising false." (Doc. 15, at p. 18). First, the Complaint does not include a "paragraph 209". Second, Count VI encompasses paragraphs 128-137, and also incorporates and relies upon paragraphs 1 through 69 and 100. *See* (Doc. 1, at ¶ 129-137). As set forth above, the Complaint certainly explains exactly the content of Resort Legal Team's advertising as well as what renders those advertisements false and misleading.

Wyndham Owners into believing that a company such as theirs can actually and legitimately cancel or transfer their Timeshare Contract, and employ additional tricks to mislead Wyndham Owners into believing that legitimate grounds exist for cancelling their Timeshare Contracts. (Doc. 1, at ¶ 37-69, Exhibits 9 and 10 (demonstrating how Wyndham Owners were deceived by Defendants)).  It is therefore clear that Wyndham has alleged that Defendants' advertising is deceptive.

Resort Legal Team argues that Wyndham failed to plead that it suffered injury resulting from their false advertising.  (Doc. 15, at p. 18-19).  Again, this simply ignores Wyndham's actual allegations.  Further, Wyndham need only allege "an injury to a commercial interest in reputation or sales" and show that such injury "flow[s] directly from the deception wrought by the defendants' advertising." *USA Nutraceuticals Grp., Inc.*, 2016 WL 4254257 at *4.

Wyndham alleged an injury to its commercial interests flowing from Defendants' false advertising, stating that Defendants "instruct, deceive, induce, or persuade Wyndham Owners to stop fulfilling their contractual obligations under the Timeshare Contracts," including to stop making payments under their Timeshare Contracts. (Doc. 1, at ¶ 7, 40, 44, 48, 109, 123).  As a result, Defendants have caused Wyndham extensive damages.  (Doc. 1, at ¶ 78-79, 85, 95-96, 101, 116).  Wyndham also alleges that the misrepresentations cause timeshare owners to cease acting as Wyndham consumers and become consumers of Defendants' services.  (Doc. 1, at ¶ 44, 51-56, 67-69, 78-79, 95-96).  Therefore, Wyndham alleged that it has suffered, and will continue to suffer, a direct injury as a result of the false advertisements.

## V.    CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that this Honorable Court deny Resort Legal Team's Motion to Dismiss together with such other and further relief the

Court deems just and proper.

Dated:  May 7, 2019

*/s/ Alfred J. Bennington, Jr.*
**ALFRED J. BENNINGTON, JR., ESQ.**
Florida Bar No. 0404985
bbennington@shutts.com
**MICHAEL L. GORE, ESQ.**
Florida Bar No. 441252
mgore@shutts.com
**GLENNYS ORTEGA RUBIN, ESQ.**
Florida Bar No. 556361
grubin@shutts.com
**SARAH DONINI RODRIGUEZ, ESQ.**
Florida Bar No. 72689
srodriguez@shutts.com
**SHUTTS & BOWEN LLP**
300 S. Orange Avenue, Suite 1600
Orlando, Florida 32801
407- 835-6755; 407-849-7255 (f)
and
**DANIEL J. BARSKY, ESQ.**
Florida Bar No. 25713
dbarsky@shutts.com
**SHUTTS & BOWEN LLP**
200 S. Biscayne Boulevard, Suite 4100
Miami, Florida 33131
561-650-8518; 561-822-5527 (f)

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of May, 2019, the foregoing was electronically filed with the Clerk of the Court using the Court's CM/ECF System, which will send a notification of filing to counsel of record.

*/s/ Alfred J. Bennington, Jr.*
**ALFRED J. BENNINGTON, JR., ESQ.**