UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

WYNDHAM VACATION OWNERSHIP, INC., a Delaware corporation; et al.,

    Plaintiffs,

v.

CHARLES E. GALLAGHER, ESQ., an individual; et al.,

    Defendants.

CASE NO.: 6:19-cv-00476-GAP-TBS

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (Doc. 18)**

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (Doc. 18)**

    COMES NOW, Plaintiffs, WYNDHAM VACATION OWNERSHIP, INC., WYNDHAM VACATION RESORTS, INC., WYNDHAM RESORT DEVELOPMENT CORPORATION, SHELL VACATIONS, LLC, SVC-WEST, LLC, SVC-AMERICANA, LLC, and SVC-HAWAII, LLC, (collectively, "Wyndham" or "Plaintiffs"), by and through undersigned attorneys, and submit this Opposition to the Defendants Charles E. Gallagher ("Gallagher"), William P. Stewart, Jr. ("Stewart"), Gallagher-Clifton, LLC ("Gallagher-Clifton") and Timeshare Owners Relief, LLC's ("Timeshare Owners Relief") (collectively, "Moving Defendants") Motion to Dismiss the Complaint (Doc. 18) (hereafter "the Motion").

**I.    INTRODUCTION**

    The Motion argues that the Court should dismiss the Complaint for Injunctive Relief and Damages (the "Complaint") (Doc. 1) for improper venue and failure to state a claim based on insufficient allegations, yet it ignores most of the allegations therein. The Motion fails to

ORLDOCS 16867241 2

recognize specific allegations that identify the false advertising statements made by the Moving Defendants, their conduct in furtherance of their common deceptive scheme, and the manner in which the Moving Defendants wrongfully induce Wyndham timeshare owners (the "Wyndham Owners") to breach their timeshare contracts with Wyndham (the "Timeshare Contracts"). Such allegations are more than adequate to apprise Defendants of the basis for Wyndham's claims and give notice of the detailed factual basis for those claims. The Court should deny the Motion.

## II.   BACKGROUND

Wyndham is a timeshare developer damaged by entities that falsely advertise an ability to end consumers' timeshare contracts. (Doc. 1 ¶¶ 1-9, 79, 90, 102, 116, 127, 135).

On March 11, 2019, Wyndham filed the Complaint. In broad strokes, the Complaint alleges that Resort Legal Team and Timeshare Owners Relief advertise that they can legally "exit" timeshare owners from their timeshares. Once consumers are drawn into the scheme—and pay a substantial up-front fee—Resort Legal Team, Inc. ("Resort Legal Team") and Timeshare Owners Relief direct the consumers to the fake Florida "law firm" of Gallagher-Clifton, which sends baseless demand letters to Wyndham. In the process, Moving Defendants tell the owners to stop making payments on their timeshares. Thus, the timeshares are eventually foreclosed, destroying the owners' credit and diverting massive sums of contract revenue from Wyndham. (*Id*. ¶¶ 38–40, 42, 47–50, 64–66). The "legal exit" Moving Defendants advertise is actually an unlawful breach of the Timeshare Contracts. Moving Defendants deceive timeshare owners – including Wyndham Owners – into paying exorbitant sums for so-called "transfer" services that actually result in breaches and defaults of the Timeshare Contracts.  (*Id*. ¶¶ 1-9, 38-69). Wyndham has lost millions of dollars in revenue due to such induced breaches. (*Id.* ¶¶ 79, 90, 102, 116, 127, 135).

Wyndham asserts claims for false advertising and contributory false advertising in violation of the Lanham Act, 15 U.S.C. §1125(a)(1), tortious interference with contractual relations, civil conspiracy, and violations of the Florida Deceptive and Unfair Trade Practices Act, and seeks damages and injunctive relief. (*See generally, id.*). In their Motion, the Moving Defendants seek dismissal of claims against them and for improper venue.

### III. MOTION TO DISMISS STANDARD

In deciding a Rule 12(b)(6) motion to dismiss, a court must accept all well-pled allegations as true and draw all reasonable inferences in the plaintiff's favor. *Smith v. United States*, 873 F.3d 1348, 1351 (11th Cir. 2017). To survive a motion to dismiss, the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### IV. ARGUMENT

#### A. Venue Over This Action Is Proper In the Middle District of Florida.

The Motion incorrectly argues that venue is improper in the Middle District of Florida because the Moving Defendants primarily maintain their business in the Northern District of Florida. (Doc. 18, at p. 5-6). Venue over a defendant entity is controlled by § 1391. Under § 1391(b)(1), an action may be commenced in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." In turn, Section 1391(c)(2) provides that "an entity with the capacity to sue and be sued . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . . ." (emphasis added). As

Moving Defendants concede, not all Defendants reside in Florida, as Legal Resort Team is a Nevada corporation. (*See* Doc. 18, at p. 5).

