UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

WYNDHAM VACATION OWNERSHIP,
INC.; WYNDHAM VACATION RESORTS,
INC.; WYNDHAM RESORT
DEVELOPMENT CORPORATION; SHELL
VACATIONS, LLC; SVC-WEST, LLC; SVC-
AMERICANA, LLC; and SVC-HAWAII, LLC,

    Plaintiffs,

v.                                              Case No. 6:19-cv-476-Orl-31EJK

CHARLES E. GALLAGHER, ESQ.;
WILLIAM P. STEWART JR. a/k/a Paul
Stewart a/k/a Bill Stewart; GALLAGHER-
CLIFTON, LLC a/k/a The Gallagher Firm;
TIMESHARE OWNERS RELIEF, LLC f/k/a
Timeshare Solutions, LLC; RESORT LEGAL
TEAM, INC.; ALLEVIATE CONSULTING
LLC f/k/a Timeshare Liquidation Solutions
LLC; and CLAYTON ANTHONY
GONZALEZ,

    Defendants.
_____/

**PLAINTIFFS' RESPONSE TO DEFENDANT CHARLES E. GALLAGHER'S MOTION
TO DISMISS THE AMENDED COMPLAINT
AND INCORPORATED MEMORANDUM OF LAW**

Plaintiffs Wyndham Vacation Ownership, Inc., Wyndham Vacation Resorts, Inc., Wyndham Resort Development Corporation, Shell Vacations, LLC, SVC-West, LLC, SVC-Americana, LLC, and SVC-Hawaii, LLC (collectively, "Wyndham" or "Plaintiffs") submit this response in opposition to the motion to dismiss the Amended Complaint (Doc. 41) filed by Defendant Charles E. Gallagher ("Gallagher") (Doc. 59) (the "Motion").[1] The scant Motion fails

---

[1] Defendants William P. Stewart, Jr., Gallagher-Clifton, LLC, and Timeshare Owners Relief, LLC already moved to dismiss (Doc. 47) the Amended Complaint, and Plaintiffs

as a matter of fact and law as it neglects not only the well-pled allegations of the Complaint, but also the myriad of legal authority holding that virtually identical claims are indeed sufficient to state a claim. In support of its opposition, Wyndham states:

## BACKGROUND

On July 1, 2019, Wyndham, a timeshare developer, filed the Amended Complaint ("Complaint"). (Doc. 41.) It alleges the following scheme: The Marketing Defendants—Resort Legal Team, Timeshare Owners Relief, and Alleviate—advertise a "100% guaranteed" way to get timeshare owners, including owners of Wyndham timeshare interests ("Owners"), out of their contracts. (*Id.* ¶¶ 6, 48.) Of course, there is no guaranteed legal way for a third party to cancel a contract; what Defendants actually do is convince the Owners to unknowingly breach their contracts by failing to pay Wyndham. (*Id.* ¶ 7.) Once the Owners are brought in the door by the false advertisements, the Marketing Defendants charge them an exorbitant "exit" fee and refer them to the fake Florida "law firm" of Gallagher-Clifton, overseen by the instant Defendant Gallagher. (*Id.* ¶¶ 46, 48, 53–56, 65–68.) The "law firm" receives a hefty referral fee and then does little to nothing for its "clients." (*Id.* ¶¶ 8–9, 46.) The Marketing Defendants instruct the Owners not to talk to Wyndham directly and not to pay on their contracts, supposedly to facilitate the "exits." (*Id.* ¶¶ 53, 56.) Many of the Owners' timeshares are subsequently foreclosed, ruining their credit and causing Wyndham to lose vast sums of contract revenue. (*Id.* ¶¶ 56, 80, 109.)

As a result of this nefarious scheme, Wyndham filed this suit, asserting the following counts relevant to the instant motions: a contributory violation of the Lanham Act against

---

responded (Doc. 54); that motion remains pending. Defendant Resort Legal Team has filed a motion to dismiss (Doc. 58), to which Plaintiffs are also responding. Defendants Alleviate Consulting LLC and Clayton Anthony Gonzalez have not yet appeared.

