1
             **UNITED STATES DISTRICT COURT**
             **MIDDLE DISTRICT OF FLORIDA**
2
              **ORLANDO DIVISION**

3
        **Docket No. 6:19-cv-476-Orl-31EJK**

4


5
**WYNDHAM VACATION OWNERSHIP, INC.,**
**et al.,**
6
          Plaintiffs,             Orlando, Florida
7
                              November 20, 2019
           v.             4:16 pm. - 4:49 p.m.
8
**CHARLES E. GALLAGHER, et al.,**

9
          Defendants.
10
_____/

11


12
     **TRANSCRIPT OF TELEPHONIC MOTION HEARING**
      **BEFORE THE HONORABLE EMBRY J. KIDD**
13
        **UNITED STATES MAGISTRATE JUDGE**

14


15
**APPEARANCES:**

16
**Counsel for Plaintiff:**

17
                  Lauren Lynn Millcarek
                  Glennys Ortega Rubin
18
                  Michael J. Quinn
                  Shutts & Bowen, LLP
19
                  300 South Orange Avenue
                  Suite 1600
20
                  Orlando, Florida  32801

21


22
**Counsel for Movant, Resort Legal Team:**

23
                  C. Gene Shipley
                  Fisher Rushmer, PA
24
                  390 North Orange Avenue
                  Suite 220
25
                  Orlando, Florida  32801

1    **APPEARANCES:**   (continued)

2    **Counsel for Movant, Resort Legal Team:**

3                              George Mark Albright
                             Jorge L. Alvarez
4                              Albright, Stoddard, Warnick
                             & Albright
5                              801 South Rancho Drive
                             Suite D4
6                              Las Vegas, Nevada   89106

7

8

9    Transcriptionist:    Nikki L. Peters, RPR, CRR, CRC
                          Federal Official Court Reporter
10                         401 West Central Avenue, Suite 4600
                          Orlando, Florida   32801
11                         courttranscripts@outlook.com

12

13   Proceedings recorded by FTR Gold Digital Recording.
     Transcript produced by Computer-Aided Transcription.

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                      P R O C E E D I N G S

 2           THE COURT:  Case No. 6:19-cv-476-Orl-31EJK,

 3    Wyndham Vacation Ownership, Inc., et al. v. Charles E.

 4    Gallagher, et al.

 5           Counsel, please enter your appearances for the

 6    record.

 7           MR. SHIPLEY:  Good morning.

 8           MS. MILLCARECK:  Good morning -- or good

 9    afternoon, Your Honor.  For plaintiff, you have

10    Shutts & Bowen.  My name is Lauren Millcareck, and I'm here

11    with my colleagues Glennys Ortega Rubin and Michael Quinn.

12           MR. SHIPLEY:  Good afternoon, Your Honor.  This is

13    Gene Shipley, along with Mark Albright.  And we are the

14    moving party representing defendant Resort Legal Team,

15    Incorporated.

16           THE COURT:  Good afternoon.  We are here on the

17    defendant's emergency motion.  Since it was filed as an

18    emergency, the Court did rearrange its schedule to have this

19    hearing today at 4:15, which brings me to my first question.

20           Mr. Albright, will you be speaking today on behalf

21    of the defendants?

22           MR. ALBRIGHT:  No, Your Honor.  Gene Shipley will

23    be doing that.