For states that have more than one district, § 1391(d) provides that the defendant "shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." Therefore, venue over Wyndham's claims against Moving Defendants is proper in the Middle District so long as Moving Defendants would also be subject to the Court's personal jurisdiction in the Middle District. *See Kinsman v. Fla. State Univ. Bd. of Trustees*, No. 6:15-CV-16-ORL-31KRS, 2015 WL 11110542, at *3 (M.D. Fla. Apr. 27, 2015); *Essex Energy, L.L.C. v. Willis*, No. CV 15-307-SDD-SCR, 2015 WL 8207468, at *2 (M.D. La. Dec. 7, 2015) (holding that "the Court's venue analysis thus largely collapses into a personal jurisdiction analysis"). This standard is easily met.

    1.  *Venue Is Proper Because Moving Defendants Have Waived Any Objection to Personal Jurisdiction.*

Moving Defendants' failure to challenge personal jurisdiction in the Middle District is dispositive of the venue question. A defendant entity that fails to raise a challenge to personal jurisdiction in its motion to dismiss waives the right to bring any such challenge. *See Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990). Because the questions of personal jurisdiction and venue converge for a defendant entity, an entity that waives personal jurisdiction also waives the right to challenge venue. *See Scar Heal, Inc. v. JJR Media, Inc.*, No. 8:14-CV-733-T-33AEP, 2014 WL 3586500, at *3 (M.D. Fla. July 8, 2014) (upholding venue in the Middle District because defendant failed to concurrently challenge personal jurisdiction, thereby waiving the issue); *see also Chapin Revenue Cycle Mgmt., LLC v. JDA eHealth Sys., Inc.*, No. 8:11-CV-858-T-33AEP, 2012 WL 469824, at *4 (M.D. Fla. Feb. 13, 2012) (defendants resided in the Middle District because defendants conceded personal jurisdiction); *Imperial Crane*

*Servs., Inc. v. Cloverdale Equip. Co.*, No. 13 C 04750, 2013 WL 5904527, at *4 n.7 (N.D. Ill. Nov. 4, 2013) (venue was established because defendant had not challenged personal jurisdiction, thus waiving the issue). The Motion does not raise any challenge to personal jurisdiction in the Middle District, and thus, Moving Defendants have waived any challenge to personal jurisdiction in this Court. Because Moving Defendants are subject to the Court's personal jurisdiction, venue over Moving Defendants is also proper in this Court under § 1391(d). Therefore, the Court should deny the Motion to Dismiss for improper venue.

        2.     *Moving Defendants Fail to Refute Wyndham's Venue Allegations.*

Even if Moving Defendants had not waived personal jurisdiction, the Motion should still be denied because Moving Defendants offer no evidence to refute Wyndham's allegations supporting venue in the Middle District, which are taken as true for the purposes of the Motion to Dismiss. *See Dyck-O'Neal, Inc. v. England*, No. 2:15-CV-27-FTM- 38DNF, 2015 WL 1911268, at *2 (M.D. Fla. Apr. 27, 2015) (venue allegations taken as true unless refuted by evidence). In the Complaint, Wyndham alleges that venue is proper in the Middle District because "Defendants' conduct giving rise to the claims set forth herein . . . [ ] . . . occurred in this District." (*See* Doc. 1, at ¶ 32]. Moving Defendants fail to submit any evidence or cite any authority that would contradict or refute these allegations. Without any contradictory evidence from Moving Defendants, Wyndham's allegations that Moving Defendants' conduct occurred in this District must be accepted as true for the purposes of this Motion to Dismiss. The Court should deny the Motion to Dismiss for improper venue.

        3.     *Moving Defendants Have Made No Attempt to Meet Their Burden to Seek a Transfer of Venue.*

While Moving Defendants request this Court transfer this matter to the Northern District of Florida. (Doc. 18, at p. 6), they make no effort to satisfy their burden to support a transfer of

venue. As set forth above, venue in the Middle District is proper. *See Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 56 (2013) ("When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b). If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a)."). Moving Defendants have failed to make the requisite showing that venue is improper under § 1391, and a transfer of venue requires an evidentiary showing by the defendant that the chosen venue is improper. *See Am. Home Assur. Co. v. Glovegold, Ltd.*, 153 F.R.D. 695, 698 (M.D. Fla. 1994). The Motion to Dismiss makes no attempt to meet the required evidentiary standard. The Court should deny the Motion to Dismiss to the extent that Moving Defendants request a transfer of this action.[1]

### B. The Complaint Sufficiently Alleges a Claim for False Advertising in Violation of the Lanham Act (Counts I and III)

Moving Defendants seek to dismiss Count I against Timeshare Owners Relief and Stewart for false or misleading statements of fact in commercial advertisements to mislead consumers, as well as to dismiss Count III against Gallagher, Stewart, and Gallagher-Clifton for false and misleading advertising constituting contributory violations. (*See* Doc. 18, p. 6-7). Moving Defendants argue that Plaintiffs' Lanham Act claims fail because (a) Plaintiffs are not within the "zone of interest" protected by the Lanham Act, (b) because Moving Defendants are not "competitors" of Wyndham, and (c) Wyndham has not been harmed by Moving Defendants' false advertising. (*See* Doc. 18, p. 8-10). Each of Moving Defendants' arguments fail.