2

Gallagher (Count IV); tortious interference (Count V); civil conspiracy (Count VI); and a violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count VII). (*Id.* ¶¶ 89–167.)

In response, Gallagher filed the instant Motion to dismiss.[2] (Doc. 59.) The brevity of the Motion speaks volumes. The Motion argues that all of the counts fail to state a claim for various reasons. However, Gallagher ignores the well-pled allegations of the Complaint, as well as the plethora of authority holding that virtually identical claims pass judicial muster. *See, e.g.*, *Wyndham Vacation Ownership v. Reed Hein & Assocs., LLC*, No. 6:18-cv-2171-31DCI, 2019 WL 3934468 (M.D. Fla. Aug. 20, 2019) (Presnell, J.) (holding that nearly identical claims were adequately pled). Thus, for the reasons more fully set forth below, denial of the Motion is warranted.

## STANDARDS

To survive a motion to dismiss, the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must accept factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See Smith v. United States*, 873 F.3d 1348, 1351 (11th Cir. 2017); *see also Espinosa v. City of Casselberry*, No. 6:06-cv-1576-Orl-31KRS, 2006 WL

---

[2] Gallagher previously moved to dismiss the initial Complaint along with Defendants William Stewart, Gallagher-Clifton, and Timeshare Owners Relief, represented by Joseph L. Hammons, Esq. (Doc. 18.) However, Gallagher filed the instant motion *pro se* and adopted the previous arguments set forth by Mr. Hammons on his own behalf. (*See* Doc. 59, pp. 1, 6.) Mr. Hammons repeated those arguments in his motion to dismiss the Amended Complaint on behalf of his remaining clients. (Doc. 47.) For efficiency's sake, Plaintiffs adopt their response to that motion as if set forth herein. (Doc. 54.)

8439566, at *1 (M.D. Fla. Dec. 14, 2006) ("The Court will liberally construe the complaint's allegations in the Plaintiff's favor.").

## ARGUMENT

### I. The contributory Lanham Act claim against Gallagher (Count IV) is properly pled.

Gallagher's Lanham Act arguments are not particularly well-organized, but he seems to be arguing the following: (1) Plaintiffs have failed to state a direct Lanham Act claim against the other Defendants; and (2) the advertisements are not false and misleading as to Gallagher because he is actually an attorney.[3] Both of these arguments fall flat.

#### A. The direct Lanham Act claims are sufficiently pled because Wyndham has satisfied the *Lexmark* test.

Gallagher first contends that the direct Lanham Act claims are inadequately pled because Wyndham has failed to make out a Lanham Act violation—essentially that Wyndham has failed to satisfy the standing[4] test set forth in *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). (*See* Doc. 59, pp. 2–3.) However, Wyndham does have standing, and the Court should reject this argument, as it and many other courts have done before.

*Lexmark* requires: (1) that the plaintiff's injuries fall within the "zone of interests" protected by the Lanham Act; and (2) that the advertisements at issue proximately caused the plaintiff's injuries. *Lexmark*, 572 U.S. at 129. Both requirements are met here.

---

[3] Though Gallagher did not bring it up in the instant motion, in his previous motion to dismiss, he argued that venue is improper in the Middle District of Florida. (Doc. 18, p. 5.) Plaintiffs fully addressed the venue issue in their response to the other Defendants' motion to dismiss the Amended Complaint, which argument Plaintiffs adopt in full herein. (Doc. 54, pp. 3–5.) In brief, venue is proper here because a "substantial part of the events or omissions giving rise to the claim occurred" here in Orlando; Plaintiffs' principal places of business are here and the contract payments were due to be made here. *See* 28 U.S.C. § 1391(b)(2).

[4] Though the *Lexmark* test is often referred to as a "standing" analysis, the Supreme Court has clarified that it is really a matter of whether the plaintiff has a "right to sue" or a "cause of action" under the Lanham Act. *Lexmark*, 572 U.S. at 128.