24           THE COURT:  Oh, sorry, Mr. Shipley.

25           First question for you is -- I've read your motion
```

1  and the attached exhibits.  I'm assuming the emergency

2  nature of this is that the response to the subpoenas are due

3  in two days; is that correct?

4         MR. SHIPLEY:  Correct, Your Honor.  I apologize.

5  An earlier draft was filed.  That was actually included in

6  the draft that should have been filed, but the subpoenas do

7  flush that out.  Correct, Your Honor.

8         THE COURT:  Am I also correct that you received

9  notice of these subpoenas on October 30th?

10        MR. SHIPLEY:  We received them the day before

11  Halloween is correct, Your Honor.  We tried -- a good-faith

12  conference with Counsel and had contemplated proposing a

13  stipulated order staying this so that it wouldn't be the

14  emergency nature.  But when we finally got the good-faith

15  conference call scheduled, we were advised that there was

16  nothing that we could do to convince them, through further

17  good-faith conference, to stipulate to this or to continue

18  it.

19        THE COURT:  Well, Mr. Shipley, to be honest with

20  you, I think you waited too late.  You got notice of this on

21  October 30th, which was three weeks ago.  At most, probably,

22  you maybe had a week to get this resolved and then allow --

23  file a motion, which would allow the plaintiffs their 14

24  days to respond.

25              As it stands now, you're filing a motion asking me

1    to rule on something in two days.  The defendants don't have

2    enough time to respond -- sorry, the plaintiff.  Plaintiffs

3    do not have enough time to respond prior to November 22nd.

4    And, you know, I -- I really don't have a satisfactory

5    explanation as to why you couldn't file this sufficiently in

6    advance to allow the plaintiffs enough time to respond.

7              And I'm also looking at one of the cases that you

8    cited.  I have the ... sorry.  I'm finding the citation

9    right now in your motion.  The *Popoli* case, which is

10   Case No. 2:15-cv-311, out of the Fort Myers division.  And,

11   frankly, the case doesn't help your position very much.  It

12   really seems like you don't have standing to even challenge

13   the subpoena.

14             So for a variety of reasons, I am not inclined to

15   grant the motion to quash, which will leave us with the

16   motion for a protective order.  And my inclination right now

17   is to allow the plaintiffs the full 14 days to respond to

18   that.  And maybe in the meantime, you-all can work out some

19   sort of confidentiality agreement, which is typically our

20   preference in this Court rather than entering into a

21   protective order.

22             But I will allow you to respond.

23        **MR. SHIPLEY:**  If I may --

24        **MS. MILLCARECK:**  Your Honor --

25        **MR. SHIPLEY:**  -- briefly, Your Honor, just

1   addressing the issues that you raised, counsel for

2   plaintiffs did, in fact, file a response.  They filed it

3   this afternoon, and they addressed something that we just

4   didn't -- unfortunately, didn't hit as hard as we perhaps

5   should have, is that the parties have reached a

6   confidentiality agreement between them.  So there is a

7   confidentiality agreement between all the parties, all

8   plaintiffs and all defendants, which --

9           **THE COURT:**  Well, that's great.  So then what

10   would be the purpose of the protective order?

11           And I'm sorry, I did not read the response.

12   Typically, I don't get notice of everything that gets filed

13   immediately.  I usually see it the day after.  So if

14   something is filed the day of, unless it's brought to my

15   attention by someone, I probably have not read it.  So I

16   apologize that I've not read the response.  But that's

17   typically how things work, just for your knowledge.

18           So tell me, do we no longer need the protective

19   order?

20           **MR. SHIPLEY:**  The apology is due us, Your Honor.

21   I do apologize for not getting this any earlier.

22           If you would like to enter the order staying the

23   effect of the subpoena for 14 days to allow the plaintiffs

24   more time to respond or any additional supplemental

25   pleadings, then we're in agreement with that.  We just,

```
 1    unfortunately, were concerned with the deadline of the next

 2    day or two for the response.

 3              MS. MILLCARECK:  Your Honor, may we be heard on

 4    that point?

 5              THE COURT:  Yes, please.

 6              MS. MILLCARECK:  Yes.  Again, we do apologize,

 7    Your Honor.  We did put together that response quite hastily

 8    today.

 9              I just wanted to first clarify that RLT's counsel

10    stated that they tried to do a meet-and-confer with us.  I

11    just wanted to clarify that that meet-and-confer, we were

12    first reached out to on Monday night.  And so it wasn't --

13    you know, we didn't have a super long turnaround in order to

14    prepare this response, Your Honor, and we weren't reached

15    out to earlier.