---

[1] To the extent Moving Defendants intended to request a transfer of venue for convenience's sake, they have failed to request such a transfer or even come close to satisfying the burden supporting such a transfer. (Doc. 18, at p. 5-6, alleging that venue is a matter of "convenience."). *See, e.g., Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322, 1326 (M.D. Fla. 2010) (setting forth elements for consideration on motion to transfer venue for convenience purposes, and explaining that it is a basic principle that "[t]he plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations.") (internal citations omitted).

*1.     Wyndham is Within the "Zone of Interest" Protected by the Lanham Act.*

As Moving Defendants recognize, (Doc. 18, p. 7), the Lanham Act, 15 U.S.C. § 1125(a), permits an action for false advertising by anyone who has suffered "an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 140, 134 S. Ct. 1377, 1395, 188 L. Ed. 2d 392 (2014). The economic injury must flow directly "from the deception wrought by the defendant's advertising," which "occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id*. at 133. A plaintiff alleging such an injury has standing under the Lanham Act. *Id*. at 125-28 (rejecting the "prudential standing" label). Wyndham sufficiently alleges an injury to its commercial interests flowing directly from the false advertising in which the Moving Defendants engage, and in which Moving Defendants participate, because such advertising causes Wyndham Owners to retain Moving Defendants who instructed and induced them to cease making payments on their Timeshare Contracts. (*See* Doc. 1, at ¶¶ 70-80, 93-103). Moreover, this Court has recently found standing under very similar (if not identical) circumstances. *See Orange Lake v. Reed Hein & Assoc.*, 6:17-cv-01542-Orl-31DCI, 2018 WL 5279135 at *6 (M.D. Fla. Oct. 24, 2018). Accordingly, Wyndham has standing to pursue a Lanham Act claim based on the false advertising at issue.

*2.     Plaintiffs' Lanham Act Claim Satisfies the Lexmark Requirements*

Moving Defendants next contend that they are "not competitors with Wyndham" for purposes of the Lanham Act. Surprisingly, Defendants cite *Orange Lake Country Club, Inc. v. Castle Law Group, P.C.*, allegedly in support of their argument that timeshare developers such as Plaintiffs cannot bring Lanham Act claims against timeshare cancellation entities such as Moving Defendants. (Doc. 18, at p. 9-11). This is surprising because this Court in *Orange Lake v. Castle Law*, rejected the exact argument made by Moving Defendants. Moving Defendants

ORLDOCS 16867241 2

quote from the section of the *Orange Lake v. Castle Law* decision addressing claims for misleading advertising under Florida state law (Fla. Stat. § 817.41); Moving Defendants wholly ignore that in the same decision, this Court provides a detailed analysis of the reasons a timeshare developer has standing to pursue a timeshare exit company for false advertising under the Lanham Act. In fact, this Court has repeatedly rejected Moving Defendants' argument. *Orange Lake Country Club, Inc. v. Castle Law Group, P.C.*, 617CV1044ORL31DCI, 2018 WL 1535719, at *7 (M.D. Fla. Mar. 29, 2018); *Orange Lake Country Club, Inc. v. Reed Hein & Assoc., LLC*, 2018 WL 5279135, at *9. *See also, Westgate Resorts, Ltd. v. Reed Hein & Associates, LLC*, 618CV1088ORL31DCI, 2018 WL 5279156, *9 (M.D. Fla. Oct. 24, 2018).

Further, Moving Defendants ignore the binding Supreme Court decision in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014), which rejected any categorical test restricting false advertising claims to direct competitors only. 134 S. Ct. at 1391-92. Instead, *Lexmark* explicitly recognized that noncompetitors may bring claims for false advertising under the Lanham Act. *Id*. Thus, whether Moving Defendants are in direct competition with Wyndham is not dispositive of whether Moving Defendants' false advertising constitutes "commercial advertising or promotion." *Tobinick v. Novella*, 142 F. Supp. 3d 1275, 1279-80 (S.D. Fla. 2015), aff'd sub nom., 848 F.3d 935 (11th Cir. 2017). As such, the Motion to Dismiss states no valid grounds for dismissal in this regard.

>    3.   *Wyndham Alleges a Direct Injury Arising from Defendants' False and Misleading Advertisements.*

Moving Defendants argue that Wyndham failed to plead that it suffered injury resulting from their false advertising because the harm alleged by Plaintiffs could not cause harm to Plaintiff's commercial interests or reputation. (Doc. 18, at p. 10). Moving Defendants further suggest that the Lanham Act claim fails because the advertising materials quoted extensively in

the Complaint do not explicitly "state that the Plaintiffs are engaged in unlawful or illegal conduct." (*See id.*).