As to the first prong, "to come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." *Lexmark*, 572 U.S. at 131–32. The zone of interests "test is not especially demanding." *Id.* at 130 (citation and internal quotation marks omitted). "[L]ost sales and damage to its business reputation . . . are injuries to precisely the sorts of commercial interests the Act protects." *Id.* at 137.

Wyndham's injuries plainly fall within the zone of interests protected by the Lanham Act. Wyndham has alleged economic damages because Defendants diverted contract revenue from Wyndham to themselves. (*See* Doc. 41, ¶ 55.) This allegation "easily satisf[ies] the injury requirement at this stage." *Hilton Resorts Corp. v. Sussman*, No. 6:19-cv-305-Orl-40DCI, 2019 WL 2717164, at *2 (M.D. Fla. June 28, 2019) (Byron, J.). Thus, Wyndham's injuries fall within the requisite zone of interests.

As to the second prong of the analysis, *Lexmark* teaches that proximate cause can be satisfied in many ways, including: (1) a defendant's false and misleading advertisements divert sales from its direct competitor to itself; or (2) if the parties are not competitors, the plaintiff's injury still "has a sufficiently close connection" to the false advertisements. *Lexmark*, 572 U.S. at 133–37. The Complaint satisfies the proximate cause requirement in both ways.

First, the Complaint alleges that Wyndham and Defendants are direct competitors and demonstrates that Defendants' illusory exit "services" essentially convert Wyndham's customers into Defendants' customers. (*See* Doc. 41, ¶¶ 55, 104, 108.) The Complaint further provides that Wyndham has its own trademarked exit service, Ovation®, from which Defendants' advertisements divert customers. (*See id.* ¶ 43.) These allegations of direct competition satisfy

proximate cause. *See Lexmark*, 572 U.S. at 137 (holding that diversion of sales to a direct competitor is "the paradigmatic direct injury from false advertising").

Moreover, as *Lexmark* makes crystal clear, the parties do not have to be direct competitors for the proximate cause requirement to be met. *See id.* at 133–34 ("[T]he direct-competitor test provides a bright-line rule; but it does so at the expense of distorting the statutory language. . . . [A] rule categorically prohibiting all suits by noncompetitors would read too much into the Act[.] . . . It is thus a mistake to infer that because the Lanham Act treats false advertising as a form of unfair competition, it can protect only the false-advertiser's direct competitors.").[5] The Complaint demonstrates that Wyndham's injuries have a "sufficiently close connection" to the advertisements and promotions to satisfy *Lexmark*'s requirement. *See id.* at 133–37. The plaintiff "ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133. However, contrary to Gallagher's implication (Doc. 59, p. 3) and as this Court has expressly ruled, the proximate cause requirement does *not* mean that the advertisements *themselves* must direct the consumers to stop

---

[5] In rejecting the direct-competitor requirement in *Lexmark*, the Court also rejected (but did not cite) the widely followed test set forth in *Gordon & Breach Science Publishers S.A. v. American Institute of Physics*, 859 F. Supp. 1521, 1535–36 (S.D.N.Y. 1994), which first fashioned the requirement. New York's own Second Circuit later modified *Gordon* and declined to adopt the direct-competitor requirement. *See Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 58 (2d Cir. 2002). Nevertheless, *Gordon*'s direct-competitor requirement was widely adopt elsewhere, including in the Middle District of Florida and then the Eleventh Circuit. *See VG Innovations, Inc. v. Minsurg Corp.*, No. 8:10-cv-1726-T-33MAP, 2011 WL 1466181, at *5 (M.D. Fla. Apr. 18, 2011) (Covington, J.); *Millenium Labs., Inc. v. Universal Oral Fluid Labs., LLC*, No. 8:11-cv-1757-MSS-TBM, 2012 WL 12906334, at *4 (M.D. Fla. Aug. 2, 2012) (Scriven, J.); *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1349 (11th Cir. 2012); *see also Tobinick v. Novella*, 848 F.3d 935, 950 (11th Cir.), *cert. denied*, 138 S. Ct. 449 (2017) (citing *Suntree* with approval although the case turned on a different issue). The Supreme Court's explicit rejection of the direct-competitor requirement in *Lexmark* means that the cited portions of those cases are no longer good law.