16              We did respond, and we would oppose any sort of

17    stay of the effects of the subpoena.  While we agree, of

18    course, with you, Your Honor, that the RLT does not have

19    standing to move to quash, we also do not think that they

20    have articulated a reason for a protective order, and we are

21    happy to argue today on the points of whether or not the

22    subpoenas are relevant and narrowly tailored.  But we would

23    object to any sort of stay, and we do think that -- under

24    the case law, as you've stated, that the documents can just

25    be produced under the existing confidentiality agreement.
```

1    **THE COURT:**  Okay.  Allow me a moment to -- I

2    pulled up the plaintiff's response.  Allow me a moment to

3    review that.

4         **MS. MILLCARECK:**  Thank you, Your Honor.

5         (Court was at ease.)

6    **THE COURT:**  Okay.  I have had an opportunity to

7    review the plaintiff's response in opposition.  So my

8    decision as to the motion to quash remains the same.  I am

9    going to deny that.  I find, based on Middle District of

10   Florida case law, that the defendants do not have standing

11   to quash the subpoena.  I also find that there's no

12   financial privilege based on the reasons that are set forth

13   in the plaintiff's motion.  And that really just leaves the

14   issue of a protective order.  I understand that there is a

15   confidentiality agreement.

16        So, Mr. Shipley, I will hear you on whether or not

17   you believe the confidentiality agreement would be

18   sufficient for the information that's going to be turned

19   over in response to the subpoenas and, if not, why that

20   would be the case.

21        **MR. SHIPLEY:**  Well, there are actually, I guess,

22   three arguments against this, Judge.  The first one deals

23   with, you know, weighing the privacy rights of these

24   nonparties.  The second one is, you know, the

25   confidentiality and privacy rights of RLT.  And the last one

1    is the irrelevance.

2         So let me address first the privacy rights of

3    these nonparties.  The scope of the subpoenas -- and there's

4    two of them, but they're identical, just served to two

5    different banks -- it includes, you know, copies of

6    deposited checks, copies of canceled checks, deposit

7    records, cashier's checks, money orders, and bank

8    statements.  Those records are going to contain bank account

9    numbers and information of nonparty -- nonparties.  They're

10   going to include credit card account information and numbers

11   of nonparties.  And it's going to contain a number of other

12   potentially, you know, private information.  As to these --

13        **THE COURT:**  Mr. Shipley, I understand that.  How

14   does the -- how does the confidentiality agreement apply to

15   that information?

16        **MR. SHIPLEY:**  Those documents will presumably be

17   produced from the bank directly to plaintiff's counsel.  And

18   I'm skipping a little bit here.  But under the

19   confidentiality agreement, we have agreed that we will, you

20   know, designate and stamp "confidential" or -- two different

21   degrees of confidentiality on those documents.  And we've

22   agreed and have, in fact, redacted that confidential

23   information.

24        I'm not sure that it's proper for the plaintiff to

25   receive all of that confidential information as to those

1  nonparties.  And keep in mind, Your Honor, those

2  nonparties -- this gets into the relevance and some other

3  arguments.  Those nonparties include only about 10 percent

4  of clients who have Wyndham timeshare ownership.  The

5  remaining 90 percent of our clients and all of the documents

6  they're requesting, you know, pertaining to our company, are

7  not Wyndham timeshare owners.  They have absolutely no

8  relevance to the facts and to the allegations and defenses

9  in this case.

10        The damages claim by opposing counsel is

11  discouragement of profits.  And we've cited cases there that

12  that's not proper at this stage.  It's a little bit later

13  when that could possibly be proper.  But even if it is, it's

14  only proper as to Wyndham --

15        **THE COURT:**  Mr. Shipley --

16        **MR. SHIPLEY:**  -- timeshare --

17        **THE COURT:**  I'm sorry to interrupt.  But it sounds

18  to me like you're arguing about the scope of the subpoena.

19  We've moved beyond that.

20        To clarify, if your argument right now is about

21  the protective order versus the confidentiality agreement,

22  I'm happy to hear that.  But we're not going to have

23  argument about the scope of the subpoena.

24        **MR. SHIPLEY:**  (Inaudible) just to make sure

25  that -- we're arguing under Rule 26 that it is irrelevant

1   and that it is oppressive, burdensome not only to the