Again, this ignores Wyndham's actual allegations. Wyndham need only allege "an injury to a commercial interest in reputation or sales" and show that such injury "flow[s] directly from the deception wrought by the defendants' advertising." *USA Nutraceuticals Grp., Inc.*, 2016 WL 4254257 at *4. Wyndham alleged an injury to its commercial interests flowing from Defendants' false advertising, stating that Defendants "direct Wyndham Owners" to "stop making payments" under their Timeshare Contracts. (Doc. 1, at ¶ 7, 40, 43-44, 46). As a direct and proximate result, Plaintiffs suffered economic damages arising from Wyndham Owners' default of their payment obligations under the Timeshare Contracts. (Doc. 1, at ¶ 78-79, 95-96, 116). Wyndham also alleges that the misrepresentations cause timeshare owners to cease acting as Wyndham consumers and become consumers of Defendants' services. (Doc. 1, at ¶ 44, 51-56, 67-69, 78-79, 95-96). Therefore, Wyndham alleged that it has suffered, and will continue to suffer, a direct injury as a result of the false advertisements.

    4. *The Complaint sufficiently alleges claims of contributory false advertising in violation of the Lanham Act*

Counts I and III state valid claims against Moving Defendants for violation of the Lanham Act and contributory violations thereto. Although Moving Defendants do not assert any arguments unique to Count III, in addition, and to resolve any doubt, a claim for contributory false advertising in violation of the Lanham Act requires that (1) a third party directly engaged in false advertising that injured the plaintiff; and (2) the defendant contributed to that conduct either by knowingly inducing or causing the conduct, or by materially participating in it. *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1277 (11th Cir. 2015). A plaintiff may allege material participation by stating that the defendant "directly controlled or

monitored the third party's false advertising." *Id*. Or the plaintiff may allege that the defendant "provi[des] a necessary product or service, without which the false advertising could not be possible . . ." *Id*. Other factors are also instructive as to whether a court may draw a plausible inference of knowing or intentional participation by the defendant, including

> the nature and extent of the communication between the third party and the defendant regarding the false advertising; whether or not the defendant explicitly or implicitly encouraged the false advertising; whether the false advertising is serious and widespread, making it more likely that the defendant knew about and condoned the acts; and whether the defendant engaged in bad faith refusal to exercise a clear contractual power to halt the false advertising.

*Id.* at 1278 (quoting *Mini Maid Servs. Co. v. Maid Brigade Sys., Inc.*, 967 F.2d 1516, 1522 (11th Cir. 1992)) (internal quotations omitted).

Gallagher, Stewart, and Gallagher-Clifton argue that Wyndham fails to allege facts sufficient to establish a contributory claim in Count III for the same reasons set forth above relating to Count I. (Doc. 18, at p. 5-11). This argument ignores the Complaint's allegations and the elements of contributory false advertising under *Duty Free*.[2]

Plaintiffs plead facts sufficient to satisfy the second prong under *Duty Free*. The Complaint establishes that the Defendants conduct marketing, operate websites, and send mail advertisements on behalf of Gallagher, Stewart, and Gallagher-Clifton. (Doc. 1, at ¶ 4, 6, 8, 29, 61-65). These facts permit the Court to draw the reasonable inference that Gallagher, Stewart, and Gallagher-Clifton contributed to the Defendants' false advertising "either by knowingly

---

[2] Plaintiffs sufficiently allege that Moving Defendants engaged in false advertising under the first prong of *Duty Free*. Plaintiffs allege that the Moving Defendants engage in false advertising by advertising and promising a legal result – i.e. a cancelled timeshare contract. (Doc. 1, at ¶ 4-9, 43-46). Plaintiffs allege that these advertisements falsely represent how Defendants supposedly assist Wyndham Owners with terminating their Timeshare Contracts, and misleading Wyndham Owners into thinking that Defendants' "services" will lead to a lawful release, termination, cancellation or exit from their Timeshare Contracts when, in reality, Defendants deceive the public into paying thousands of dollars for illusory services that ultimately amount to a breach of their Timeshare Contract. (Doc. 1, ¶ 38-40,45, 61-63). Plaintiffs provide examples of these misrepresentations by the Defendants' misrepresentations in Paragraphs 4-7, 38, 43-50, 52-56, 60-69 of the Complaint.

ORLDOCS 16867241 2

inducing or causing the conduct, or by materially participating in it." *Duty Free*, 797 F.3d at 1277.

### C. The Complaint Sufficiently Alleges Claim of Tortious Interference (Count IV).

"In Florida, the elements of tortious interference with a contractual relationship are: (1) the existence of a contract; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the contract's breach; (4) the absence of any justification or privilege; and (5) damages resulting from the breach." *Mattocks v. Black Entm't Television LLC*, 43 F. Supp. 3d 1311, 1318 (S.D. Fla. 2014). "Florida courts have held that the plaintiff must plead and prove that the defendant manifested a specific intent to interfere with the business relationship." *Chicago Title Ins. Co. v. Alday-Donalson Title Co. of Fla., Inc.*, 832 So. 2d 810, 814 (Fla. 2d DCA 2002). "Thus, even if the defendant is aware of the existing business relationship, the defendant will not be liable for tortious interference with that relationship unless there is evidence that the defendant intended to procure a breach of the contract." *Id*.