paying the plaintiffs. *See Reed Hein*, 2019 WL 3934468, at *4 ("TET argues that the only allegations which could possibly remedy Wyndham'[s] defective Lanham Act claim would be allegations establishing that TET publishes advertisements which instruct Wyndham Owners to stop making payments. The Court is unpersuaded." (citation and internal quotation marks omitted) (alteration in original)); *see also Diamond Resorts Int'l, Inc. v. Aaronson*, 371 F. Supp. 3d 1088, 1109 (M.D. Fla. Mar. 5, 2019) (Dalton, J.) ("Defendants' contentions that none of the Subject Advertisements expressly direct viewers to stop making payments to Diamond . . . miss the mark on causation."). Rather, it is enough for the misleading advertisements to bring consumers in the door and *then* the defendants direct the consumers to stop paying the plaintiff. *See Wyndham Vacation Ownership, Inc. v. US Consumer Att'ys, P.A.*, No. 18-81251-CIV-REINHART (S.D. Fla. July 3, 2019) (Reinhart, M.J.) (Doc. 132, pp. 13–14) (collecting cases and holding that there is a sufficiently direct connection between the advertisements and the injury where the defendants instructed the owners not to pay only after the advertisements caused the consumer to contact defendants).

The proximate cause chain alleged here is as follows: (1) Defendants make false and/or misleading statements about their own products or services and false and/or misleading statements about Wyndham, (2) which caused consumers to falsely believe that Defendants offered a legitimate service, (3) resulting in damages to Wyndham. This causal chain is far closer than the attenuated one approved in *Lexmark*.[6] Indeed, numerous courts have found that these

---

[6] By contrast, the far more twisted causal chain that the Supreme Court permitted in *Lexmark* was this: (1) the defendant placed false and misleading statements on packaging for the defendant's printer toner cartridges, (2) which caused consumers to falsely believe that the toner cartridges had to be returned to the defendant, (3) resulting in reduced consumer demand for remanufactured toner cartridges sold by non-parties, (4) causing the non-party remanufacturing companies to sell fewer remanufactured toner cartridges, (5) generating fewer orders for the plaintiff's products from the non-party toner cartridge remanufacturing companies, (6)

facts demonstrate proximate cause. *See Reed Hein*, 2019 WL 3934468, at *4–5; *Wyndham Vacation Ownership v. Totten Franqui Davis & Burk, LLC*, No. 18-81055-CV (S.D. Fla. Apr. 9, 2019) (Doc. 188) (Middlebrooks, J.); *Bluegreen Vacations Unlimited, Inc. v. Totten Franqui Davis & Burk, LLC*, No. 6:18-cv-2188-Orl-31DCI (M.D. Fla. Apr. 9, 2019) (Doc. 53, Tr. at 9:2–3) (Dalton, J.); *Hilton*, 2019 WL 2717164, at *2; *Aaronson*, 371 F. Supp. 3d at 1109; *US Consumer Att'ys*, No. 18-81251-CIV-REINHART (Doc. 132, pp. 13–14). This Court should follow its own precedent, as well as that of its sister courts, and find that the Complaint satisfies the proximate cause[7] prong of the *Lexmark* analysis.

In sum, Wyndham has met the requirements for the zone of interests and proximate cause, so it has standing under the Lanham Act. Because the underlying direct Lanham Act claims are properly pled, the Court should reject Gallagher's argument that the accompanying contributory claim against him also fails.[8]

---

precipitating the plaintiff's damages. *Lexmark*, 572 U.S. at 139 ("To be sure, on this view, the causal chain linking Static Control's injuries to consumer confusion is not direct, but includes the intervening link of injury to the remanufacturers."). The chain alleged in the Complaint is obviously much closer.