2   parties but also to other persons, including these

3   nonparties, Your Honor.  Is that not something that you wish

4   to entertain at this time?

5          **THE COURT:**  Hold on.  I'm taking a look at your

6   motion.

7          I still think we're a little bit off point here,

8   but I'll go ahead and hear your argument, and then I'll hear

9   the response from the plaintiff.

10         **MR. SHIPLEY:**  Okay.  Let me just try to regroup

11  here.

12         Rule 26 allows discovery regarding any matter

13  that's not privileged, you know, but which is relevant to

14  the subject matter.  And not everything is relevant.  And

15  discovery of a matter that's not reasonably calculated to

16  lead to discovery of admissible evidence doesn't fall within

17  the scope of Rule 26.

18         I've cited an *Auto-Owners* case, 231 F.R.D. 426, at

19  430, which was (unintelligible) citing the *Oppenheimer Fund*

20  United States Supreme Court case at 437 U.S. 340.

21         So the good -- so the burden is on us to show good

22  cause why either a party or a person, including nonparties,

23  to be protected from annoyance, embarrassment, oppression,

24  or undue burden.  But, again, the first thing we're arguing

25  is relevance.  These documents are completely -- or at least

1    primarily -- irrelevant insofar as they relate to

2    transactions between our client and the 90 percent or --

3    excuse me -- yeah, the 90 percent of his client customers

4    who are non-Wyndham-timeshare owners.  It's completely

5    irrelevant.

6           The -- the annoyance and embarrassment,

7    oppression, undue burden to -- not only to us but also to

8    these, you know, hundreds of non-Wyndham-timeshare-owner

9    clients far outweighs any relevance that there could be or

10   any need for these documents.

11          To further that argument, we get into the

12   confidentiality agreement, which is we have already agreed

13   to produce all of these records insofar as they pertain to

14   transactions and moneys received and moneys paid and just

15   all those financial transactions between us and those

16   Wyndham-timeshare-owner clients.  We also have agreed to

17   produce those documents -- you know, insofar as they

18   exist -- between us and any of the codefendants.

19          So, again, you know, to ask a bank to comply with

20   that confidentiality agreement by redacting all of -- you

21   know, the confidential -- you know, the private information

22   on all of the records that they've been asked to produce,

23   and to weed out between what is, you know, a Wyndham

24   timeshare owner and what is not a Wyndham-timeshare-owner

25   transaction, it's impossible.  It is an undue burden.

1   We have agreed to produce these.  There are

2   alternative means, you know, to do this, which are, you

3   know, significantly less burdensome, you know, and less

4   cumbersome, which is, "Hey, we'll produce the document."

5   Now, if Your Honor is inclined to allow them to

6   get it from this third-party source, then okay.  You know,

7   we'd ask that it be limited to things that are clearly

8   between us and Wyndham-timeshare-owner clients and/or the

9   other defendants.

10   **THE COURT:**  Thank you.

11   **MR. SHIPLEY:**  So in the interest of justice, you

12   may -- you may, under Rule 26, enter an order requiring the

13   protection of parties and nonparties.  So we ask in the

14   interest of justice that you deny it, allow us to produce it

15   directly, or, if necessary -- again, we don't mind seeing if

16   we can work out some verbiage or some way to do this with

17   opposing counsel over the next 14 days and come back to you

18   if necessary.

19   **THE COURT:**  Okay.  Thank you.

20   Do the plaintiffs have a response?

21   **MS. MILLCARECK:**  Yes, we do, Your Honor.  We just

22   wanted to note a couple of points.

23   First, as you have already suggested, we do not

24   believe that RLT has standing to assert any arguments on

25   behalf of the bank such as these over-breadth type

1    arguments.

2              The second issue that I wanted to turn to is RLT

3    harps on trying to improperly limit the scope of our

4    complaints just to Wyndham owners.  And, Your Honor, that is

5    an artificial limitation on what the Court has already found

6    to be a well-pled complaint.  We do believe that these

7    financial records are relevant and that the subpoenas are

8    narrowly tailored to hit basically every single claim in the

9    complaint.

10             As to the conspiracy count, Your Honor, as you

11   know, the best way to uncover a conspiracy is to follow the

12   money.  Here, RLT is the kingpin, and it is the one

13   connecting all of these defendants together.  And so RLT