Moving Defendants argue that the exhibits attached to the Complaint "refute the necessary elements of the intentional procurement of a breach of the contract and the absence of justification for communication of grievances." (Doc. 18, at p. 3-4, 12-13). Specifically, Moving Defendants allege that the documents attached to the Complaint as Composite Exhibit 6 conclusively show that Moving Defendants did not advocate for breach, and therefore could not have directly and intentionally procured breaches of the Wyndham Contracts. *See id*. However, a cursory review of the Complaint and its exhibits makes clear that nothing in Exhibit 6 "refutes" the allegations of the Complaint.

Composite Exhibit 6 represents a representative sampling of letters signed by Gallagher and sent by Gallagher-Clifton to Wyndham purporting to represent Wyndham timeshare owners.

(*See* Doc. 1, at ¶ 59). In contrast, the Complaint clearly alleges that despite Moving Defendants' knowledge of the existing Wyndham Contracts, Moving Defendants intentionally and unjustifiably induced identifiable Wyndham Owners to, inter alia, stop making payments to Plaintiffs under their Wyndham Contracts. (*See* Doc. 1, at ¶ 7, 40, 44, 109, 123; *see also* Doc. 1, Exhibit 10). Nothing contained in Exhibit 6 shows that the allegations of the Complaint are definitively untrue. As such, Plaintiffs have more than satisfied the pleading requirements for a claim of tortious interference with contractual relations. (*Id*. ¶¶ 60, 85, 94–98); *Orange Lake Country Club, Inc. v. Reed Hein & Assoc.*, 2018 WL 5279135, at *3 (refusing to dismiss timeshare developer's claim for tortious interference with contractual relations against timeshare exit company where complaint alleged that defendants had knowledge of existing agreements and that defendants "intentionally and unjustifiably induced" timeshare owners to "stop making payments to Plaintiffs under their Timeshare Agreements."). As a result, Plaintiffs suffered damages. (*Id*. ¶¶ 85, 99, 101). When taken together, these allegations are sufficient to support a claim for tortious interference.[3]

Moving Defendants' argument was rejected by this Court in *Orange Lake Country Club, Inc. v. Castle Law*, 2018 WL 1535719, at *3. There, the defendants also argued that while the

---

[3] Moving Defendants allege "satisfied timeshare consumers have no interest in contacting the Defendants for advocacy with respect to their timeshare interests." (Doc. 18, at p. 14). But Moving Defendants raise no argument for dismissal based on this allegation. To the extent a response is necessary, Plaintiffs posit that they have specifically alleged that Wyndham Owners are persuaded, induced, or deceived by the Defendants to breach their Timeshare Contracts. (*See, e.g.*, Doc. 1, at ¶¶ 67-69, 75, 86, 98). A favorable inference upon these allegations is that Wyndham Owners were not already predisposed to breach. Even to the extent that some Wyndham Owners wanted to terminate their contracts when procuring Defendants' so-called services, there is an enormous difference between (i) a desire to lawfully terminate a contract through cancellation, rescission or mutual release (as advertised) and (ii) a desire to unlawfully terminate a contract through breach. *See id*. As alleged throughout the Complaint, Defendants advertise the former only to lead Wyndham Owners into the latter method of termination. *Id*. Nowhere does the Complaint establish that Wyndham Owners were predisposed to terminate their Timeshare Contracts through breach. If that were so, then many would not have procured the Defendants' advertised services in the first place, as they could have accomplished the same result for free. *Id*. ¶¶ 44, 48. Furthermore, whether a timeshare owner is predisposed to breach a timeshare agreement is a fact-intensive inquiry not suitable for disposition at this stage. *See Orange Lake*, 2018 WL 5279135, at *4 ("[W]hether Orange Lake Owners were predisposed to breach their Timeshare Agreements is a fact-intensive inquiry inappropriate for resolution at this stage."); *Westgate*, 2018 WL 5279156, at *4-5 (same). Thus, dismissal is not warranted on this basis.

complaint alleged the defendants engaged in false advertising guaranteeing timeshare owners relief from timeshare obligations within a certain time, the exhibits to the complaint illustrated that the timeshare owners entered into a standard engagement contract explicitly indicating that the defendants did not guarantee any results. *See id.*, at *2-3. This Court found that "a truthful disclosure is not necessarily sufficient to overcome the net impression caused by a misleading communication." *Id.*, at *3 (citing *FTC v. World Patent Marketing*, 2017 WL 3508639, * 13 (S.D.Fla. Aug. 16, 2017)). Thus, this Court found that even if certain disclosures were made, it would not require dismissal of the false and misleading advertising claims. *Id*. Similarly here, this Court should reject Moving Defendants' Argument in this regard.