[7] Gallagher appears to argue that because the advertisements do not mention Wyndham, they did not proximately cause Wyndham's harm. (Doc. 59, p. 2.) Even if the advertisements do not specifically name Wyndham, they nonetheless disparage the timeshare industry, and "common sense dictates that an entity can plausibly be harmed by disparaging statements directed at the industry it occupies." *Reed Hein*, 2019 WL 3934468, at *5 n.6.

[8] Gallagher strangely asks the Court to "expressly dismiss[] Counts I, II and II against him and/or otherwise acknowledg[e] that he is not expected to defend against same." (Doc. 59, p. 2.) Those counts are direct claims against the Marketing Defendants. The only Lanham Act claim directed against Gallagher is the contributory claim in Count IV, in which he is specifically named. As explained further below, the Complaint sufficiently states a contributory Lanham Act claim against Gallagher.

8

> **B.    The advertisements are false and misleading even though Gallagher is an attorney, and he is contributorily liable for Defendants' advertisements in total.**

Gallagher next argues that the advertisements alleged in the Complaint are not false and misleading as to him because he is, in fact, an attorney. (Doc. 59, p. 3.) Gallagher misapprehends the allegations of the Complaint, which has sufficiently pled that Defendants' advertisements are false and misleading and that Gallagher is contributorily liable for them.

Gallagher seems to argue that the only advertisements that matter are the ones that refer to an attorney, and those are supposedly true because he an attorney. However, Gallagher ignores the myriad of other advertisements that are false and misleading, such as the 100% guarantee, which is actionable under the Lanham Act. *See, e.g.*, *Westgate Resorts, Ltd. v. Reed Hein & Assocs., LLC*, No. 6:18-cv-1088-Orl-31DCI, 2018 WL 5279156, at *9 (M.D. Fla. Oct. 24, 2018) (Presnell, J.). Moreover, although Gallagher is an attorney, the fake "law firm" he oversees—to which firm the Marketing Defendants refer clients—is *not* a real law firm,[9] making the advertisements promising that the Owners would be represented by attorneys false and misleading. (*See* Doc. 41, ¶¶ 8–9, 67–69.) Additionally, as the Complaint alleges, Gallagher was not acting as the Owners' attorney, which further supports the notion that the advertisements were misleading. (*Id.* ¶¶ 7–9.) Indeed, Gallagher is contributorily responsible under the Lanham Act for *all* of the Defendants' false and misleading advertising (regardless of whether the advertising relates to attorneys) because he materially participates in the advertising, has full knowledge of it, and financially benefits from it (*id.* ¶¶ 127–30). *See US Consumer Att'ys*, No. 18-81251-CIV-REINHART, at 19–20 (holding that a complaint sufficiently alleged a

---

[9] The Gallagher-Clifton firm is not actually a law firm. It is an LLC owned in part by non-lawyers, including Defendant William Stewart. Moreover, Gallagher is not licensed to practice law in Florida, which is the location of the Gallagher-Clifton firm. (Doc. 41, ¶¶ 67–68.)

9

contributory Lanham Act claim where the marketing company used the lawyer as the recipient of its improper referrals to effectuate its scheme, and the lawyer in turn relied on the marketing company to publish the advertisements and refer it business, reaping the benefit in terms of fees and clients). Moreover, to the extent that Gallagher is arguing that the advertisements are actually truthful, the purported "truth" of advertising simply cannot be resolved at the motion to dismiss stage. *See Duty Free Ams., Inc. v. Estee Lauder Co.*, 797 F.3d 1248, 1278 (11th Cir. 2015) (explaining that determining whether a statement is false or misleading is "fact-intensive").

Thus, the Complaint has sufficiently pled that the advertisements are false and misleading and that Gallagher is contributorily liable for them. Accordingly, the Court should find that the contributory Lanham Act claim against Gallagher is adequately pled.

## II. The tortious interference claim (Count V) and the conspiracy claim (Count VI) are sufficiently pled.

Next, Gallagher contends that Plaintiffs failed to adequately plead the tortious interference claim for two reasons: (1) Gallagher was privileged to interfere with the Owners' contracts as their attorney; and (2) the Owners were predisposed to breach their contracts. (Doc. 59, p. 4.) Relatedly, Gallagher argues that the claim asserting conspiracy to commit tortious interference also fails. (*Id.*) These arguments lack merit, as set forth below.