14   asserts in its motions that only payments from Wyndham

15   owners to RLT are relevant.  But payments between RLT and

16   the defendants going both ways is relevant.

17             But, beyond that, Your Honor, as to the Lanham Act

18   claims here, RLT's advertising is advertising a money-back

19   guarantee.  And so the financial records are going to give

20   us a host of relevant information as pertains to that Lanham

21   Act claim such as, are these funds being held in escrow

22   properly in order to satisfy these guarantees?  Is RLT

23   honoring its stated advertising that it is going to be

24   giving refunds to consumers?  Is the company properly

25   capitalized?

1          You know, as Your Honor knows, we have a ton of

2    these cases.  We've seen many of these parties go bankrupt

3    because when the owners come back to them and try to cash in

4    on those money-back guarantees, they don't actually have any

5    money.  And so all of those financial records are going to

6    be highly relevant to proving up the plaintiff's claims, as

7    well as the punitive damages claims, Your Honor.  You know,

8    RLT doesn't bring it forth too much, but we did plead a

9    punitive damages claim here, and we did cite a Middle

10   District of Florida case in our response that says that

11   we're entitled to all of that financial-worth information,

12   and we don't need to wait until the end of the case to get

13   it.

14          And I want to address specifically, Your Honor,

15   RLT claims that it's told us it's going to produce these

16   documents.  But RLT hasn't articulated with any specificity

17   what financial records they're going to produce, what the

18   production of those documents is going to be, what the

19   volume is going to be.  And it's been six months.

20          Your Honor, we're entitled to get those documents

21   straight from the source.  We don't have to take RLT's word

22   for it, especially when they're trying to artificially limit

23   the scope of the complaint to just Wyndham owners, when, in

24   fact, our allegations have to do with all timeshare owners,

25   have to do with RLT's business practices as a whole.  It's

1    not just Wyndham owners that they're doing this false

2    advertisement to, and it's not just Wyndham owners that are

3    impacted by RLT's unfair business practices.

4           So we do not think that we should have to rely on

5    RLT to artificially limit the scope of what they're going to

6    give us.  We're entitled to get those records straight from

7    the source.

8           Moreover, Your Honor, as to what I think your real

9    point is that you were hinting towards, is that the

10   confidentiality agreement does resolve these issues

11   entirely.  The bank is not going to have to go through and

12   redact all of this information because they can produce is

13   under the confidentiality designation.  And our

14   confidentiality agreement explicitly contemplates

15   third-party production and third parties being able to make

16   those productions under the confidentiality designation.

17          So we do think that that is entirely resolved by

18   the confidentiality agreement and that, you know, we don't

19   want these documents with all of the owners' information

20   redacted.  We need to know, you know, who those people are.

21   And, of course, we will adhere to our confidentiality

22   obligations.

23          But I think if Your Honor takes a look at the

24   *Inglis* case that we cite pretty heavily throughout our

25   papers, it does contemplate that such financial records

1   should be produced and just simply kept in confidentiality

2   to the -- under the case.

3              Let me just look and see if there's any other

4   things I was missing.

5              As to RLT's suggestion that we could go and work

6   this out over the next couple of weeks, we just don't see

7   that happening, Your Honor.  We don't think that that is

8   going to change anything on our position.  Our position is

9   that we do think that these documents are relevant to the

10  case, that these requests are narrowly tailored.  And so

11  going back and conferring is not going to change anything.

12  We've already got the confidentiality agreement in place.

13  The banks just need to give us the documents we're entitled

14  to.

15             That's it on our side, Your Honor.  Thank you so

16  much.

17             **THE COURT:**  Thank you.

18             **MR. SHIPLEY:**  Your Honor, may I briefly respond?

19             **THE COURT:**  Go ahead.

20             **MR. SHIPLEY:**  First and foremost, I want to

21  address the kingpin of the conspiracy that's been thrown

22  around a little bit.  I'd ask you, please, to take a look at

23  the amended complaint.  And it's under Document 41.  If you