### D. The Complaint Sufficiently Alleges Claim of Civil Conspiracy (Count V)

A civil conspiracy claim requires: (1) an agreement between two or more parties (2) to do an unlawful act or to do a lawful act by unlawful means, (3) the doing of some overt act in furtherance of the conspiracy, and (4) damage to plaintiff as a result of the acts done under the conspiracy. *Charles v. Florida Foreclosure Placement Center, LLC*, 988 So. 2d 1157, 1159–60 (Fla. 3d DCA 2008). A conspiracy requires an actionable underlying tort or wrong. *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997). The Moving Defendants do not dispute that Plaintiffs have alleged all the essential elements of a claim for civil conspiracy. Instead, they argue that Plaintiffs' claims for conspiracy fail because Plaintiffs do not adequately allege their underlying claim for tortious interference. As support, Moving Defendants make arguments nearly identical those advanced while moving to dismiss Count IV. For the reasons stated in section IV(C) of this Response, Moving Defendants' arguments lack merit. *Orange Lake Country Club, Inc. v. Reed Hein & Associates, LLC*, 2018 WL 5279135, at *5.

Moving Defendants next argue that Count V is subject to dismissal because the allegations related to the Civil Conspiracy claim are "conclusory." (Doc. 18, at p. 14-15). Allegedly in support, Moving Defendants cite *Orange Lake Country Club, Inc. v. Castle Law Group*. (Doc. 18, at p. 15). But in *Orange Lake v. Castle Law*, this Court refused to dismiss the complaint on the grounds that the allegations were "conclusory" and instead found the complaint complied with Rule 8(a). *Orange Lake v. Castle Law Group*, 2018 WL 1535719, at *2. As this Court explained, "[t]The plaintiff must provide enough factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1966, and to indicate the presence of the required elements, *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir. 2007)." *Id*. In *Orange Lake v. Castle Law*, this Court also refused to dismiss the civil conspiracy claim against the timeshare exit entities. *Id*. at *3. As such, *Orange Lake v. Castle Law*, does not support Moving Defendants' argument or otherwise support dismissal.

Defendants cite no authority for the proposition that the Complaint fails to comply with Rule 8(a). A cursory review of the Complaint confirms that it satisfies the pleading requirements, indicates the presence of the required elements, and provides enough factual allegations to raise a right to relief above the speculative level. In particular, the Complaint sufficiently alleges that Moving Defendants acted in concert with the other Defendant co-conspirators to tortiously interfere with the Timeshare Contracts. In fact, Wyndham alleges that Gallagher-Clifton was formed for this express purpose, and sets forth the precise manner in which the Moving Defendants partner to effectuate the fraudulent scheme. (Doc. 1, at ¶ 3, 5-9, 42-46, 51-59, 122-127). Not only do the allegations explain the inter-relatedness of the Defendants and their overt actions in concert, Plaintiffs also prepared and attached an organizational chart showing how the Defendants are working together, as a visual aid to those allegations. (Doc. 1, at Exhibit "1").

Moving Defendants next argue that the Complaint "identifies as operative facts only the Defendants' advocacy on the part of dissatisfied owners of timeshare units/customers. That advocacy is not unlawful . . . ." (Doc. 18, at p. 15-16). This argument misses the mark. Plaintiffs allege that Defendants conspired to tortiously interfere with existing contractual relations by deceiving Wyndham Owners into paying Defendants for illusory services and persuading them to breach the Timeshare Contracts. (Doc. 1, at ¶ 3, 5-9, 42-46, 51-59, 122-127). Allegations of tortious interference suffice to establish an underlying wrong or tort in a conspiracy claim. *Turkey Creek, Inc. v. Londono*, 567 So. 2d 943, 948 (Fla. 1st DCA 1990). Under the common law of contracts, moreover, a termination can be "unlawful" by way of breach. In the absence of an excuse, a party "may not legally terminate the contract." 13 Williston on Contracts § 39:3 (4th ed.) (discussing the excuse of prevention). A "breach" is an unjustified violation of a legal duty. Whether it is referred to as "unlawful" or "illegal" is a matter of semantics. Moving Defendants mislead and deceive Wyndham Owners when they advertise their services as resulting in a "legal" or "lawful" termination of a timeshare contract, when in reality those services intentionally procure and induce breaches.[4]

### E. The Complaint Sufficiently Alleges Claim for Violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count VI)

Moving Defendants argue that Plaintiffs' FDUTPA claim fails because "the alleged misrepresentations in Plaintiffs' Complaint if true, would cause harm only to the timeshare consumers that are the target audience of the advertisements." (Doc. 18, at p. 16-17). As such,

---

[4] Moving Defendants also conclude, without any support, that "Should the Court conclude that there is [sic] sufficient alleged concerted actions between Defendants Charles E. Gallagher; William P. Stewart, Jr.; Gallagher-Clifton LLC; and Timeshare Owners LLC, there remain insufficient allegations of such with respect to Resort Legal Team, a Nevada Corporation operating out of Nevada. The presence of Resort Legal Team, a Nevada resident, serves only the purpose of supporting Plaintiffs' attempt to demonstrate venue in the Middle District . . . ." (Doc. 18, at p. 16). First, the Motion to Dismiss was not filed on behalf of Resort Legal Team, so it would be improper for this Court to determine whether Plaintiffs' claims against Resort Legal Team are sufficient here. Second, Resort Legal Team was named in this lawsuit due to its intricate and concerted actions with the Moving Defendants in harming Wyndham, as laid out in the Complaint.