### A. Gallagher was not acting as the Owners' attorney, and even if he was, he had no privilege to interfere in their contracts.

Gallagher first asserts that the exhibits to the Complaint establish that Gallagher is the Owners' attorney, and as such, he had a privilege to send the demand letters attached to the Complaint. (*Id.*) This argument is not well-taken for multiple reasons.

First, Gallagher's assertion that he had a legal justification—attorney-client privilege—for interfering with the Owners' contracts constitutes an affirmative defense. *See Hartford Cas. Ins. Co. v. Intrastate Constr. Corp.*, No. 10-61064-CIV, 2015 WL 13402138, at *3 (S.D. Fla. Mar. 26, 2015) ("[T]he legal justification privilege for interfering with a contractual relationship *is* an affirmative defense."). An affirmative defense can only be considered on a motion to dismiss when it is clear from the face of the complaint that the defense bars recovery. *See Twin City Fire Ins. Co. v. Hartman, Simons & Wood, LLP*, 609 F. App'x 972, 976 (11th Cir. 2015). The opposite is true here: the Complaint clearly alleges that Gallagher did *not* have a justification for interfering with the contracts, that the advertising snookered the Owners into believing that they were authorizing Gallagher to obtain a legal exit from their contracts rather than an illegal breach, and that Gallagher was not acting as the Owners' attorney. (Doc. 41, ¶¶ 7–9, 144.) Because the privilege defense does not appear on the face of the Complaint, it cannot form the basis for a dismissal.

Moreover, even if the Court were to find that Gallagher was the Owners' attorney and privileged to interfere with the contracts, which it should not, that privilege was nevertheless destroyed here because of Gallagher's improper conduct. "The privilege [of an agent to interfere] is destroyed where an [agent] acts solely with ulterior purposes, without an honest belief that his actions would benefit the [principal], and the [agent's] conduct concerning the contract or business relationship is not in the [principal's] best interest." *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 386 (Fla. 4th DCA 1999). Here, the Complaint has alleged that Gallagher interfered with the contracts with an improper motive and in bad faith, solely to bilk Owners of exorbitant fees. (Doc. 41, ¶¶ 141–45.) Thus, even if there was an agency attorney-client relationship (which there was not), the Complaint has still sufficiently alleged that

Gallagher did not have a privilege to interfere. *See Orange Lake Country Club, Inc. v. Reed Hein & Assocs., LLC*, No. 6:17-cv-1542-Orl-31DCI, 2018 WL 5279135, at *4 (M.D. Fla. Oct. 24, 2018) (in a similar case, noting that the plaintiffs successfully alleged that the defendants acted "for purely selfish and mercenary reasons so as to earn and retain a large pre-paid retainer," and holding that "[i]f Plaintiffs can prove this, then [the] Defendants' [purported] agency status would not shield them from liability").

### B. The Owners were not predisposed to breach their contracts.

Gallagher next argues that the Wyndham Owners were predisposed to breach their contracts. (Doc. 59, p. 4.) This argument ignores the well-pled allegations of the Complaint. The Complaint alleges that Defendants instruct the Owners to breach their contracts, from which the Court must draw the favorable inference that the Owners were not already predisposed to breach. (*See* Doc. 41, ¶¶ 49, 53, 57.) After all, if the Owners were predisposed to breach their contracts, then there would be no need for the false and misleading advertising. Indeed, there would be no need for Defendants' services at all, as anyone can breach a payment contract without any assistance, for free (all they would need to do is simply stop paying). Moreover, as the Complaint makes clear, there is a significant difference between a lawful termination or release and an unlawful breach—Defendants advertise the former only to deceive Owners into the latter. (*See id.* ¶ 7.) Thus, the Complaint establishes that even if certain Owners may want a legal release from their contracts, they are not necessarily predisposed to an illegal breach and foreclosure that will ruin their credit. Ultimately, though, the deciding factor is this: predisposition to breach is a fact question inappropriate for resolution at this stage. *See Orange Lake*, 2018 WL 5279135, at *4. Therefore, dismissal is not warranted on this basis. In sum, the tortious interference claim is adequately pled.