24  can just take a look at the title, the style of the case.

25  RLT is the last of the defendants pled.

1          And if you had time to read further into it, we

2     are anything but the kingpin or conspiratorially and

3     intimately involved with all of these defendants.  In fact,

4     our certificate of interested persons flushes out that we

5     have no idea who Timeshare Owners Relief, LLC is, and we

6     have no relationship with them.  To the contrary, the

7     kingpin, as alleged by this, and by -- from what I've

8     seen -- all the other numerous similar Wyndham complaints

9     that have been filed in this district and across the nation,

10    is, you know, they're going after the attorneys, and then

11    they're almost tangentially adding into that the actual

12    timeshare exit companies.

13          Now, addressing the financial records that are

14    relevant -- and the mention of punitive damages, Your Honor,

15    if you take a look at that complaint again, paragraph 34 has

16    the prayer for relief.  There's no prayer for relief for

17    punitive damages in here.  And the reason is, is because

18    under Florida law, at least -- and there's no claim for

19    punitive damages allowed in the federal cases.  But under

20    the Florida law cases, that has to be requested.  A motion

21    and a good-faith showing has to be made before punitive

22    damages can be pled and to which the punitive damages can be

23    entitled.  There's no punitive damage claim pending as far

24    as we're concerned (unintelligible) complaint.

25          Now, they're also -- told that we will produce

1    these documents, it's been six months since the request was

2    out.  Well, Your Honor, take a look at Document 38 and the

3    motions leading up to that.  That was an order denying

4    plaintiff's motion to compel these very documents and

5    instructing the attorneys to go back and say, "Okay, take a

6    look.  It's denied without prejudice, figure it out, see if

7    you can work it out amongst yourselves."  And we have.

8           We've already told them in our amended response

9    that we served on them that we'll provide documents

10   pertaining to timeshare owners, you know, who are our

11   clients but who are also Wyndham timeshare owners, and we'll

12   provide documents pertaining to, you know, any of the other

13   codefendants, you know, one of which, we don't even know who

14   they are, and there obviously aren't going to be any

15   documents.

16          So, Your Honor, again, under a confidentiality

17   agreement, what we're concerned with is -- you know, we want

18   these documents.  I mean, if a protective order can be

19   entered that says, "Okay.  The documents will be first

20   produced to us so that we can process and designate them,"

21   or even if they're produced solely to outside counsel -- in

22   other words, only to the attorneys of record and not to any

23   of the Wyndham plaintiffs, including their inside counsel --

24   then, you know, Your Honor, that -- that -- it would be hard

25   to argue with that.

1    But we do want an opportunity to be able to redact

2    them, even thereafter, remove that confidential and that

3    private information (unintelligible) to these third parties

4    as well as non-timeshare -- or non-Wyndham-timeshare owners.

5         **MS. MILLCARECK:**  Your Honor, may I briefly rebut a

6    few points, if you will hear further argument?

7         **THE COURT:**  Go ahead.

8         **MS. MILLCARECK:**  Thank you, Your Honor.  Just a

9    couple of brief issues.

10        First, you know, we're really not interested in

11   this point, finger-pointing who's the kingpin, who's not the

12   kingpin.  The whole point is we need this discovery in order

13   to figure out how the money is flowing, what the

14   relationships are between these defendants.

15        As to the punitive damages claim, Your Honor, we

16   did make a claim for punitive damages.  And we did cite case

17   law in our response that says that the entire Florida schema

18   for punitive damages does not apply.  And I've got a Judge

19   Baker case here from 2010 that lays out a really thorough

20   analysis of why those kind of punitive damages, the initial

21   showing, those kind of things, aren't required in federal

22   court.  So we don't think that we need to make that, in

23   order for punitive damages to be a proper basis here for

24   requesting these documents.

25        I do briefly want to address this issue that we

1    previously moved to compel, and that was denied.  That's on

2    a totally separate issue, Your Honor.  That had -- was

3    relating to jurisdictional discovery, and we were simply

4    asking for an extension of time in order to take some