ORLDOCS 16867241 2

Moving Defendants claim that the allegations of the Complaint are insufficient to allege causation and damages stemming from Defendants' false and misleading advertising. (*Id*.).

Regarding injunctive relief, Section 501.211(1) states that "anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part." (emphasis added). Courts broadly interpret the term "anyone aggrieved" to include any person or entity that can plead a concrete injury resulting from defendant's conduct. *See Carroll v. Lowes Home Centers, Inc.*, 2014 WL 1928669, at *4 (S.D. Fla. May 6, 2014) ("Section 501.211(1) is clear on its face. Anyone aggrieved by a violation of the FDUTPA may seek declaratory and injunctive relief under the statute."). Further, "regardless of whether an aggrieved party can recover 'actual damages' under section 501.211(2), it may obtain injunctive relief under section 501.211(1)." *Wyndham Vacation Resorts, Inc. v. Timeshares Direct, Inc.*, 123 So. 3d 1149, 1152 (Fla. 5th DCA 2012).

Regarding monetary relief, Section 501.211(2) states that "[i]n any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages, plus attorney's fees and court costs as provided in s. 501.2105." FDUTPA was amended to expand the class of persons entitled to maintain suit from any "consumer" suffering a loss to any "person" suffering a loss. *CEMEX Constr. Materials Fla., LLC v. Armstrong World Indus., Inc.*, 2018 WL 905752, at *15 (M.D. Fla. Feb. 15, 2018). That amendment expanded standing to bring suit, such that a plaintiff need not be the consumer engaged in the transaction at issue. *See Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.*, 169 So. 3d 164, 169 (Fla. 4th DCA 2015) ("[W]hile the claimant would have to prove that *there was an injury or detriment to consumers* in order to satisfy all of the elements of a FDUTPA claim, the

claimant does not have to be a consumer to bring the claim." (emphasis in original)); *Bailey v. St. Louis*, 196 So. 3d 375, 383 (Fla. 2d DCA 2016) (holding that "section 501.211(2) evinces a legislative directive that the remedy of damages is not limited to a consumer," and permitting a claim by a plaintiff against a competitor).

Since the *Carribbean Cruise Line* and *Bailey* decisions, this Court has granted standing to non-consumers. *See Envtl. Mfg. Sols., LLC v. Fluid Grp., Ltd.*, 2018 WL 3635112, at *16 (M.D. Fla. May 9, 2018), *report and recommendation adopted sub nom. Envtl. Mfg. Sols., LLC v. Fluid Energy Grp., Ltd.*, 2018 WL 6264836 (M.D. Fla. Nov. 30, 2018) ("Plaintiffs' status as non-consumers does not bar them from making a FDUTPA claim."); *Burciaga v. Gold Club Tampa, Inc.*, 2016 WL 9526567, at *5 (M.D. Fla. Dec. 28, 2016) ("A non-consumer FDUTPA claim may therefore survive a motion to dismiss…").

A deceptive act or unfair trade practice sufficient to state a FDUPTA claim "is 'one that is likely to mislead consumers and an unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Hucke v. Kubra Data Transfer, Corp.*, 160 F. Supp. 3d 1320, 1328 (S.D. Fla. 2015); *State Farm Mut. Auto. Ins. Co.*, 278 F. Supp. 3d at 1326-27. A party may also be liable under FDUTPA by virtue of its active participation and contribution to the deceptive trade practices of another. *See Sundance Apartments I, Inc. v. Gen. Elec. Capital Corp.*, 581 F. Supp. 2d 1215, 1222 (S.D. Fla. 2008) ("[U]nder Florida law it is sufficient to allege that a party directly participated in a violation of the FDUTPA, even if that violation was initiated by another.").

Wyndham adequately pled that Moving Defendants engaged in deceptive acts injurious to Wyndham Owners, who are consumers. Specifically, Wyndham alleged the precise false and deceptive statements made to Wyndham Owners by Moving Defendants (Doc. 1, ¶¶ 4-7, 38, 43-

50, 52-56, 60-69), as well as the deceptive nature of their direct mailing, and involvement with Wyndham Owners (Doc. 1, at ¶67-69, 70-81, 93-103, Exhibit 10). As a direct and proximate result, Plaintiffs suffered economic damages arising from Wyndham Owners' default of their payment obligations under the Timeshare Contracts. (Doc. 1, at ¶ 78-79, 85, 95-96, 101, 116).