### C. The conspiracy claim (Count VI) is adequately pled.

Gallagher relatedly argues that claim alleging conspiracy to commit tortious interference is inadequately pled because "as an attorney-agent, Gallagher cannot be held to have conspired with a corporate principal." (Doc. 59, p. 4.) It is unclear the "corporate principal" for which Gallagher believes he was the "attorney-agent." As the Complaint alleged, he was not serving as the Owners' attorneys (and they are not corporate principals). He was not an employee of the Marketing Defendants, either. Rather, he was an independent player in the scheme, agreeing to provide his fake Florida "law firm" to fulfill the advertisements' promise of legal representation and, in exchange, benefiting handsomely from the referrals. (*See* Doc. 41, ¶¶ 73, 154–56.) Thus, the Complaint sufficiently pleads that Gallagher is liable for conspiracy. *See Reed Hein*, 2019 WL 3934468, at *9 (finding similar conspiracy claim sufficiently pled).

## III. The FDUTPA claim (Count VII) is sufficiently pled and stands on its own, apart from the Lanham Act claim.

Finally, Gallagher argues (Doc. 59, p. 5) that if the Lanham Act claim fails, the FDUTPA claim also fails, relying on *Natural Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.2d 1325, 1333 (11th Cir. 2008). However, in *Natural Answers*, unlike here, the FDUTPA claims were "premised *solely* on meritless claims of trademark infringement and false advertising." *Id.* at 1328 (emphasis added). Here, the Complaint has alleged that Defendants' business model is comprised of unfair and deceptive trade practices above and beyond the false advertising. Defendants not only lure in unsuspecting timeshare owners with their false advertising, but they also: use misrepresentations to convince Owners to pay substantial fees to "exit" their contracts when, in many instances, a lawful termination is only available to consumers directly from Wyndham; congratulate Owners upon foreclosure by lying to the Owners that the exit services were successful; unscrupulously tell the Owners that they are represented by counsel, even

13

though the Owners do not speak to those counsel, and those counsel are doing little or nothing to assist the Owners, and, in the case of Gallagher-Clifton, is not even a real law firm; and conceal from Owners that Wyndham has legitimate exit services that the Owners can use without resort to Defendants' expensive and illusory exit services. (*See* Doc. 41, *passim*.) Thus, this FDUTPA claim alleges Defendants' unfair and deceptive practices above and beyond the false advertising that forms the basis of the Lanham Act claim. The Lanham Act claim is sufficient, but so is the FDUTPA claim—on its own.

## CONCLUSION

WHEREFORE, Plaintiffs respectfully request that the Court enter an Order: (1) denying the Motion (Doc. 59); and (2) granting such further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Alfred J. Bennington, Jr.*
**ALFRED J. BENNINGTON, JR., ESQ.**
Florida Bar No. 0404985
bbennington@shutts.com
**GLENNYS ORTEGA RUBIN, ESQ.**
Florida Bar No. 556361
grubin@shutts.com
**MICHAEL L. GORE, ESQ.**
Florida Bar No. 441252
mgore@shutts.com
**MARY RUTH HOUSTON, ESQ.**
Florida Bar No. 834440
mhouston@shutts.com
**SHUTTS & BOWEN LLP**
300 South Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone: (407) 835-6755
Facsimile:  (407) 849-7255

and

          **DANIEL J. BARSKY, ESQ.**
          Florida Bar No. 25713
          dbarsky@shutts.com
          **SHUTTS & BOWEN LLP**
          200 South Biscayne Boulevard, Suite 4100
          Miami, Florida 33131
          Telephone: (561) 650-8518
          Facsimile: (561) 822-5527

Dated: August 30, 2019.

ORLDOCS 17127414 4