5    jurisdictional discovery.  But, you know, after that, it

6    was -- that issue was mooted, Your Honor, because we were

7    found to have jurisdiction, and that was no longer at issue.

8    And so the point here is that these particular requests have

9    been pending for more than six months and no prior kind of

10   motion practice dealt with the specific issue at issue here.

11           In terms of a redaction, Your Honor, we foresee

12   that RLT is just going to redact all of the information that

13   we need such as the identities of these owners.  And not

14   just Wyndham owners, as I said before, Your Honor, but all

15   timeshare owners are relevant to proving up our Lanham Act

16   claims, the FDUTPA claim, the conspiracy, et cetera,

17   Your Honor.  And so we believe that the Court should reject

18   RLT's artificial scope on the limitations of the well-pled

19   complaint, and we would ask Your Honor to deny the motion

20   for a protective order.

21           **THE COURT:**  Thank you.

22           All right.  I'm looking at Document 38.  That does

23   seem to be -- have resolved itself in a bit of an odd

24   procedural posture.  I mean, it was denied but yet it really

25   seems to have been mooted.

1          Regardless, the defendants are really staking a

2    lot on relevance, and relevance is always a low bar.  And

3    the rules of -- Federal Rules of civil procedure and the

4    case law anticipate that the discovery process will -- will

5    be -- that the Courts will take a very generous view of what

6    will be relevant.  I find that the plaintiffs have

7    sufficiently articulated the relevance of this information.

8    So I am going to deny the motion for a protective order as

9    well.

10          It seems like the remaining issues that the

11   defendant has raised can be mitigated or potentially

12   resolved completely with the confidentiality order, at least

13   sufficiently for the purposes of this litigation, in my

14   view.  So I'm going to deny the motion to quash the subpoena

15   as well as deny the motion for the protective order.

16          Is there anything else from the defendant?

17          **MR. SHIPLEY:**  No, Your Honor.  Thank you for your

18   time.

19          **THE COURT:**  All right.

20          **MS. MILLCARECK:**  Um --

21          **THE COURT:**  Yes, from the plaintiff?

22          **MS. MILLCARECK:**  Yes.  Thank you, Your Honor.

23          We appreciate you taking the time out.  The only

24   other thing that we wanted to note from our response is that

25   we did seek sanctions under local Rule 3.01(e) for the

1  unwarranted designation of this motion as an emergency.  You

2  know, Your Honor, I've been on that side.  I know the havoc

3  that an emergency motion can wreak.  And so we did ask for

4  that relief in our response, Your Honor.

5  Other than that, that resolves all of our issues

6  today.

7  **THE COURT:**  Thank you for noting that.  I will

8  note that this is very close to sanctionable, in my opinion.

9  I am going to -- I will refer you to my website which

10  discusses emergency motions.  We're going to clarify that

11  even further, but this is certainly not an emergency.

12  The plaintiffs provided notice of these subpoenas

13  in more than enough time for the defendants who have filed a

14  timely motion to allow the process to resolve itself as it

15  normally does, allowing the responding party two weeks to

16  respond, and then allowing the Court sufficient time to

17  review the parties' filings.

18  As it stands, we -- this is -- again, this is a

19  very busy court.  We managed to squeeze this in at 4:15.  We

20  had to make some personnel changes in order to do so.  That

21  is the nature of an emergency motion.  So we do not take

22  them very lightly, and we don't want the parties to as well.

23  So this is very close to sanctionable conduct, but

24  I will not order sanctions in this case.  You know, again,

25  read my website.  I am going to change the language.  So in

1    the future, I might not reach the same decision.  But I'm

2    going to deny the motion for sanctions at least for now.

3             If there's nothing else, we'll be adjourned.

4    Thank you.

5             **MR. SHIPLEY:**  Thank you, Judge.

6             **MS. MILLCARECK:**  Thank you, Your Honor.

7             (Proceedings adjourned at 4:49 p.m.)

1                      **C E R T I F I C A T E**

2

3              I certify that the foregoing is a correct

4    transcript from the record of proceedings in the

5    above-entitled matter.

6

7    December 12, 2019

8

9        s\  Nikki L. Peters
     _____
     Nikki L. Peters, RPR, CRR, CRC
10   Federal Official Court Reporter
     United States District Court
11   Middle District of Florida

12

13

14

15

16

17

18

19

20

21

22

23

24

25