Wyndham, therefore, has alleged injury and detriment to consumers and itself, as required to state a cause of action. That Wyndham was not itself the consumer of Defendants' deceptive practices does not deprive it of the ability to recover the actual damages that it suffered as a result of Defendants' conduct. *See Bailey*, 196 So. 3d at 383. Therefore, the Court should deny the Motion as to the FDUPTA claim.

The Complaint adequately describes Moving Defendants' deceptive and unfair practices, including its acceptance of referrals and payments derived from false advertising, efforts to deceive Wyndham Owners into breaching their Timeshare Contracts, and sham representations of Wyndham Owners to effectuate the "exit" scam. (Doc. 1, at ¶¶ 4-7, 38, 40-50, 52-56, 60-69).

Moving Defendants further seek dismissal of Count VI against them because, they argue, the exhibits to the Complaint do not prove that Plaintiffs were injured by the false and misleading advertising causing the improper stopping of payments by timeshare consumers. (Doc. 18, at p. 17-18). However, there is no pleading requirement that a plaintiff file exhibits to "prove" each any every allegation of a complaint in order to survive a motion to dismiss, and Defendants cite no such authority.

The Complaint adequately alleges both causation and damages. The Complaint sets forth allegations regarding the specific false and deceptive acts and trade practices of Defendants supporting its claims for injunctive relief and damages. *See* (Doc. 1, ¶¶ 4-7, 38, 43-50, 52-56, 60-69), as well as the deceptive nature of their direct mailing, and involvement with Wyndham

Owners (Doc. 1, at ¶67-69, 70-81, 93-103, 128-137, Exhibit 10). Wyndham further alleged the manner in which it is aggrieved by Defendants' false statements and deceptive trade practices, and in which it has suffered actual damages resulting from Defendants' conduct. (Doc. 1, at ¶¶ 7, 40, 43-44, 46, 78-79, 95-96, 116) (alleging that Defendants induce timeshare owners to "stop making payments under their Timeshare Contracts," which caused Wyndham extensive economic damages). Thus, Wyndham alleged factual details in support of each element of its claims for damages and injunctive relief under FDUTPA.

The legal standards a court applies to a FDUTPA claim are the same standards applied to a Lanham Act false advertising claim. *Suntree Technologies, Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1345 (11th Cir. 2012); *see also Natural Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325, 1333 (11th Cir. 2008) (a claim for a violation of [FDUTPA] "rises or falls on the success of" the Lanham Act false advertising claim). Because Counts I and III adequately allege a claim for contributory false advertising under the Lanham Act, Count VI survives dismissal, as well. Wyndham has adequately alleged a claim under FDUTPA.

## V.   CONCLUSION

Plaintiffs respectfully request that this Honorable Court deny Moving Defendant's Motion to Dismiss together with such other and further relief the Court deems just and proper.

Dated: May 13, 2019

        */s/ Alfred J. Bennington, Jr.*
**ALFRED J. BENNINGTON, JR., ESQ.**
Florida Bar No. 0404985
bbennington@shutts.com
**MICHAEL L. GORE, ESQ.**
Florida Bar No. 441252
mgore@shutts.com
**MARY RUTH HOUSTON, ESQ.**
Florida Bar No. 834440
mhouston@shutts.com

ORLDOCS 16867241 2

        **GLENNYS ORTEGA RUBIN, ESQ.**
Florida Bar No. 556361
grubin@shutts.com
**SHUTTS & BOWEN LLP**
300 S. Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone: 407- 835-6755
Facsimile: 407-849-7255

and

**DANIEL J. BARSKY, ESQ.**
Florida Bar No. 25713
dbarsky@shutts.com
**SHUTTS & BOWEN LLP**
200 S. Biscayne Boulevard, Suite 4100
Miami, Florida 33131
Telephone: 561-650-8518
Facsimile: 561-822-5527

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of May, 2019, the foregoing was electronically filed with the Clerk of the Court using the Court's CM/ECF System, which will send a notification of filing via electronic mail to:

| | |
|---|---|
| Joseph L. Hammons<br>Email: jlhlaw1@bellsouth.net<br>The Hammons Law Firm, P.A.<br>17 W. Cervantes Street<br>Pensacola, FL 32501<br>Telephone: (850) 434-1068<br><br>*Attorney for Defendants, Charles E. Gallagher, William P. Stewart, Jr., Gallagher-Clifton, LLC and Timeshare Owners Relief, LLC* | C. Gene Shipley<br>Email: jfisher@fisherlawfirm.com<br>Secondary Email: gshipley@fisherlawfirm.com<br>Fisher Rushmer, P.A.<br>390 N. Orange Avenue, Suite 2200<br>Orlando, FL 32801<br>Telephone: (407) 843-2111<br>Facsimile: (407) 422-1080<br><br>*Attorney for Defendant, Resort Legal Team, Inc.* |

        */s/ Alfred J. Bennington, Jr.*
        **ALFRED J. BENNINGTON, JR., ESQ.**

ORLDOCS 16867241 2